IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, ALFREDO ALESNA JR., DAVID CAGLE, STEPHEN L. DAVIS, FRANK EADS, and KENNETH J. SURMAN, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WERNER ENTERPRISES, INC., DRIVERS MANAGEMENT, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | **8:14CV319**<br><br>**FINDINGS AND RECOMMENDATION AND ORDER** |
| WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>WERNER ENTERPRISES, INC., d/b/a C.L. WERNER, INC., a corporation, and DOES 1-100, inclusive,<br><br>Defendants. | **8:15CV287**<br><br>**FINDINGS AND RECOMMENDATION AND ORDER** |

This matter is before the Court on Plaintiffs' Renewed Motion for Class Certification (Filing No. 166 in Case No. 8:14cv319; Filing No. 71 in Case No. 8:15cv287), and Defendants' Motion to Strike Plaintiffs' Exhibits Offered in Support of Plaintiffs' Renewed Motion for Class Certification (Filing No. 175 in Case No. 8:14cv319; Filing No. 80 in Case No. 8:15cv287).[1]

---

[1] Unless otherwise indicated, all further references to the record will be to filings in Case No. 8:14cv319.

## PROCEDURAL BACKGROUND

As detailed by prior court orders, these putative class actions arise out of Plaintiffs' allegations that Werner Enterprises, Inc. ("Werner") and its wholly owned subsidiary, Drivers Management, LLC ("Drivers Management") have uniform policies and practices that violate various wage and hour laws of California and Nebraska. (Filing No. 119; Filing No. 150). Plaintiffs' allege that Defendants have a

> uniform policy and practice . . . of not paying all wages owed, not paying for all time worked, including compensable rest periods and compensable on-duty non-driving time, not paying premium hours for missed meal/rest periods (for the California Class), making improper deductions from pay for work performed, not providing properly itemized pay statements that accurately reflect hours worked, applicable hourly rates and (for the California Class) premium hours for missed meal/rest periods, and . . . not maintaining records that accurately reflect hours worked and applicable hourly rates.

(Filing No. 160 at p. 6).

On June 4, 2014, Antonia Russell ("Russell") filed a putative class action against Werner in California state court for violations of California wage and hour laws. (Filing No. 1-1). On August 25, 2014, Werner removed the case to the Northern District of California. (Filing No. 1). On October 6, 2014, the case was transferred to this district under 28 U.S.C. § 1404(a). (Filing No. 23).[2] On March 30, 2015, an amended complaint was filed by Russell, Ezequiel Olivares Abarca ("Abarca"), Alfredo Alesna Jr. ("Alesna"), David Cagle ("Cagle"), Stephen L. Davis ("Davis"), Frank Eads ("Eads") and Kenneth J. Surman ("Surman") against Werner and Drivers Management. (Filing No. 52). By joint stipulation of the parties, Russell was dismissed as a party on April 24, 2015, (Filing No. 55), and on September 17, 2015, Plaintiffs filed a third amended complaint adding claims under Nebraska wage and hour laws. (Filing No. 80).

On May 12, 2015, William Smith ("Smith") filed a putative class action against Werner in California state court for violations of California wage and hour laws. (Filing No. 1-1 in Case No. 8:15cv287). On June 26, 2015, Werner removed the case to the Northern District of

---

[2] At the time, two other wage and hour class actions were pending against Werner and Drivers Management in this court, *Baouch et al. v. Werner Enterprises, Inc. et al.*, 8:12cv408, and *Petrone v. Werner Enterprises, Inc. et al.*, 8:11cv401 and 8:12cv307.

California.  (Filing No. 1 in Case No. 8:15cv287).  On July 31, 2015, the case was transferred to this district under 28 U.S.C. § 1404(a).  (Filing No. 17 in Case No. 8:15cv287).

On November 19, 2015, the above captioned cases were consolidated for all purposes, including trial, (Filing No. 119), and Case No. 8:14cv319 was deemed the Lead Case.  (Filing No. 131).

The court set March 1, 2016, as the deadline to complete discovery limited to class certification and April 1, 2016, as the deadline for Plaintiffs to file a motion to certify a class.  (Filing No. 125).  On April 1, 2016, Plaintiffs filed a motion to certify two classes: a Nebraska Class and a California Class.  (Filing No. 135).  The operative pleading at that time was Plaintiffs' third amended complaint, which defined the California Class as "all truck drivers who worked or work in California for Werner after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit[.]"  (Filing No. 80 at p. 4).

On October 28, 2016, Senior District Judge Lyle E. Strom entered a Memorandum and Order denying Plaintiffs' motion for class certification.  (Filing No. 150).  Judge Strom found that the proposed "California Class" was "not adequately defined and/or clearly ascertainable," and therefore Plaintiffs failed to establish numerosity, commonality, typicality, and adequacy of the proposed California Class, as required under Rule 23(a) of the Federal Rules of Civil Procedure.  (Filing No. 150 at pp. 7-14).  Judge Strom abstained from addressing Plaintiffs' motion to certify the "Nebraska Class," and granted Plaintiffs leave to file a fourth amended complaint to "attempt to provide the Court with an adequately defined and clearly ascertainable definition for the California Class."  (Filing No. 150 at p. 15).  Judge Strom prohibited Plaintiffs from substantively altering the complaint in any other way "including, but not limited to, adding additional claims, parties, classes, and/or causes of action."

On November 9, 2016, Plaintiffs filed a fourth amended complaint.  (Filing No. 151).  On December 29, 2016, Judge Strom sustained Defendants' motion to strike portions of Plaintiffs' fourth amended complaint, including an attached exhibit, as it contained new allegations not limited to redefining Plaintiffs' proposed California Class, in violation of the court's previous order.  (Filing No. 159).

- 3 -

Plaintiffs re-filed their fourth amended complaint on January 6, 2017. (Filing No. 160). Plaintiffs' fourth amended complaint purports to bring claims individually and "on behalf of similarly situated current and former truck drivers whom Werner employed to work in California after the completion of training," and defines the California Class as:

> all truck drivers who, while working for Werner, picked up and/or dropped off a load in the state of California after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit[.]

(Filing No. 160 at p. 4).

With respect to the Nebraska Class, Plaintiffs purport to bring claims individually and "on behalf of similarly situated current and former truck drivers whom Werner employed to work anywhere after the completion of training." Plaintiffs allege violations of Nebraska law, which "Werner has expressly agreed would apply to truck driver employment" and define the Nebraska Class as follows: "all truck drivers who worked or work anywhere for Werner after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit[.]" (Filing No. 160 at p. 4).

The California Class plaintiffs allege Defendants' policies violate the California Labor Code, California Industrial Commission Wage Orders, and the California Unfair Competition Law by: (1) failing to provide duty free meal/rest periods (Claim One); (2) failing to pay for off-the-clock work (Claim Two); (3) making improper deductions from paychecks for income earned (Claim Three); (4) failing to provide itemized pay statements as required under California law (Claim Four); and (5) engaging in unlawful business acts and unfair competition for the misconduct alleged in (1)-(4) (Claim Five). (Filing No. 160 at pp. 9-16). Claim Six seeks recovery under the Private Attorneys General Act of 2004 ("PAGA")[3] to the extent recovery for the preceding claims is not obtained. (Filing No. 160 at p. 17).

The Nebraska Class plaintiffs allege Defendants violated the Nebraska Wage and Hour Act ("NWHA")[4] by paying less than the minimum wage (Claim Seven) and the Nebraska Wage

---

[3] Cal. Lab. Code §§ 2698, et seq.
[4] Neb. Rev. Stat. § 48-1201 et seq.

Payment and Collection Act ("NWPCA")[5] by failing to timely pay earned wages, failing to provide accurate itemized pay statements, and making improper wage deductions (Claim Eight). (*Id.* at pp. 18-21).

The California Class requests a declaratory judgment that: (1) Defendants violated the California Labor Code, California Welfare Commission wage orders, and California Unfair Business Practices Act/Unfair Competition Law; (2) the time during which the California Class members are on duty in California constitutes compensable hours of employment for purposes of the California Labor Code and California Industrial Welfare Commission Wage Orders; (3) California Class members are entitled to an award for the unpaid wages, wages for absence of duty free meal/rest periods, recovery of improper deductions from pay earned in California, waiting time penalties, penalties for absence of properly itemized wage statements/record maintenance, and any other applicable statutory penalties; (4) Defendants must make restitution and disgorgement of all ill-gotten gains; (5) equitable distribution be made of unpaid residue of any recovery pursuant to California Code of Civil Procedure § 384; (6) injunctive relief is appropriate to prohibit future violations; and (7) penalties should be awarded under PAGA. (Filing No. 160 at pp. 21-23).

The Nebraska Class requests a declaratory judgment that: (1) Defendants violated the NWHA and NWPCA, (2) the time during which the Nebraska Class members are working anywhere constitutes compensable hours of employment for purposes of Nebraska law; (3) Nebraska Class members are entitled to an award for the unpaid wages, recovery of improper deductions, and any applicable statutory penalties; (4) and Defendants must pay an additional amount to the State Treasurer pursuant to Neb. Rev. Stat. § 48-1232. (Filing No. 160 at p. 23).

Defendants raise numerous affirmative defenses, including: (1) Plaintiffs consented in writing that their employment with Werner was Nebraska-based and subject to Nebraska law; (2) Plaintiffs' claims are barred in whole or in part because there is a conflict of laws prohibiting the extra-territorial application of California law; Plaintiffs' claims are barred by (3) ratification and the (4) statute of limitations; (5) Plaintiffs' claims are preempted by the Dormant Commerce Clause and the Federal Aviation Administration Authorization Act; (6) Defendants acted in good faith; (7) Plaintiffs consented in writing to alleged paycheck deductions; (8) Plaintiffs failed to

---

[5] Neb. Rev. Stat. § 48-1228 et seq.

- 5 -

exhaust administrative remedies; (9) Plaintiffs' claims are unconstitutional; (10) Plaintiffs are equitably estopped by the doctrines of waiver, estoppel, laches, and/or unclean hands; (11) Plaintiffs' damages are de minimis; (12) penalties under PAGA would be unjust, arbitrary, oppressive, and confiscatory; (13) Plaintiffs' claims and civil penalties awarded under PAGA, if any, must be limited to those penalties applicable to an initial violation; (14) Defendants substantially complied with all statutory obligations; (15) Plaintiffs lack standing; (16) Defendants' compensation practices are lawful; and (17) no agreement existed for Defendants to pay the wages claimed by Plaintiffs under the NWPCA. (Filing No. 161 at pp. 9-12).

On May 26, 2017, Plaintiffs filed the instant renewed motion to certify a California Class and Nebraska Class.[6] (Filing No. 166). Plaintiffs seek to certify the California and Nebraska classes as defined by their fourth amended complaint. Plaintiffs state in their brief that the proposed California Class asserts claims "for work performed in California" regardless of a driver's residency. (Filing No. 167 at p. 2). Plaintiffs also alternatively suggest that the Court certify a more narrowly defined California Class "limited to Werner drivers who were California residents." (Filing No. 167 at p. 2). Plaintiffs further request that the Court appoint the individually named Plaintiffs in Case No. 8:14cv319 as the class representatives and to appoint class counsel.

In support of their renewed motion, Plaintiffs filed the Supplemental Declaration of Justin Swidler (Filing No. 168), and the Declaration of Jacqueline Thompson (Filing No. 169) with six attached exhibits.[7] Defendants have filed a Motion to Strike (Filing No. 175) Exhibit A (marked as Exhibit 1) attached to Swidler's Declaration (Filing No. 168 at pp. 5-25), and Exhibits 3, 4, and 5, attached to Thompson's Declaration (Filing No. 169 at pp. 321-334). Exhibit A is a copy of an excerpt of pickup and delivery records for Plaintiff Eads, which was produced by Werner in discovery in a separate wage-and-hour class action this court, *Baouch v. Werner Enterprises, Inc.*, Case No. 8:12cv408. Exhibit A is the same exhibit that was stricken from Plaintiffs' stricken-fourth amended complaint. (Filing No. 151; Filing No. 168 at pp. 5-25). Exhibits 3, 4, and 5 are pages printed from websites. Exhibit 3 is a copy of Werner's online

---

[6] The renewed motion to certify (Filing No. 166) is identical to the previously filed motion to certify (Filing No. 135), except that Justin Swidler submitted a declaration in place of William Turley.

[7] In their briefs (Filing Nos. 167 and 184), Plaintiffs also cite to their previously filed exhibits at Filing No. 139.

advertisements regarding truck sales out of its Fontana terminal from Werner's website, Exhibit 4 is a copy of Werner's Zip Recruiter advertisement for California-based drivers, and Exhibit 5 is a copy of an online advertisement for on Indeed.com.  (Filing No. 169 at p. 2).

In opposition to the renewed motion to certify, Defendants filed a brief (Filing No. 178) and Index of Evidence and attached exhibits (Filing No. 179; Filing No. 179-1 through 179-6). Defendants also state they incorporate their Index of Evidence and attached exhibits (Filing No. 142) previously offered in opposition to Plaintiffs' first motion to certify, as well as the Declaration of Mary Kaye Howe (Filing No. 15-1) previously filed in support of Defendants' motion to transfer.

## FACTUAL BACKGROUND

Werner is a Nebraska corporation headquartered in Omaha Nebraska, engaged in the hauling and delivery of freight across the United States.  (Filing No. 179-5 at p. 2 - Declaration of Jaime Maus ¶ 3). Werner's corporate policies, payroll policies and records, drivers' employment records, and all drivers' paychecks are created, maintained, calculated, and distributed from Werner's headquarters in Nebraska.  (Filing No. 179-6 at p. 2 - Declaration of Steven Tisinger ¶¶ 5-6).

Werner maintains terminals across the country, including one terminal in Fontana, California.  (Filing No. 142-5 at p. 3 - Jaime Maus Deposition 15:3-11).  The Fontana terminal is staffed with a terminal manager, an equipment manager, a parts manager, and a lead safety specialist.  It does not have general managers, fleet managers, or dispatchers.  (Filing No. 179-5 at pp. 2-3 - Maus Decl. ¶¶ 5-6).  These managers manage safety personnel and do not manage drivers, and no over-the-road drivers are assigned to the Fontana terminal.  (Id.).  Drivers can attend orientation at the Fontana terminal.  (Filing No. 142-5 at p. 3 - Maus Depo. 15:3-11).  The Fontana terminal also has a company store (Filing No. 169 at p. 112 - WRN-RUSSELL00000022), a full service shop (Id. at p. 113 - WRN-RUSSELL00000023), and provides liaisons for student drivers without trainers (Id. at p. 300 - WRN-RUSSELL00000210) and student coordinators (Id. at p. 107 - WRN-RUSSELL00000017).  A copy of California Wage Order 9-2001, which includes information about California's meal and rest break requirements, is posted in the vending machine room of the Fontana terminal.  (Filing No. 179-5

- 7 -

at pp. 2-3 - Maus Decl. ¶ 8). As of June 26, 2017, Werner represents it was advertising for approximately thirty driver positions in California. (Filing No. 179-6 at p. 4 - Maus Decl. ¶ 11).

Werner employs drivers who are residents of all fifty states, the District of Columbia, and Canada. (Filing No. 15-1 at p. 3 - Declaration of Mary Kaye Howe ¶ 5). The named Plaintiffs are all residents of California and are current or former Werner drivers. (Filing No. 160 at p. 2; Filing No. 1-1 in Case. No. 8:15cv287). Between June 4, 2010, and July 31, 2014, more than 14,000 Werner truck drivers drove and/or traveled miles in California, excluding training miles. (Filing No. 15-1 at p. 2 - Howe Decl. ¶ 4). Payroll taxes reflect that approximately 22% of those 14,000 drivers reside in California. (Id. at ¶ 5). Between June 4, 2010, and July 31, 2014, Werner drivers traveled a total of 1,700,000,000 miles across the United States and Canada, approximately 167,000,000 of which were traveled in California (i.e., less than 10%). (Id. at ¶ 4). This mileage was calculated using Werner's mileage records maintained for the purpose of complying with state fuel taxes, which are reported pursuant to the International Fuel Tax Agreement (hereinafter, "IFTA"). (Id.). According to Werner, IFTA mileage is tracked using GPS, which pings based on the nearest GPS location as opposed to the driver's actual location, and is approximately 12% higher than the mileage Werner uses to calculate driver pay. (Id.). Werner uses a separate system to calculate individual drivers' mileage, the Shortest Route Guide software published by Rand McNally. (Filing No. 142-4 at p. 6 - Tisinger Depo. 20:9-21:22). Qualcomm units (now called Omnitracs) installed on each truck track the truck's approximate position by pinging a satellite approximately every 15 minutes. (Filing No. 142-5 at p. 9 - Maus Depo. 56:10-57:24; Filing No. 142-6 at pp. 3 - Mary Kaye Howe Deposition 24:14-25:11, 31:14-32-9, 36:9-37:11).

Prospective drivers for Werner sign an "Acknowledgement of Employment in Nebraska and Consent to State of Nebraska Workers' Compensation" form, which provides that the driver acknowledges that "regardless of where he/she signs this application, all [Drivers Management] decisions to hire employees and contracts for hire are made only in Omaha, Neb., and an employee/employer relationship between the driver and [Driver's Management] can be entered into only in Omaha, Neb." (Filing No. 142-15 - Plaintiffs' Acknowledgements of Employment). The driver also acknowledges he or she "will be a state of Nebraska-based employee, and all employees of [Drivers Management] regardless of where employees claim residence, are subject

to Nebraska's workers' compensation jurisdiction and laws and Nebraska's labor and employment laws." *Id.*

Drivers are paid for point to point mileage per assigned trip as calculated using the Rand McNally software. (Filing No. 142-4 at p. 6 - Tisinger Depo. 20:9-21:22). According to Werner, the mileage rate "takes into consideration everything from origin to destination," including rest breaks. (*Id.* at p. 45 - Tisinger Depo. 177:6-18). Pay rates vary based on a driver's division or solo/team status, driving experience, safety, on-time delivery performance, among other factors. (Filing No. 142-14 at p. 7 - WRN-RUSSELL00000075; Filing No. 179-3 - WRN-RUSSELL00004209-04211, WRN-RUSSELL00007794; Filing No. 179-4 - WRN-RUSSELL0000829, WRN-RUSSELL00004469-04471). In addition to "piece rate" mileage pay, Werner also may pay drivers supplemental pay and/or discretionary pay for things such as loading/unloading, layovers, lumpers, motels, miscellaneous pay items, network optimization, shag pay, stop pay, safety pay, among other things. (Filing No. 142-4 at pp. 33-35, 49 - Tisinger Depo. 126:3-1288:13, 132:10-133:25, 135:21-137:24, 189:25-190:5; Filing No. 142-14 at p. 5 - WRN-RUSSELL00000068-0069; Filing No. 142-16 - WRN-RUSSELL00001870; Filing No. 179-2 - WRN-RUSSELL00000067, WRN-RUSSELL00000293-0294, WRN-RUSSELL00035904). Discretionary pay is "computed in any manner deemed appropriate by the driver's fleet manager[.]" (Filing No. 179-6 at pp. 3-4 - Tisinger Decl. ¶¶ 8-9).

State taxes are withheld from drivers' paychecks based on their state of residence. (See, e.g., Filing No. 142-14 at p. 1 - Abarca Statement of Earnings). Drivers' pay statements include gross earnings, reimbursements, deductions, trip details (including point of origin and destination, stops, deadhead, rate of pay), and other notes. (Filing 142-14 at p. 14 - WRN-RUSSELL00000302). Beginning on January 9, 2013, drivers who attended orientation in California, or who have California residences for payroll and taxes purpose, or have a California CDL, additionally have their "on-duty" hours listed on their pay statements. Werner also "true[s] up" these drivers' wages to California's minimum wage. (Filing No. 142-4 at pp. 7-8, 26-27 - Tisinger Depo. 25:5-27:6, 101:15-102:10; Filing No. 179-6 at p. 5 - Tisinger Decl. ¶ 12).

During orientation, each driver is provided a copy of the Werner Driver Handbook ("Handbook"). (Filing No. 142-5 at p. 4 - Maus Depo. 18:8-12). From June 2010, through April 2016, Werner issued five different Handbooks, as it was updated and reissued in 2008, June

2013, September 2014, April 2015, and June 2015.  (Filing No. 142-2 at p. 2 - Declaration of Jaime Maus ¶ 5).

The Handbook outlines the Federal Motor Carrier Hours of Service ("HOS") Duty Status Definitions.  Line 1 items are "Off Duty" and includes "rest breaks taken outside of the sleeper berth including meal breaks."  Line 2 is for time in the sleeper berth.  Line 3 is for "Driving" and includes all time operating at the driving controls and time when the computer log detects motion.  Line 4 is for logging "On Duty-Not Driving" time.  This category includes all time "[f]rom the time you begin to work or are required to be ready to work until the time you are relieved from work."  It includes pre-trip and other inspections, physically loading and unloading the trailer, paperwork and receipts at a customer, time spent providing a breath sample or urine specimen, quarterly safety training, among others.  It does not include rest time in a parked vehicle or up to two hours in the passenger seat of a moving vehicle immediately before or after an 8-hour consecutive break in the sleeper berth.  (Filing No. 142-14 at p. 10 - WRN-RUSSELL00000165).  Drivers are responsible for logging their own activities.  (Filing No. 142-2 - Maus Decl. ¶¶ 10).

The Handbook outlines HOS regulations regarding breaks, including the 11-Hour, 14-Hour, and 70-Hour rules.  (Filing No. 142-14 at p. 11 - WRN-RUSSELL00000166).  The Handbook notes that Werner "recommends drivers take at least a 30-minute break after driving four to six hours."  (*Id.*).  Werner trains drivers that they are "the captain of their ship" and "to take breaks when they see they need them," but drivers are not specifically instructed or informed of any rights to meal and rest periods under California law.  (Filing No. 142-5 at pp. 7-8 - Maus Depo. 45:12-46:25).

Prior to 2014, Werner had a "Driver Personal Bond Policy" wherein $10 was deducted from each driver's paycheck until a total of $400 was reached as a security deposit for "willful and negligent" actions of drivers that result in loss or expense to the company.  (Filing No. 142-14 at p. 13 - WRN-RUSSELL00000290).  The remaining balance of the bond was refunded to drivers approximately 90 days after their employment ended.  (*Id.*).  Werner "in its sole discretion" made all decisions regarding bond deductions.  (*Id.*).  Prospective drivers were notified of and authorized the personal bond policy as part of their conditions of employment with Drivers Management.  (Filing No. 142-15 at p. 4 - Employment Conditions between Driver

and Drivers Management). The personal bond policy was discontinued as of September 23, 2014. (*Id.* at p. 17 - WRN-RUSSELL00001963).

The "Driver Chargeback Program" replaced the personal bond policy. The chargeback program provides assistance for driver related expenses such as missing or excessively damaged equipment, regulation citations, and tows. Chargeback amounts up to $200 are repaid with $10 paycheck deductions until repaid, and chargebacks up to $400 are repaid with $20 paycheck deductions until repaid. (Filing No. 142-14 at p. 16 - WRN-RUSSELL00001623).

Werner authorizes active drivers to request personal cash advances. (Filing No. 142-14 at p. 4 - WRN-RUSSELL00000062). Werner charges a $4 transaction fee for all advances. (*Id.*). The $4 transaction fee is refunded if more than half of the advance is for reimbursable company expenses, such as purchasing a new headlight while on the road. (Filing No. 142-1 - Tisinger Decl. ¶ 6). Advances are taken from the last delivered trip date in the work week to be paid that week. Advances dated the dame day or prior are deducted from that week's paycheck. If the total amount is not enough to be covered, the check zeros out for that week, and the remaining amount is taken from the next paycheck. (Filing No. 142-14 at p. 17 - WRN-RUSSELL00001963).

According to the Handbook, Werner requires certain security initiatives when hauling HAZMAT loads and loads across the U.S./Canada border, including not leaving the vehicle unattended, except to use the restroom. The Handbook further provides drivers should, "[i]f possible, keep visual contact while eating." (Filing No. 142-14 at p. 8 - WRN-RUSSELL00000119). The Handbook provides that these are also "good safety and business practices when hauling all other types of loads." (*Id.*).

Plaintiffs allege that "Werner systematically violates the wage-and-hour laws of both California and Nebraska" by implementing the above payment structures and policies. Plaintiffs divide their claims into four categories: (1) Werner's compensation plan results in drivers sometimes working without pay when the truck is not moving, working for less than the minimum wage when the truck is moving slowly, and working without pay during sleeper berth time; (2) Werner's policy of requiring drivers to pay its business expenses through improper deductions and funding personal bonds violates California and Nebraska law; (3) Werner's wage statements fail to accurately display information that is required under California and Nebraska

law; and (4) Werner has failed on a company-wide basis to provide drivers, while working in California, with duty-free meal and rest periods according to California law. (Filing No. 167 at pp. 2-3).

## ANALYSIS

Class certification under Rule 23 of the Federal Rules of Civil Procedure involves a two-part analysis. First, the proposed class must satisfy the Rule 23(a) requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). Second, the court must determine whether one of the three subsections of Rule 23(b) have been met. See Fed. R. Civ. P. 23(b). In this case, Plaintiffs seek a "hybrid" class certification pursuant to both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). (Filing No. 166).

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(3) provides that a class action may be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Matters relevant to the predominance and superiority findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"[A] plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994). "Rule

23 does not set forth a mere pleading standard" and class certification "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)(internal quotation omitted). Although the "rigorous" analysis may "entail some overlap with the merits of the plaintiff's underlying claim, . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013)(internal citation omitted). The court may consider merits questions "only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Finally, "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016)(quotation omitted). In *Sandusky*, the Court clarified that in the Eighth Circuit, the requirement that a class must be "adequately defined and clearly ascertainable" is not a separate requirement, but is instead is addressed as part of the "rigorous analysis of the Rule 23 requirements." *Id.*

Plaintiffs argue class certification is proper in this case because the claims for both putative classes arise out of Werner's standard and uniform policies and practices, which apply to all its drivers. Conversely, Defendants identify numerous reasons why class certification is not warranted, including that Plaintiffs again failed to adequately define the proposed California Class, and that Plaintiffs cannot establish the Rule 23(a) requirements of commonality, typicality, and adequacy, or the Rule 23(b) requirements of superiority and predominance for either class.

Using the above framework, the Court will rigorously analyze each prerequisite set forth in Rule 23.

## A. Rule 23(a) Requirements

### 1. Numerosity

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No arbitrary rules regarding the necessary size of

classes have been established," and the court may consider the size of the class, "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

There is no real dispute that numerosity exists for the proposed classes. Plaintiffs' smallest proposed class is comprised of California residents that picked up and/or dropped off a load in the state of California. Approximately 3,000 putative class members are California residents. The Nebraska Class encompasses "all truck drivers who worked or work anywhere for Werner[.]" It is undisputed that Werner employed thousands of drivers during the proposed class period, and joinder of thousands of employees would be impractical. Therefore, the Court finds numerosity is met.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "[A] proponent of certification must satisfy the commonality requirement by showing that a classwide proceeding will 'generate common answers apt to drive the resolution of the litigation.'" *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011)(quoting *Dukes*, 564 U.S. at 350). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). However, the rule "does not require that all questions of law or fact raised in the litigation be common . . . [and] indeed, even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 368-69 (internal quotation and citations omitted).

Plaintiffs identify a number of legal and factual questions common to the proposed classes. First, Plaintiffs allege that Werner's uniform practice and policy of paying drivers for presumed mileage driven does not compensate drivers for all time actually worked. Although Werner suggests commonality does not exist because drivers are not subject to the same pay

polices and packages and that the amount of supplemental and discretionary pay varies for individual drivers in any given pay period, it is undisputed that Werner uniformly compensates all drivers based on a point to point mileage system. It is this uniform compensation system that Plaintiffs allege systematically violates wage laws of California and Nebraska and results in uncompensated work time or rest breaks. "Whether this method of payment is contrary to law is a common question" to all Werner drivers and is capable of classwide resolution. See *Baouch*, 2014 WL 1884000, at *3 (D. Neb. May 12, 2014) (certifying class of employees subject to uniform compensation policies); *Petrone v. Werner Enter., Inc.*, 2017 WL 510884, at *11 (D. Neb. Feb. 2, 2017)(denying defendants' motion to decertify a class because "Plaintiffs allege they were victimized by a single and centralized common practice and policy, which uniformly affected the entire class.").

Plaintiffs further allege that Werner's uniform paycheck deduction policies, including the Personal Bond Policy and the $4 transaction fee charged by Werner, are unlawful under California and Nebraska law. These deduction policies are set forth in Werner's Handbook and their lawfulness can be evaluated on a classwide basis without reference to individual circumstances. Plaintiffs also allege that Werner's standardized wage statements do not reflect all the categories as required under California or Nebraska law, including "accurately" stating the number of hours worked. (Filing No. 167 at pp. 13-14). Whether Werner's wage statements are noncompliant with Nebraska and/or California law is a question capable of classwide resolution. Finally, Plaintiffs allege that Werner has failed on a company-wide basis to provide drivers, while working in California, with duty-free meal and rest periods according to California law. Werner's policy for taking rest breaks is contained in the Handbook. Whether Werner's policy for rest breaks violates California law with respect to its drivers while working in California can be answered on a classwide basis. Accordingly, the Court finds commonality is established for both classes.

### 3. Typicality

Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the

class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-62 (quotation marks and citation omitted). Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)(quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (1977)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern*, 84 F.3d at 1540. (citation omitted). Typicality and commonality "tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349, n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982)).

Plaintiffs contend their claims are typical of both proposed classes because they held the same position as all class members, had the same duties as defined by the Driver Handbook, and were subject to the same uniform policies and practices. Specifically, Plaintiffs assert they "were paid based on Werner's mileage-based compensation model that did not pay for all time worked, were not provided meal and rest periods in accordance with California mandates or in their absence paid premium wages, experienced unlawful deductions from their paychecks, and received wage statements that do not accurately show total wages (including premium wages for missed meal and rest periods), hourly wages, total hours worked, and hours and wages for compensable rest periods." (Filing No. 167 at pp. 15-16). The Court finds that the named plaintiffs share grievances of the putative classes, and although there may be some factual differences amongst some individual claims, such factual differences do not preclude a finding that typicality exists. Because Plaintiffs' claims are typical of the proposed classes, the Court finds typicality is established.

### 4. Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class representative to be adequate, he or she must be a member of the class she seeks to represent. See *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1289 (8th Cir. 1982). This requirement focuses on whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63. This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiffs are California residents who work or worked for Werner. They assert that they will adequately protect the interests of all proposed class members because their claims are typical of those of the proposed classes, they possess the same interests, and they have suffered the same injuries as the proposed classes. There is no conflict of interest between the named plaintiffs and the prospective class members, as Plaintiffs are both part of the California Class and the Nebraska Class (which encompasses all drivers), and thus their interests in this case are the same as both putative classes. The representative plaintiffs' legal claims or factual circumstances do not suggest that the representatives' interests in pursuing the litigation will diverge from the classes as a whole. Plaintiffs declare they understand the nature of the claims and their duties to the class. (Filing No. 167 at pp. 16-17). Class counsel is qualified and experienced, and has represented several class plaintiffs in similar class actions. See, e.g., *Baouch et al. v. Werner Enterprises, Inc. et al.*, 8:12cv408; *Petrone v. Werner Enterprises, Inc. et al.*, 8:11cv401 and 8:12cv307; *Ayala v. U.S Xpress Enter., Inc.*, 2017 WL 3328087 (C.D. Cal. July 27, 2017). Therefore, the Court finds the named Plaintiffs will adequately represent both classes.

### B. Rule 23(b) Requirements

Once the Rule 23(a) prerequisites are established, the plaintiffs must then then establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. See Fed. R. Civ. P. 23(b)(3). Plaintiffs seek a "hybrid" class certification pursuant to both Fed. R. Civ. P.

23(b)(2) and 23(b)(3).  "The use of this sort of hybrid certification, insulating the (b)(2) class from the money-damage portion of the case, is an available approach that is gaining ground in class action suits."  *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

### 1.     Rule 23(b)(3)

Certification of a Rule 23(b)(3) class requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed.R.Civ.P. 23(b)(3).  The rule "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  It is "far more demanding" than the requirement of commonality.  *Id.* at 623-24.

But Rule 23(b)(3) does not require plaintiffs seeking class certification to prove that each element of their claim is susceptible to classwide proof.  See *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013).  Rather, plaintiffs are required to show: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Matters relevant to the Rule 23(b)(3) determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

### a.     Predominance

"When determining whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining whether, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class."  *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 377 (8th Cir. 2013).  "In contrast to Rule 23(a)(2), the issue of predominance under Rule 23(b)(3) is qualitative rather than quantitative.  Thus, that there is a common question does not

end the inquiry," as "'the predominance criterion is far more demanding.'" *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016)(quoting *Amchem*, 521 U.S. at 624. "The requirements of the Rule 23(b)(3) analysis readily demonstrate why the district court must perform a rigorous analysis before determining that issues common to the class predominate over issues that differ among the individual class members." *Id.* (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013)). The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013).

"The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions . . . overwhelm the questions common to the class." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478-79 (8th Cir. 2016)(citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* at 479 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016)). When reviewing for predominance, "'a court must conduct a limited preliminary inquiry, looking behind the pleadings,' but that inquiry should be limited to determining whether, if the plaintiffs' 'general allegations are true, common evidence could suffice to make out a prima facie case for the class.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011)(quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Defendants argue that common issues do not predominate due to the individual analysis required for each putative class member. Among other issues cited by Defendants, they argue that no common proof can be used to determine whether a driver was paid below minimum wage, why a driver skipped a rest break, whether a driver performed off the clock work on break, whether a particular driver can claim an unlawful deduction, or to otherwise prove damages. The Court does not agree.

With respect to Plaintiffs' claims that Defendants' classwide policy of paying drivers based on miles driven fails to compensate drivers for time spent performing non-driving work duties, Defendants' liability for depends on whether California and Nebraska require it to

compensate drivers separately for non-driving job duties. And, although individual damages may vary, "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Bouaphakeo*, 136 S. Ct. at 1045 (internal quotation omitted). In this case, any individual differences amongst the putative class members are outweighed by common questions of law and fact.

Plaintiffs' rest break claims arise under California law, which requires one uninterrupted thirty-minute duty-free meal period after no more than five hours of work during shifts greater than six hours and a second meal period after no more than ten hours of work in shifts greater than twelve hours. California Wage Order No. 9-2001 §§ 11, 12; *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 528 (Cal. 2012). Although Defendants suggest Plaintiffs would have to prove why they skipped breaks, the Wage Order "imposes an affirmative obligation on every employer to authorize and provide legally required meal and rest breaks; if it fails to do so, it has violated the law and is liable," and thus an individual's reasons for skipping breaks is not relevant. *Benton v. Telecom Network Specialists, Inc.*, 163 Cal. Rptr. 3d 415, 436 (Cal. Ct. App. 2013). Defendants have a uniform rest and break policy set forth in its Drivers Handbook based on federal HOS. Plaintiffs set forth several theories by which Defendants' rest break policy violates California law, including that the policy does not comply with duration and timing requirements under California law on its face, and that employees are not paid for time spent taking rest breaks or required to record missed meal periods. Common questions predominate with respect to these claims, because the legality of such classwide policy can be evaluated without reference to individual circumstances.

California law requires an employer to indemnify employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). Nebraska law permits an employer to deduct portions of an employee's wages when "the employer has a written agreement with the employee to deduct funds. Neb. Rev. Stat. § 48-1230(1). Whether Defendants' policies for paycheck deductions comply with these laws (and whether the agreement with Drivers Management is a "written agreement" authorizing the deductions) can be evaluated on a classwide basis.

Plaintiffs' wage statement claims arise under California Labor Code § 226(a), which requires several itemized categories, including:

> (1) gross wages earned, (2) total hours worked by the employee . . . (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions . . . (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee[.]

Cal. Lab. Code § 226(a). This section deems an employee to have suffered injury "if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more" of the above categories. Cal. Lab. Code § 226(e)(2)(a). "Promptly and easily determine" is not a subjective standard as Defendants suggest, but is an objective standard defined as whether "a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C). Nebraska requires "a wage statement showing, at a minimum, the identity of the employer, the hours for which the employee was paid, the wages earned by the employee, and deductions made for the employee." Neb. Rev. Stat. § 48-1230(2). Whether the uniform wages statements Defendants provide to its employees comply with Nebraska and/or California law (or whether the statements are required to comply with California law) can be determined on a classwide basis without reference to individual circumstances.

Defendants frequently argue the merits of Plaintiffs' case; for example they assert the classes should not be certified because "Plaintiffs have not offered any common evidence to support their claim that drivers were underpaid under either Nebraska or California law[.]" (Filing No. 178 at p. 34). However, "The question at class certification is not whether the plaintiffs have already proven their claims through common evidence. Rather, it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions." In re Zurn Pex Plumbing, 644 F.3d at 619 (citing Blades, 400 F.3d at 566-67.

Defendants also raise several defenses that they argue defeat predominance. The Court does find that Plaintiffs' California Class definition, which includes anyone who "picked up and/or dropped off a load in California," raises choice of law issues and questions with respect to the applicability of California law. However, Plaintiffs' alternative California Class limited to California residents resolves the Court's concerns with respect to choice of law/application of California law at this class certification stage of proceedings. See, e.g., Ayala v. U.S Xpress Enterprises, Inc., 2017 WL 3328087, at *4 (C.D. Cal. July 27, 2017)("Plaintiff's class now consists only of California residents asserting claims based solely on work performed in California, the choice of law analysis is no longer a predominance issue."). Having considered the law and facts and set forth by the parties, the Court finds common questions predominate over the individualized concerns with respect to the claims raised by the Nebraska Class and the alternative California Class.

### b. Superiority

The second prong of the Rule 23(b)(3) inquiry requires the class action to be "superior to other available methods for the fair and efficient adjudication of the controversy." See Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy but "will create judicial diseconomy." Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 94 (W.D. Mo. 1997). In evaluating superiority, a significant consideration is whether the claims are too small to be litigated individually. Amchem Prods., Inc., 521 U.S. at 617.

The Court has carefully considered the factors set forth in Rule 23(b)(3)(A)-(D) and considered the alternatives to a class action. The common issues are well stated in the Fourth Amended Complaint and documented by the record before the Court. The underlying basis for liability and defenses are readily applicable to the individual class members generally. Any nuances in the claims or defenses are outweighed by the efficiency benefits of a class action that involves questions of liability and defenses common to the individual claimants. The relatively

small amount of damages at issue for each litigant compared to the cost and effort of filing an individual complaint provides little incentive for class members to pursue individual claims. The Court is not aware of any individual actions pending for the same claims, and this district has provided the venue for several similar (but not identical) class actions against Defendants for rest break and wage policies. Allowing the action to proceed as a class action will resolve the issues in a single case and promote judicial economy, despite the potential difficulties of class litigation. Therefore, the Court finds a class action would be the superior method for resolving Plaintiffs' claims. Accordingly, the alternative California Class and Nebraska Class should be certified pursuant to Rule 23(b)(3).

### 2.      Rule 23(b)(2)

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" *Fed. R. Civ. P. 23(b)(2)*. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class," and "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61. "[C]ohesiveness is the touchstone of a (b)(2) class[.]" *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

In this case, the putative class members seek several forms of declaratory relief. Putative class members request a determination under California and Nebraska law that Defendants' policy and practice violates minimum wage requirements by not paying for compensable time (other than driving time) and is thus unlawful; a determination under California and Nebraska law of the legality of Defendants' policies and practices regarding wage deductions and itemized wage statements; a determination that Defendants' employees are entitled to the protection of California law while working in California, and that Defendants failed to comply with California law by not providing paid rest breaks and by not providing required duty free meal period or premiums for missed rest breaks. Because all class members were subject to the same or substantially same policies, both classes are sufficiently cohesive for purposes of maintaining an

injunctive class.  Therefore, the Court finds the alternative California Class and the Nebraska Classes should additionally be certified pursuant to Rule 23(b)(2).

**C.      Appointment of Class Counsel**

Swartz Swidler LLC (by Justin Swidler, and Richard Swartz), Law Offices of James M. Sitkin (by James M. Sitkin), Goldstein, Borgen, Dardarian & Ho (by David Borgen, James Kan, and Raymond Wendell), and the Turley Law Offices (by William Turley, David Mara, and Jamie Serb) seek appointment as Class Counsel pursuant to Rule 23(g).  For the reasons fully set forth in their previously filed declarations (Filing Nos. 65-1, 65-2, 65-3, 138), the Court finds these law firms and the identified attorneys should be appointed as Class Counsel pursuant to Rule 23(g).

**D.      Motion to Strike**

Defendants request that Exhibit A be stricken pursuant to Fed. R. Civ. P. 37 because it was not timely produced in discovery or identified in Rule 26(a) initial disclosures.  Defendants request Exhibits 3, 4, and 5 be stricken as they were not produced or identified during discovery, the exhibits are unauthenticated, and are inadmissible hearsay.  (Filing No. 175).

"On a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial."  *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D. Minn. 1999); see *Postawko v. Missouri Dep't of Corr.*, 2017 WL 3185155, at *4 (W. D. Mo. July 26, 2017)("To create a rule that required evidence, much less admissible evidence, to be submitted at the class certification stage, would turn a class certification motion into something akin to a motion for summary judgment, which would be inconsistent with an expeditious resolution of class certification."); *Paxton,* 688 F.2d at 562 n.14 ("Hearsay testimony may be admitted to demonstrate typicality.").  In consideration that the rules of evidence do not strictly apply, the Court will not strike Plaintiffs exhibits.  The Court need not address the ultimate admissibility of the proffered exhibits at this stage, but has considered them when necessary for resolution of the renewed motion for class certification.

## CONCLUSION

Having rigorously analyzed the requirements of Rule 23, the Court finds that Plaintiffs have established that certification is appropriate under Rule 23(b)(2) and Rule 23(b)(3) of the Nebraska Class defined as "all truck drivers who worked or work anywhere for Werner after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit." The Court further finds that Plaintiffs have established that certification is appropriate under Rule 23(b)(2) and Rule 23(b)(3) of the alternative California Class defined as: all truck drivers who, while working for Werner, *were California residents* and picked up and/or dropped off a load in the state of California after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit. Upon consideration,

**IT IS HEREBY RECOMMENDED** to the Honorable Joseph F. Bataillon, Senior United States District Court Judge, that:

1. Plaintiffs' Renewed Motion for Class Certification (Filing No. 166 in Case No. 8:14cv319; Filing No. 71 in Case No. 8:15cv287) be granted;

2. The Court certify the alternative California Class limited to California residents;

3. The Court certify the Nebraska Class;

4. The Court appoint the named Plaintiffs in Case No. 8:14CV319 as the class representatives; and

5. The Court appoint Swartz Swidler LLC (by Justin Swidler, and Richard Swartz), Law Offices of James M. Sitkin (by James M. Sitkin), Goldstein, Borgen, Dardarian & Ho (by David Borgen, James Kan, and Raymond Wendell), and the Turley Law Offices (by William Turley, David Mara, and Jamie Serb) as Class Counsel.

**IT IS ORDERED:** Defendants' Motion to Strike Plaintiffs' Exhibits Offered in Support of Plaintiffs' Renewed Motion for Class Certification (Filing No. 175 in Case No. 8:14cv319; Filing No. 80 in Case No. 8:15cv287) is denied.

Dated this 28th day of February, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

A party may object to a magistrate judge's order or findings and recommendation by filing an objection within fourteen (14) days after being served with a copy of the order or findings and recommendation. NECivR 72.2. Failure to timely object may constitute a waiver of any objection.