# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, et al, individually and on behalf of all those similarly situated, | 8:14CV319 ORDER |
| and | |
| WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public, | 8:15CV287 ORDER |
| and | |
| BRIAN VESTER and JOEL MORALES, individually and on behalf of all others similarly situated, | 8:17CV145 ORDER |
| and | |
| DANIEL BRYANT, individually and on behalf of all others similarly situated, | 8:20CV227 ORDER |
| Plaintiffs, | |
| vs. | |
| WERNER ENTERPRISES, INC., et al., | |
| Defendants. | |

This matter is before the court on the plaintiffs' motion to compel production of documents responsive to the plaintiffs' third and fourth set of document requests (Filing No. 313 in the Lead Case)[1] and motion to compel supplemental responses to plaintiff Abarca's first set of document production requests and to plaintiff Alesna's first set of document requests (Filing No. 314 in the Lead Case). The plaintiffs' first motion primarily concerns whether the defendants, Werner Enterprises et al. ("Werner"), should be compelled to produce, in CSV format, all electronic Qualcomm/Omnitracs messages sent to and received by all of Werner's trucks over at least a ten-year period—which Werner represents is over one billion messages. The court's short

---

[1] Hereinafter all citations to the record will refer to the filing numbers in the Lead Case.

answer to that question is no. The plaintiffs alternatively seek a court order compelling Werner to produce supplemental responses to certain subsets of Omnitracs/Qualcomm messages. The plaintiffs also request supplementation of 30 of 32 requests in their Fourth Set of Request for Production of Documents ("RFP") on the basis that Werner raised meritless and improper objections to those requests.

The plaintiffs' second motion to compel (Filing No. 314) seeks supplementation of certain RFPs served by plaintiffs Ezequiel Abarca and Alfredo Alesnda, Jr. The plaintiffs maintain these requests seek information related to Werner's affirmative defenses.

## BACKGROUND

As detailed by prior court orders, this class action arises out of the plaintiffs' allegations that Werner has uniform policies and practices that violate various wage and hour laws of California and Nebraska. (Filing No. 119; Filing No. 150). Werner's drivers are paid for point-to-point mileage per assigned trip at a rate based on various factors ("piece rate"). Werner also may pay drivers supplemental pay and/or discretionary pay for certain things such as loading/unloading, layovers, lumpers, stop pay, safety pay, etc. Werner's Driver Handbook outlines the Federal Motor Carrier Hours of Service ("HOS") Duty Status Definitions and requires drivers to log their own time as one of four statuses: "off duty," which includes rest breaks taken outside of the sleeper berth and meal breaks (line 1); "sleeper berth" (line 2); "driving" (line 3); and "on duty-not driving" (line 4), which includes all time "[f]rom the time you begin to work or are required to be ready to work until the time you are relieved from work." Line 4 activities include pre-trip and other inspections, physically loading and unloading the trailer, paperwork and receipts at a customer, time spent providing a breath sample or urine specimen, quarterly safety training, among others, but does not include rest time in a parked vehicle or up to two hours in the passenger seat of a moving vehicle immediately before or after an 8-hour consecutive break in the sleeper berth. Drivers are responsible for logging their own activities. (Filing No. 186). The plaintiffs allege Werner's compensation system results in a

> uniform policy and practice . . . of not paying all wages owed, not paying for all time worked, including compensable rest periods and compensable on-duty non-driving time, not paying premium hours for missed meal/rest periods (for the California Class), making improper deductions from pay for work performed, not providing properly itemized pay statements that accurately reflect hours worked, applicable hourly rates and (for the California Class) premium hours for missed

> meal/rest periods, and . . . not maintaining records that accurately reflect hours worked and applicable hourly rates.

(Filing No. 160 at p. 6). The plaintiffs allege "Werner systematically violates the wage-and-hour laws of both California and Nebraska" by implementing the above payment structures and policies. Plaintiffs divide their claims into four categories: (1) Werner's compensation plan results in drivers sometimes working without pay when the truck is not moving, working for less than the minimum wage when the truck is moving slowly, and working without pay during sleeper berth time; (2) Werner's policy requires drivers to pay its business expenses through improper deductions and funding personal bonds; (3) Werner's wage statements fail to accurately display information required by law; and (4) Werner fails to provide drivers working in California with duty-free meal and rest periods according to California law. (Filing No. 167 at pp. 2-3).

Werner raised numerous affirmative defenses, including: (1) the plaintiffs consented in writing that their employment with Werner was Nebraska-based and subject to Nebraska law; (2) the plaintiffs' claims are barred in whole or in part because there is a conflict of laws prohibiting the extra-territorial application of California law; the plaintiffs' claims are barred by (3) ratification and the (4) statute of limitations; (5) the plaintiffs' claims are preempted by the Dormant Commerce Clause and the Federal Aviation Administration Authorization Act; (6) Werner acted in good faith; (7) the plaintiffs consented in writing to alleged paycheck deductions; (8) the plaintiffs failed to exhaust administrative remedies; (9) the plaintiffs' claims are unconstitutional; (10) the plaintiffs are equitably estopped by the doctrines of waiver, estoppel, laches, and/or unclean hands; (11) Plaintiffs' damages are de minimis; (12) penalties under PAGA would be unjust, arbitrary, oppressive, and confiscatory; (13) the plaintiffs' claims and civil penalties awarded under PAGA, if any, must be limited to those penalties applicable to an initial violation; (14) Werner substantially complied with all statutory obligations; (15) the plaintiffs lack standing; (16) Werner's compensation practices are lawful; and (17) no agreement existed for Werner to pay the wages claimed by the plaintiffs under the NWPCA. (Filing No. 161 at pp. 9-12).

The court certified a Nebraska class and California class of truck drivers who work or worked for Werner, totaling over 66,000 drivers. In certifying the classes, the court found "the plaintiffs' claims hinge on the question of whether Werner's nationwide system of compensation

violates the law" and that "the legality of class-wide policies on compensation for all hours of work, payment of minimum wages, payroll deductions, wage statements, and meal and rest breaks are questions capable of resolution through common evidence that can be resolved once for the entire class." ([Filing No. 190 at pp. 3-4](#)).

The primary discovery dispute concerns the plaintiffs' request that Werner produce electronic messaging data from Werner's trucks. Werner's trucks are equipped with hardware called Omnitracs (formerly Qualcomm) units, which drivers use to send and receive electronic messages. (Filing. No. 316-3 at p. 14 - Deposition of Mary Howe). According to the plaintiffs, these are "text-based messages sent to and from drivers and management, including macros indicating when drivers were assigned a load, when drivers accepted loads, and when drivers arrived or left customer locations." The plaintiffs contend the messaging data is "extremely relevant to the hours worked by drivers, and is likely the most accurate record in existence showing duties and tasks performed by class members, as well as when and where those tasks were performed." ([Filing No. 315 at p. 3](#)). The plaintiffs initially asked Werner to produce "all text and other messages sent to and/or received by each class member via the computer in the truck" and, in CSV format, "time records maintained by [Werner] that [Werner] contend[s] are the most precise records [Werner] possess[es] showing the hours that each class member was working." ([Filing No. 316-1 at pp. 9-10](#) - Third Set of Requests for Production).

Werner objected to these requests as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (*Id.*). Werner's former technology strategist, Mary Kaye Howe, testified regarding the logistics of responding to the plaintiffs' request for messaging data for all class members over a ten-year period. ([Filing No. 316-3](#) - Howe Depo.). Werner's electronic messaging data is stored at Werner's headquarters on tapes spread across five OMMS tables and one position history table. (*Id.* at pp. 15-16, 21, 41). Messaging data is tied to a truck ID, not a specific driver. Not all of Werners' drivers are members of the certified classes (such as trainee drivers and independent contractors), so in order to respond to the plaintiffs' request for class members' messages, Howe testified Werner would be required to write a code in "in order to pull the correct log data for the class members and the appropriate time periods," which she believed may not even be possible. (*Id.* at pp. 16-17).

In order to alleviate Werner's stated burden associated with filtering messaging data to specifically identify class members' messages, the plaintiffs subsequently revised their request

4

and now seek an order compelling Werner to produce the five OMMS tables and one position table in their raw, unfiltered, native format. (Filing No. 315 at pp. 4-5). Although this request would eliminate the burden associated with writing a code to filter for class members' messages, Werner maintains the plaintiffs' revised request is still unduly burdensome, as it requests an extreme amount of data, seeks data for non-class members, and does not seek evidence relevant to the class plaintiffs' certified claims. Werner further argues that, if the factfinder does need to review each of the 66,000 individual class member's messaging data, it is clear that this case cannot move forward on a class-wide basis. (Filing No. 325 at p. 3).

In the event the court does not compel Werner to produce all messaging data in its raw format, the plaintiffs seek a court order compelling production of certain subsets of messaging data requested by RFPs 2-20 of their Fourth Set of Requests for Production. (Filing No. 315 at pp. 4, 18). The plaintiffs additionally seek supplementation of RFPs 1, 21-23 and 26-32 because the "evasiveness of [Werner's] responses as to what is withheld also leaves unclear the extent of responsive documents." (Filing No. 315 at pp. 1-2). Broadly speaking, the plaintiffs' Fourth Set of RFPs request documents or data in CSV format showing specific driver activities and hours worked; for example, "documents showing the precise time and date that each class member entered and exited [Werner's] terminal, drop yard, or other facility, as well as the location of the property," (RFP 31) and "GPS records or similar records showing where each class member was while performing work for [Werner]" (RFP 22). (Filing No. 316-1). Altogether, the plaintiffs state 30 of their 32 RFPs in their Fourth Set of RFPs are at issue in their first motion to compel. (Filing No. 315 at p. 18).

In their second motion to compel, the plaintiffs seek a court order compelling Werner to produce supplemental responses to RFP 32, 37, 48, and 49 of Plaintiff Abarca's first set of document production requests and RFP 24, 28, 39, and 40 of Plaintiff Alesna's first set of document requests. (Filing No. 314). Generally, these RFPs request Werner to produce employee complaints, court rulings, and communications that the plaintiffs maintain are relevant to some of Werner's affirmative defenses.

## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

5

The scope of relevant discovery is extremely broad. "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." *Met-Pro Corp. v. Industrial Air Technology, Corp.*, No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009). Rule 26(b)(1) does not give any party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *Hartman v. City of Lincoln, Nebraska*, No. 4:19CV3100, 2021 WL 3856129, at *2 (D. Neb. Aug. 27, 2021)(quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)).

Rule 26(b)(2)(B) provides specific limitations on electronically stored information ("ESI"):

> A party need not provide discovery of [ESI] from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B). Fed. R. Civ. P. 26(b)(2) advisory committee's notes to the 2006 amendment provides seven factors to inform the "good cause" inquiry:

> (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

Fed. R. Civ. P. 26(b)(2) advisory committee's notes (2006 amendment). "The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case." *Id.*

The court has authority to limit the scope of discovery, *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003), and the court is specifically authorized to limit discovery

6

that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ.P. 26(b)(2)(C)(i).

### I. Motion to Compel Omnitracs/Qualcomm Data

The plaintiffs maintain Omnitracs/Qualcomm messaging data is "highly relevant" to its claims that Werner requires drivers to work during their "off-duty" and "sleeper berth" time. Although the plaintiffs recognize that they will rely on class members' driving logs (all of which have been produced by Werner, together with pay data and trip data), the plaintiffs assert the logs do not offer a "complete picture of the duties and tasks drivers perform while over-the-road." (Filing No. 315 at pp. 7-8). The plaintiffs assert Werner has not established it would be unduly burdened by producing all the requested messaging data in its raw format and has misrepresented the amount of effort it would take to fulfill the plaintiffs' request. (Filing No. 315 at pp. 12-15). The plaintiffs further suggest Werner has created the undue burden itself by continuing to regularly archive messaging data throughout this litigation. (*Id*. at p. 16).

Contrary to the plaintiffs' assertions, Werner has demonstrated that archived messaging data is not reasonably accessible and that complying with the plaintiffs' request to produce all messaging data for all its trucks over a more than 10-year period would be a significant and undue burden. See Fed. R. Civ. P. 26(b)(2)(B)("On motion to compel [ESI] discovery . . . the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). Werner's former technology strategist testified that production of all of Werner's trucks' messages from the entire 10-year class period would be "an extreme amount of data" and she was "not sure how feasible it would be" to comply with the request. (Filing No. 316-3 at pp. 17-18 - Howe Depo.). Werner's drivers send and receive "thousands of Qualcomm messages each day." Werner's servers are not capable of storing more than few months' worth of messaging data at a time, requiring Werner to archive this data on a regular basis by saving the data to tapes stored at Werner's headquarters. (Filing 272-1 at p. 2 - Howe Decl.). Werner backs-up messaging data onto tapes spread across five OMMS tables and one position history table approximately every three months (although this time period varies) and only has the most recent data on its system. Werner cannot suspend its archival process due to the storage limitations of its servers and the sheer volume of messaging data generated during its regular business each day. Therefore, the court will not fault Werner for continuing its regular

archival process during this lengthy litigation. (Filing No. 316-3 at pp. 15-16, 21, 39, 41, 94 - Howe Depo; Filing No. 272-1 - Howe Decl.).

The plaintiffs emphasize they are "only" seeking production of the five OMMS tables and one position history table in their raw, native format, for the class period beginning June 4, 2010. However, Howe clarified that, although archived messaging data is stored across five OMMS tables, "it's five tables like about 40 times over, over that ten-year period. So we keep saying five tables. It's not five. . . It's a couple hundred, probably." (*Id.* at p. 38). Howe roughly estimated that one combined OMMS file would total "maybe a hundred million rows [of text] in a three-month time period." (*Id.* at pp. 39-40). Howe has, in the past, extracted archived log data into CSV files, but was unsure whether her previous method would work with a file of the size requested. (*Id.* at p. 37, 113).

Although the plaintiffs' revised request for "all" messaging data over a more than 10-year period would eliminate Werner's stated burden associated with writing code to identify and filter for specific class-members, the plaintiffs' request nevertheless is significantly burdensome. In order to comply with the plaintiffs' request, each set of archived data must be restored to Werner's system. As explained by Howe, due to the limited storage capacity of Werner's server, each subset of restored data must be deleted before loading and restoring the next subset of archived data onto the system. The restoration process for each dataset cannot be completed continuously because the tape drive must be available and Werner must "restart each one after the last one finished and delete the old one off before you do the next one." Howe testified that each of the six tables for each approximately 90-day dataset requires a separate restore. Howe testified that, in the past, is has taken 30 to 45 minutes to restore a single OMMS table for a single 90-day dataset, subject to a number of variables, including how busy the system is, for a total of 3-4-hours to restore all data for one 90-day dataset. To comply with the plaintiffs' request for all messaging data beginning June 4, 2010, Werner would have to repeat this 3-4-hour restoration process—not including the time it takes to delete and restart for every restore—for every 90-day dataset over a more than ten-year period. (Filing No. 316-3 at pp. 110-12 - Howe Depo). Howe testified that producing these tables in CSV format would be a "massive amount of data" that "would take a significant amount of work" and was "not sure how feasible it would be" to compile. (*Id.* at 18, 34).

8

The court does agree with the plaintiffs that messaging data may, in many individual instances, provide a "more complete picture" or be "more useful" in showing the kinds of activities performed by Werners' drivers on any given day of their employment than driver logs alone. (Filing No. 315 at pp. 7-8). However, the value of that data to the plaintiffs' class-wide claims does not outweigh the tremendous burden to Werner in compiling and producing it. See Fed. R. Civ. P. 26(b)(2). The plaintiffs do not contend the messaging data is necessary to resolve their claims; rather, they contend it is "more useful" than driver logs. For example, the plaintiffs previously explained to the court that when drivers log Line 4 status, they are required to notate their specific non-driving activities outlined in the Driver Handbook, including the time spent performing a pre-trip inspection, time spent fueling the vehicle, and the precise times and locations at which they received and delivered freight and time they spent loading and unloading. (Filing No. 184 at p. 43-44). These notes are contained in the drivers' log files, which have been produced by Werner. Therefore, as the plaintiffs initially represented to the court when asking to certify this case as a class action, liability and damages for their class-wide claims "can be discerned from class members' driving logs," wage statements, personnel records, and Werners' "uniform conduct and expansive records." (Filing No. 167 at pp. 34-35)(citing *Petrone v. Werner Enterprises, Inc.*, 121 F. Supp. 3d 860, 870 (D. Neb. 2015)(finding that computations based on Werner's electronic driver logs and pay records results in a just and reasonable inference of damages)). The court certified the plaintiffs' claims on that basis. (Filing No. 190 at pp. 3-4)("The court agrees . . . that the legality of class-wide policies on compensation for all hours of work, payment of minimum wages, payroll deductions, wage statements, and meal and rest breaks are questions capable of resolution through common evidence that can be resolved once for the entire class. . . . The plaintiffs' claims hinge on the question of whether Werner's nationwide system of compensation violates the law."). Under the circumstances, the court finds the plaintiffs' motion to compel all messaging data should be denied because its relevance to the plaintiffs' class claims is not outweighed by the significant burden to Werner. See, e.g., *Petrone v. Werner Enterprises, Inc.*, No. 8:11CV401, 2014 WL 12646025, at *2 (D. Neb. Mar. 31, 2014)(denying a request to produce archived Qualcomm messaging data because the "immense time, effort, and expense necessary to compile the requested information in the format requested by plaintiffs presents a significant burden to defendants" compared to the "questionable" value of the data); *Evans v. Wal-Mart Stores, Inc.*, No. CV 17-7641-AB (KKX), 2020 WL 2129590, at *5

(C.D. Cal. Feb. 14, 2020)(finding a request to produce "all" documents concerning hours worked in a class action would result in "millions" of daily punch records and was overbroad, disproportionate to the needs of the case, and unnecessarily duplicative).

The plaintiffs also seek supplementation of 30 of 32 RFPs served in their Fourth Set of Document Requests (Filing No. 316-2). The plaintiffs state RFPs 2-20 seek subsets of Omnitracs/Qualcomm data and are subsumed by their primary request for all messaging data. (Filing No. 315 at p. 18). RFPs 2-12 and 14-19 request Werner to "provide, in CSV format, all documents showing the precise time and date that each class member" was in layover status (RFP 2); was with one of Werner's trucks awaiting its repair (RFP 3); was with one of Werner's trucks awaiting another one of Werner's drivers to take over the load pursuant to a repower (RFP 4); was at a customer's facility (RFP 5); signed in or signed out with security at a customer's facility (RFP 6); completed paperwork relating to his or her job with Werner or submitted paperwork to a customer or to Werner while at a customer's facility (RFP 7); was on detention at a customer's facility (RFP 8); witnessed or participated in the breaking of the seal on the tractor trailer door of one of Werner's trailers at a customer's facility (RFP 9); was free of any job duties and not working while at a customer's facility (RFP 10); was working while at a customer's facility (RFP 11); was allowed by Defendant to leave a customer's facility while waiting for a truck to be ready to drive away (RFP 12); signed in or signed out with security at one of Werner's terminals, dropyards, or other facilities (RFP 14); completed paperwork relating to his or her job with Werner or submitted paperwork to Werner while at one of its terminals, dropyards, or other facilities (RFP 15); was free of any job duties and not working while at one of Werner's terminals, dropyards, or other facilities (RFP 16); was working while at one of Werner's terminals, dropyards, or other facilities (RFP 17); was allowed by Werner to leave while waiting for a truck at one of its terminals, dropyards, or other facilities to be ready to drive away (RFP 18); and was engaged in required or suggested training by Werner while waiting for a truck at one of its terminals, dropyards, or other facilities to be ready to drive away (RFP 19).

For the same reasons stated above, the court will not order Werner to produce the requested subsets of Omnitracs/Qualcomm messages. The plaintiffs rely on Judge Strom's decision in *Petrone* wherein he required Werner to produce archived Qualcomm data "indicating when student drivers were picked up and dropped off" in a class action by student drivers. *Petrone v. Werner Enterprises, Inc.*, No. 8:11CV401, 2014 WL 12646025, at *2 (D. Neb. Mar.

31, 2014). In doing so, Judge Strom "recognize[d] this presents a significant burden to the defendants" but found the "information is highly relevant to damage calculations for periods in the sleeper berth, and the Court has not been made aware of any other less burdensome source." *Id.* In the same order, however, Judge Strom denied the plaintiffs' request for "a CSV formatted file containing an array of information regarding changes in duty status that would have been sent by plaintiff drivers to defendants" over Qualcomm, and denied the plaintiffs' request for a "CSV formatted file containing GPS data denoting the periodically reported position of every truck driven by the class members during the class periods," as both requests were unduly burdensome for Werner to produce. *Id.*

In this case, the plaintiffs' requests for numerous subsets of Omnitracs/Qualcomm messaging data is not nearly as limited as the single "picked up and dropped off" macro required for Werner to search for and produce the requested student driver Qualcomm messages in *Petrone*—the production of which Judge Strom still recognized "present[ed] a significant burden" to Werner. Werner maintains "there is no feasible way to search for communications regarding whether each of the over 66,000 class members was, for example, 'with one of Defendants' trucks awaiting another one of Defendants' drivers to take over the load pursuant to a repower,'" among the other categories requested by the plaintiffs. (Filing No. 325 at p. 20). Though the court again does not agree with Werner's position that messaging data has no relevance whatsoever, the court does agree that production of that data would be unduly burdensome to produce and is not proportional to the needs of the case, particularly considering the plaintiffs have represented that other evidence, such as driver logs, would suffice. See, e.g., *Browne v. P.A.M. Transp., Inc.*, 434 F. Supp. 3d 712, 722 (W.D. Ark. 2020)(finding in an FLSA class action by truck drivers, calculation of damages based on the amount of time logged by drivers as "driving" or "on duty not driving," "time which, without dispute, constitutes work if logged accurately" constituted "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"). If the plaintiffs maintain certain subsets of Qualcomm/Omnitracs messaging data are necessary to resolve any class claims and calculate damages, then the plaintiffs may explore other solutions to reduce the burden to Werner, such as requesting certification of subclasses or requesting a more targeted category of messages using a specific macro as in *Petrone*. But, based on the current record before the court, the court will not order Werner to search for and produce any subsets of the requested messaging data.

Aside from Werner's objections to RFPs 2-20 based on the undue burden in producing messaging data, the plaintiffs maintain RFPs 1 through 32, excluding RFPs 24 and 25, require supplementation based upon Werner's meritless objections. (Filing No. 315 at p. 18). The plaintiffs assert Werner improperly objected to RFPs 1-21 and 23 on the basis that a class should not have been certified and the documents requested is the type of individualized discovery a class action seeks to avoid. (Filing No. 315 at p. 22). The plaintiffs also argue Werner's "argumentative" objections (RFP 12, 13, 18, 20, 25, 26, 28, 29, 31, and 32) and insufficiently elaborated vagueness and ambiguity objections (RFP 1-4, 8, 11-20, 26, and 28-32) have no merit. (Filing No. 315 at p. 23). Having found Werner's undue burden objections should be sustained as to RFPs 2-20, the court will address the remaining RFPs at issue (1, 21-23, and 26-32).

RFP 1 requests "all documents exchanged between [Werner] and Omnitracs or Qualcomm concerning what data has been or could be retained or retrieved from [Werner's] use of Omnitracs or Qualcomm during the Class Period," among other communications between Omnitracs and Qualcomm. The plaintiffs assert this request seeks documents to refute Werner's undue burden/inaccessibility objection. (Filing No. 315 at p. 20). The court will not compel Werner to further respond to this request as Howe explained during her deposition why the information sought by this request either does not exist or is not relevant. See Filing No. 316-3 at pp. 15-20.

RFP 21 requests, in CSV format "all documents showing the dollar amount of any transaction fee charged to a Class Member for a cash advance by Defendants but not reimbursed to the Class Member by Defendants, the date of the cash advance, the date of the pay check from which the transaction fee was taken, and whether the cash advance was at least in part for a job-related expenses." RFP 22 asks Werner to "produce all documents showing a Class Member's written consent to be charged a transaction fee for cash advances." The plaintiffs assert these requests are reasonably calculated to obtain documents relating to their claim that Werner improperly assessed transaction fees when advancing money to class members and to Werner's defense that class members consented in writing to the charges. (Filing No. 333 at pp. 20-21).

As to RFP 21, Werner responded it has produced the class members' driver pay data, which contains the available pay data regarding advances, fees, and reimbursements. (Filing No. 316-2 at p. 28). The court finds Werner has adequately responded to RFP 21. As to RFP 22, Werner states it has produced all versions of the requested driver employment documents used

since 2010, including an Employment Conditions form, an Acknowledgement of Employment in Nebraska form, and an agreement verifying conditions applicable to all employment applications. Werner also produced all policies regarding personal advances. Werner states it does not track how every personal advance is spent by a driver and objects that it would be overly broad and unduly burdensome to locate and produce "each written consent signed by each of the over 66,000 class members." (Filing No. 325 at pp. 23-24). The plaintiffs request the court either compel Werner to produce such documents "or be estopped from arguing that it had written consent of any class member unless its argument is based on the limited documents it has identified in response to Request 22." (Filing No. 331 at p. 20).

The court will order Werner to supplement its response to RFP 22. Over various objections, Werner responded that "personal advances are discussed in the Werner Driver Handbook. When a class member requested an advance in writing after reading about the transaction fee, the class member agreed to that fee" and then directs the plaintiffs to a number of documents. (Filing No. 316-2 at pp. 28-29). Werner's response acknowledges that class members would have requested advances "in writing." The plaintiffs are therefore entitled to discover the documents that Werner considers a class member's request for an advance "in writing." However, to alleviate the burden in searching for and producing every written request for an advance for over 66,000 class members, the court will order Werner to search for and produce any such written requests as to the named class plaintiffs as a representative sample. Otherwise, Werner shall supplement its response affirming that the documents identified in its response are the only documents that exist in response to this request.

RFP 23 asks Werner to provide, in CSV format, "all documents showing for each Class Member when he or she made a contribution, including by withholding from his or her paycheck, to the bond held by [Werner], the dollar amount and date of each such contribution, the dollar amount of each charge [Werner] assessed against the bond, the reason the assessment was made, the dollar amount of any bond refund by [Werner] to the Class Member, and the date of such refund." The plaintiffs assert this RFP concerns their claim that Werner improperly withheld wages purportedly as security bond. (Filing No. 315 at pp. 19-20). Werner replies it has produced class members' driver pay data, which reflects the date(s) and amount(s) of all deductions and reimbursements made to class members, including deductions and reimbursements for advances, fees, bonds, and any other "charges" made from or reimbursed to

13

drivers' pay. (Filing No. 325 at p. 23). The court finds Werner has adequately responded to this request.

RFP 26 requests, in CSV format, "all documents showing for each California Class Member the dollar amount of job-related expenses that [Werner] charged the Class Member and never reimbursed the Class Member, when the charge was made, and the reason for the charge." The plaintiffs assert this request seeks discovery related to their claim that Werner improperly had class members pay company business expenses without reimbursement. The plaintiffs request that Werner be compelled to produce an "accounting of the deductions it made from Plaintiffs' wages for job-related expenses, or should be estopped from arguing that the advances were not to cover such expenses." (Filing No. 331 at p. 21). Werner objected to this request as argumentative and because it is vague and ambiguous as to what the plaintiffs mean by "job-related expenses" or "charged the class member." (Filing No. 316-2 at p. 31). Over these objections, Werner referred the plaintiffs to the previously produced pay data, which sets forth all deductions and reimbursements. The court finds Werner has adequately responded to this request.

RFPs 27 and 30 request, in CSV format, "all documents showing for each Class Member the dollar amount of [Werner's] payment to the Class Member" for time logged off-duty (Line 1 status) and for time logged in the sleeper berth (Line 2), including "when the payment was made, and the related date/time" on the line status. RFPs 28-29 request "all documents reflecting Defendants' having a policy or practice" to pay or not pay class members for time logged off-duty (Line 1 status) and RFPs 31-32 ask for the same documents as to time logged in the sleeper berth (Line 2 status). (Filing No. 316-2 at pp. 31-35). The court finds Werner has adequately responded to these requests. The plaintiffs previously represented that they "will use class members' driving logs to pinpoint the hours of off-the-clock work they performed and the number of meal breaks they missed" and that they would "use class members' wage statements to calculate their damages for unlawful deductions." The plaintiffs also represented that "the amount of time a driver logged in a truck's sleeper berth can be found in the driving logs, along with the state the driver logged such time. (Filing No. 184 at pp. 42, 46). Werner has produced all Driver Handbooks, pay policies and pay packages, which explain the types and rates of pay a driver may earn, each class member's pay data, reflecting the dollar amounts paid to class members, the earnings code identifying the reason for each amount, and each class member's

14

driver log records. Werner has produced the documents that the plaintiffs stated they would use to support their class claims and, other than messaging data, it is not clear to the court what other documents the plaintiffs seek. Accordingly, the court will order Werner to supplement RFP 22 as set forth above, but will otherwise deny the plaintiffs' first motion to compel.

## II. Motion to Compel Responses to Abarca and Alesna's First Sets of RFPs

Plaintiffs seek a court order compelling Werner to produce supplemental responses to RFP 32, 37, 48, and 49 of Plaintiff Abarca's first set of document production requests and RFP 24, 28, 39, and 40 of Plaintiff Alesna's first set of document requests. (Filing No. 314). The plaintiffs assert these requests seek discovery relevant to Werners' affirmative defenses. Werner objects to these requests primarily on the grounds that the requests are facially overbroad and unduly burdensome. (Filing No. 325 at p. 26; Filing No. 326).

Abarca RFP No. 32 and Alensa RFP 24 request:

> All documents reflecting or concerning any complaint or objection to Werner at any time since June 4, 2010, by any Class Member or Werner's response on any of the following subjects:
> (a) Underpayment of compensation owed.
> (b) Non-payment of compensation when the truck was not moving.
> (c) Absence of reimbursement for job-related expenses.
> (d) Funding of bond from compensation.
> (e) Deductions from bond.
> (f) Failure to refund bond deposit.
> (g) Transaction charges for personal advances.
> (h) Deduction from paycheck to repay personal advances.
> (i) Failure to reimburse for job-related expenses.
> (j) Failure to comply with federal or any state's minimum wages.
> (k) Meal and rest breaks.

(Filing No. 318-1 at p. 2; Filing No. 318-2 at p. 2). The plaintiffs assert these RFPs are reasonably calculated to obtain discovery relevant to Werners' affirmative defenses of good faith and that if a PAGA penalty is imposed, it must be limited to an initial violation (i.e., because Werner did not have prior notice that its conduct violates the California labor code), and as general discovery of Werners' admissions against interest. (Filing No. 317 at p. 2). Werner maintains these requests are facially overbroad and whether any of the 66,000 class members made a "complaint or objection" to Werner on any of these topics during a 10-year period is not relevant to the plaintiffs' class claims. To search for responsive documents, Werner states it

15

would need to review records for each of the over 66,000 class members over a 10-year period to determine (1) whether there were any "complaints or objections" by every driver and (2) whether the complaints or objections (if any) were about one of the topics in these requests. Werner maintains there is no feasible way to conduct a search for those records, other than on an individual, page-by-page review of the content of all records for each class member. (Filing No. 325 at p. 27). Over its objections, Werner did identify responsive documents limited to the six named plaintiffs. (Filing No. 317 at p. 8-9).

The court agrees with Werner that these requests are overbroad on their face and are not proportional to the needs of the case. See *Carlton v. Union Pac. R.R. Co.*, 2006 WL 2220977 (D. Neb. 2006) (citing *Contracom Commodity Trading Co. v. Seaboard*, 189 F.R.D. 655, 665 (D. Kan. 1999)("A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support."). Whether any of the 66,000 individual class members may have lodged "any complaint or objection" to Werner in the last ten years regarding the various stated topics has no relevance to the claims certified in this case and minimal relevance to Werner's defenses, including its generic "good faith" defense. To the extent the plaintiffs assert they are requesting documents related to Werner's defense that it did not have prior notice that its conduct violates the California labor code for purposes of any PAGA penalty, then a request for production of 66,000 class members' "complaints and objections" is not narrowly tailored to obtaining discovery relevant to that defense, since Werner's first "notice" would trigger the higher subsequent PAGA penalty rate. And, it would seem an employee's "objection" to its employer would not constitute such notice. See *In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-SAB, 2016 WL 2755938, at *7 (E.D. Cal. Apr. 8, 2016)(finding service of lawsuit provided notice that employer's policy would be a violation of California law, and "[u]ntil the employer has been notified that it is violating a Labor Code provision . . . the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties [under PAGA]."). Accordingly, the court will not compel Werner to further respond to these requests.

Abarca RFP 37 and Alesna RFP 28 seek production of "all documents reflecting communications at any time" between Werner and the states of California and Nebraska "concerning the legality of its system for compensating class members." (Filing No. 318-1 at p. 4; Filing No. 318-2 at p. 4). The plaintiffs assert the documents sought by this request are

16

"reasonably calculated to lead to evidence of [Werner's] subject pay and timekeeping practices, evidence bearing on [Werner's] good faith defense and whether the initial or subsequent PAGA penalty rate applies. Insofar as either State has adjudicated issues adverse to [Werner], the documents also may support a collateral estoppel." (Filing No. 317 at p. 3). Werner argues communications with California or Nebraska are not relevant to whether Werner's common policies are lawful or whether any driver was not paid minimum wage. (Filing No. 325 at p. 29).

Werner too narrowly construes the scope of discovery, which permits parties to obtain discovery relevant to any party's claim *or* defense (assuming the request is proportional to the needs of the case). See Fed. R. Civ. P. 26(b)(1). The plaintiffs have stated plausible reasons why this request seeks documents relevant to Werner's affirmative defenses. For example, if Werner received a letter from the California Department of Labor regarding the legality of Werner's wage deductions, such document may tend to disprove a defense that Werner acted in good faith or that it had no notice that it was violating the California Labor Code for purposes of assessing penalties under PAGA. However, as drafted, the plaintiffs' request is overly broad as it is unlimited in time. The court will order Werner to search for and produce any nonprivileged documents responsive to this request beginning June 4, 2010.

Abarca RFP 48 requests:

> In connection with any lawsuit filed at any time in any court in the United States or with any administrative proceeding initiated at any time in the State of California in which the plaintiff/complainant/petitioner complains that Werner violated California law insofar as compensating any driver(s), providing driver(s) with meal periods or rest periods, making deductions from driver compensation for failure to perform job duties, damage, or loss, or making deductions from driver compensation to fund personal bonds, produce all the following:
>> (a) All Complaints or Petitions filed at any time and Werner's responses thereto (e.g. Answer to Complaint, Response to Petition, etc.).
>> (b) All declarations or affidavits that the plaintiff/complainant/petitioner submitted to establish a violation of California law or in support of class certification and all declarations or affidavits that Werner submitted in which it contests liability under California law or in opposition to class certification.
>> (c) The transcripts of all testimony given at deposition, trial, or in an administrative proceeding.
>> (d) All rulings, orders, decisions, judgments, or other adjudications on whether WERNER violated California law or whether a class action should be certified. This request excludes any workers compensation or product liability claims and the present lawsuit. This request includes the

> case of Montalvo v. Werner Enterprises, Inc., United States District Court for the Central District of California, case no. ED CV 11000294 MMM (OPX).

(Filing No. 318-1 at pp. 6-7). Alesna RFP 39 requests the same documents with respect to Nebraska. (Filing No. 318-2 at pp. 5-6). The plaintiffs assert this RFP "may provide evidence confirming [Werner's] pay and timekeeping practices herein challenged, evidence of admissions against interest, evidence that supports a collateral estoppel, evidence bearing on [Werner's] good faith affirmative defense, and evidence bearing on whether the initial or subsequent PAGA penalty rate applies." (Filing No. 317 at p. 3). Werner again objects to these requests because they do not seek relevant discovery and are overly broad and unduly burdensome on their face. (Filing No. 325 at p. 29).

The court finds the overbreadth of these requests are apparent on their face. The plaintiffs request Werner produce every single complaint and answer, testimony transcript, affidavit, declaration, court ruling, etc., encompassing several different issues arising out of any administrative proceeding or lawsuit that Werner has been involved in over an unlimited time period. As such, the court will not compel Werner to further respond to these facially overbroad requests. See *Heim v. BNSF Ry. Co.*, No. 8:13CV369, 2014 WL 6949044, at *8 (D. Neb. Dec. 8, 2014)(finding the plaintiff's request for "production of all documents, companywide for the last six years" concerning "complaints, inquiries, investigations, lawsuits, administrative proceedings, or alternative dispute resolution proceedings concerning BNSF retaliating against its employees for reporting personal injuries" was "both obvious and excessive on its face" in a lawsuit brought by an individual advancing a retaliation claim).

Abarca RFP 49 and Alesna RFP 40 request "All rulings, orders, decisions, judgments, or other adjudications at any time on the validity of any choice of law clause in any agreement between Werner and an employee." (Filing No. 318-1 at pp. 7-8). The plaintiffs assert these requests are reasonably calculated to lead to evidence bearing on Werners' choice of law affirmative defense, including evidence that may support collateral estoppel. Werner objects to these requests as overly broad as they are not limited in time and because they requests documents regarding non-driver employees. Werner also objects because it seeks documents publicly and equally available to the plaintiffs or documents that are confidential and sealed by the court. (Filing No. 326 at p. 52). Werner maintains these request are facially overbroad as they are not limited in time and would require Werner to "individually review every lawsuit filed

against Werner anywhere in the country at any time, and each and every 'administrative proceeding' in the State of California or Nebraska at any time, to determine whether any allegations related to the identified topics or whether there was any ruling, order, decision, judgment, or other "adjudication" regarding the validity of a choice of law clause." (Filing No. 325 at p. 29).

Unlike the facially overbroad court documents requested by Abarca RFP 48 and Alesna RFP 39, these requests narrowly seek only court rulings specifically regarding the validity of the choice of law clause at issue in this case and reasonably bear on Werner's affirmative defenses. The public availability of court rulings does not absolve Werner of its obligation to respond to a request for production that otherwise seeks relevant discovery. See, e.g., *Davis v. Ak-Sar-Ben Vill., L.L.C.*, No. 8:18CV101, 2020 WL 1332288, at *4 (D. Neb. Mar. 23, 2020)(requiring production of limited category of information from related lawsuits); *CitiMortgage, Inc. v. Allied Mortg. Grp., Inc.*, No. 4:10CV01863 JAR, 2012 WL 1554908, at *4 (E.D. Mo. May 1, 2012)(ordering party to produce publicly-available lawsuit information related to the case); see also *Hill v. Asset Acceptance, LLC*, No. 13CV1718-BEN BLM, 2014 WL 3014945, at *7 (S.D. Cal. July 3, 2014)(collecting cases overruling objections to discovery requests on the basis that court records are publicly available). The plaintiffs request court rulings regarding one issue that are reasonably relevant to Werner's affirmative defenses. Therefore, the court will order Werner to supplement its response to these requests, limiting it to unsealed or unrestricted rulings, orders, decisions, or judgments during the class period.

In sum, the court will order Werner to supplement Abarca RFP 49 and Alesna RFP 40 as outlined above, but will otherwise deny the plaintiffs' second motion to compel.

Upon consideration,

**IT IS ORDERED:**

1. Plaintiffs' Motion to Compel (Filing No. 313 in the Lead Case) is granted in part and in part denied, as set forth above;
2. Plaintiffs' Motion to Compel Responses to Plaintiffs Abarca and Alesna's First Set of Requests for Production (Filing No. 314 in the Lead Case) is granted in part and in part denied, as set forth above.

Dated this 30th day of September, 2021.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge