UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, ALFREDO ALESNA, JR., DAVID CAGLE, STEPHEN L. DAVIS, FRANK EADS, and KENNETH J. SURMAN, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>WERNER ENTERPRISES, INC., DRIVERS MANAGEMENT, LLC, and DOES 1 – 100, inclusive,<br><br>    Defendants. | Case No.: 8:14-CV-319<br><br>CLASS ACTION<br><br>**STATEMENT OF OBJECTION TO MAGISTRATE JUDGE NELSON'S ORDER DENYING IN PART PLAINTIFFS' MOTION TO COMPEL**<br><br>Judge: Joseph F. Bataillon |

## STATEMENT OF OBJECTION

**I.**  **INTRODUCTION**

In this case, Plaintiffs seek unpaid minimum wages under the FLSA and state wage and hour laws for time they and 60,000 other drivers worked for Werner during over-the-road tours of duty. The Parties dispute during which time periods Werner's over-the-road drivers are working when over-the-road on a tour of duty. Specifically, the Parties dispute the types of activities drivers perform, and the level of control Werner has over its drivers, during DOT "off duty" and "sleeper berth" periods. As virtually every court, along with the Department of Labor and the Federal Motor Carrier Safety Administration has determined, DOT designations of "off duty" and "sleeper berth" do not mean a driver is not working for minimum wage purposes. While the DOT logs do not contain information regarding the work performed during such periods, Werner's Qualcomm records do. Magistrate Judge Nelson denied Plaintiffs' motion to compel production of these records in his Order of September 30, 2021 (ECF 352) ("the Discovery Order"). Plaintiffs' now

1

file this instant statement of objection, pursuant to Fed. R. Civ. P. 72(a) and Neb. Civ. R. 72.2(a), objecting in part to the Discovery Order.

Plaintiffs specifically object to the Court's denial of Plaintiffs' request for CSV extractions of Werner's native messaging data, which are saved over 6 tables in Werner's database and were requested in Plaintiffs' Third Set of Document Requests. Moreover, Plaintiff requested certain subsets of such data in their Fourth Set of Requests, Requests 2-20. Discovery Order at pp. 7-10 (ECF 352).

Pursuant to Neb. Civ. R. 72.2(a), Plaintiffs rely on their prior briefs and exhibits attached thereto in support of this objection and, in this statement, outline the specific portions of the Discovery Order which are objected to. Plaintiffs provide the appropriate legal standards for ruling on such objections. Plaintiffs' prior briefs are filed with the Court at ECF 315 and ECF 331.

## II.     STANDARD OF REVIEW

When reviewing nondispositive pretrial rulings by a magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007); *Light of the World Gospel Ministries, Inc. v. Vill. of Walthill, Nebraska*, 336 F.R.D. 567, 570 (D. Neb. 2020). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Light of the World Gospel Ministries, Inc.*, 336 F.R.D. at 570 (quoting *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 592 F. Supp. 2d 1087, 1092 (N.D. Iowa 2008) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)); *Panchal Enterprises v. State Farm Fire and Cas. Co.*, 8:20-CV-295, 2021 WL

1909897, at *1 (D. Neb. May 12, 2021); *Stratton v. Thompson/Ctr. Arms, Inc.*, 4:18-CV-00040-DN-PK, 2019 WL 6498249, at *3 (D. Utah Dec. 3, 2019) (overruling denial of motion to compel by magistrate judge); *Pipeline Productions, Inc. v. Madison Companies, LLC*, CV 15-4890-KHV, 2019 WL 1940282, at *9 (D. Kan. May 1, 2019) (same).

### III. <u>STATEMENT OF OBJECTION</u>

Plaintiffs object to the Discovery Order which denied Plaintiffs' motion for an order compelling the production of Werner's electronic messaging tables ("Qualcomm") in near-native CSV format. (ECF 352 at pp. 7-10). As provided herein, after correctly determining that the records requested were relevant to the litigation and evidenced the activities and the tasks drivers performed for Werner while they were over-the-road (ECF 352 at p. 9), the Discovery Order nevertheless denied Plaintiffs' motion, finding that the burden of production was disproportionate to the probative value of the production. *Id.* In denying such request, the Court determined that Werner had met its burden in resisting Plaintiffs' motion by showing that the burden in production outweighed the probative value of such records. *Id.* at 9.

    1. <u>**The Court erroneously found that producing CSV extractions of Werner's Qualcomm tables would cause a "tremendous burden."**</u>

The Court found production of the requested ESI data would cause a "tremendous burden." (ECF 352 at 9). This finding is clearly erroneous. In arriving at this conclusion, the Court found material—quoting the precise testimony twice in its Order—that Ms. Howe, Defendant's former IT director, testified that she was "not sure how feasible it would be" to produce the data requested. (ECF 352 pp. 8 and 9). As Plaintiffs demonstrated, Ms. Howe was unsure because she never considered complying with the request Plaintiffs made as she was unaware Plaintiffs had even requested such information. Plaintiffs' Brief (ECF 315) at 12-15. Similarly, Ms. Howe acknowledged that the burdens about which she had previously informed the Court were not

3

material to the actual request made by Plaintiffs and overstated the burdens of complying with the actual requests. *Id*. Moreover, the Court failed to reconcile the twice-quoted statement with contradictory testimony she gave later in that very deposition, where she stated that the requested data "could be turned into a CSV" (as Plaintiffs requested) and that producing the data in the requested format "would take a **little** bit of work." *See* Plaintiffs' Brief at 14 (ECF 315), citing Howe Dep. at 97-98 (ECF 316-3) (emphasis added). She estimated the extraction and copying would take 12-16 hours of *computer time* per year of data, of which human interaction would only be required for a few minutes. *Id.*

Though the Court erroneously found such modest effort to be a "tremendous burden," Judge Nelson agreed that the evidence provided by Werner established that it would take only 12-16 hours per year of class data to be produced. (ECF 352 at 8) (finding Werner's burden in copying files was 30 to 45 minutes per table, totaling 3-4 hours per each 90-day period). Importantly, this amounts to approximately 120-160 *computer* hours over the entire 10-year class period, which is less than a single calendar week. Importantly, most of this time is simply copying files—a person is only required to spend a few minutes of his or her time to start and complete the process. Plaintiffs' Brief at 14 (ECF 315), citing Howe Deposition.

Thus, the Court should find that Judge Nelson's finding that the burden facing Werner was "tremendous" is clearly erroneous.

### 2. The Court erroneously found that Werner's DOT logs provided a reasonable substitute for the Qualcomm Data.

Judge Nelson further found that Werner's DOT driver logs provided an adequate substitute for the Qualcomm records, despite Plaintiff's showing, and Judge Nelson ultimately agreeing, that the information provided in the Qualcomm tables was both relevant to the disputed periods of time and not available in the DOT logs. (ECF 352 at 8). This finding is clearly erroneous.

4

Importantly, the Parties dispute whether drivers are entitled to compensation for time where Werner's DOT logs show the driver as "off duty" or "sleeper berth." Specifically, the Parties dispute whether such time constitutes hours worked. Plaintiffs demonstrated the Qualcomm data contains highly relevant information regarding the work duties and responsibilities of drivers during such disputed times. *See* Plaintiffs' Brief in Support of Plaintiffs' Motion to Compel at pp. 8-10 (ECF 315); Exhibit 1-E (ECF 316-5) (comparing information provided in Qualcomm versus DOT logs). The Qualcomm records demonstrate that the DOT designation of "off duty" does not mean the driver stops working. As Plaintiffs have argued, drivers continuously worked throughout their tours of duty. The Qualcomm records contain the proof. As Plaintiffs demonstrate, the records demonstrate that the driver--while informing Werner of such action (as such information is *in* Werner's records and obtained through the communications sent by the drivers to management) was logged "off duty" while being required to wait with the truck at a customer site while the customer loaded him. *Id.* Thus, the relevant information contained in requested data is not available in Werner's DOT driver log records; the information exists, but only in the requested Qualcomm data.

Defendant, in opposition, argued that its DOT driver logs were a sufficient substitute, because the logs allegedly are accurate records of when employees worked. Specifically, Defendant argued that any time its DOT logs show a driver logged is logged in the DOT status of "off duty" or "sleeper berth" was non-work time. For this reason, Werner argued that its Qualcomm data was not needed for Plaintiffs to demonstrate work activities during such time. Defendant's Opposition at 3-4 (ECF 325). Defendant's arguments that "work" under DOT regulations is synonymous with the definition of work have been met with near universal rejection. *See*, e.g., *Browne v. P.A.M. Transp., Inc.*, No. 5:16-CV-5366, 2018 WL 5118449, at *3 (W.D. Ark.

5

Oct. 19, 2018) ("The DOT regulations aim to make our roads safe, while the DOL regulations aim to provide workers adequate compensation. If the DOT prohibits commercial truck drivers from driving for more than 14 hours in a 24-hour period while the DOL requires their employers nevertheless to pay them for at least 16 hours in that same period, then this Court sees nothing inconsistent or inharmonious about that state of affairs. It would simply be a cost of business that the federal government has seen fit to impose on employers of commercial truck drivers in order to ensure an adequate level of road safety and driver compensation. This seems especially unremarkable in light of the DOL's requirement, already quoted above, that *all* sleeping time in a 24-hour shift must be compensated absent an explicit agreement to the contrary between the employer and the employee."); *Julian v. Swift Transportation Co. Inc.*, 360 F. Supp. 3d 932, 943–44 (D. Ariz. 2018) ("The *Browne* court's conclusion that the DOT regulations provide no meaningful guidance regarding matters of compensation is correct."); *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1070 (W.D. Mo. 2020); *Ridgway v. Wal-Mart Stores Inc.*, No. 3:08-CV-05221-SI, 2017 WL 1549329 (N.D. Cal. May 1, 2017), *aff'd sub nom. Ridgeway v. Walmart Inc*, 946 F.3d 1066 (9th Cir. 2020) (holding that under California law, DOT logs showing "off duty" did not establish that drivers were not under the control of their employer, and thus entitled to compensation under California law).

The Court did not rule on the merits of this issue. Instead, Judge Nelson found that the DOT logs were a sufficient substitute by considering only the time periods the DOT logs show as "on duty." Discovery Order at 9 (ECF 352). But Werner does not dispute "on duty" time is work time, and the Qualcomm data was requested not to analyze the "on duty" periods but the disputed periods of time in the lawsuit (*i.e.,* time logged as "off duty" or "sleeper berth"). Thus, the Court's

finding that the DOT logs were an adequate substitute for the data is clearly erroneous and not tied to the disputed issues of the litigation.

> **3.  The Discovery Order is contrary to law because it failed to consider and misapplied necessary factors codified in Fed. R. Civ. P. 26(b)(1) when determining the discovery was disproportionate to the needs of the case.**

Under binding Eighth Circuit precedent, when litigants are involved in a discovery dispute, the requesting party must first meet his initial burden by demonstrating that the discovery is relevant to the claims of the case. Though Werner resisted this finding, the Discovery Order correctly finds that Plaintiffs met their burden in establishing relevance. (ECF 352 at 9).

Once a court determines that the information is relevant, the burden then shifts to the resisting party to demonstrate that production of the information should nevertheless be denied. Where burden is the basis of such objection, a court must consider the relevant criteria outlined in Fed. R. Civ. P. 26(b)(1). Specifically, when considering the proportionality of a discovery request, a court must consider: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018).

The Court determined that the burden of production was not proportional to the needs of the case because Werner contended it would take approximately Werner's computers about 3 to 4 hours to copy and extract the raw data from Werner's system for every 90-day period of the class, totaling approximately 12-16 hours per year of the class period. The Court did not weigh such burden against the significance of the claims at issue—the minimum wage rights of more than 60,000 individuals stretching back more than 10 years. The Court further did not consider the relative financial positions of the parties or the fact that only a single party has access to the sought

after information. Each of these factors clearly weighs in favor of compelling production. Werner is a multi-billion dollar international corporation, and Plaintiffs are over-the-road truck drivers seeking minimum wage payments. Similarly, only Werner has access to the requested information.

Moreover, the Court considered wholly inapplicable factors, including *denying* class-wide discovery *because* the case is a certified class action and the Court's unsupported assumption that the Qualcomm messages could provide only proofs as to individualized issues rather than common proofs. (ECF 352 at 9). Even if this were true—which it is not—such evidence is discoverable and highly relevant to the claims of the class members. If such evidence demonstrated individualized issues predominated as to Defendant's work policies, the evidence would remain discoverable as such issues remain disputed in the litigation.

## IV. Conclusion

The Court denied production of ESI that is highly relevant to the claims of more than 60,000 truck drivers. The information contained in the ESI provides the most relevant evidence demonstrating the policies and practices of Werner which, Plaintiffs contend, and Werner disputes, require Plaintiffs and the class to remain working while over-the-road for Werner, including during periods of time logged as "off duty" or "sleeper berth." The modest burden the Court determined existed if it compelled production is clearly proportional to the significant class claims before the Court, and is well below the burdens imposed on both sides through the numerous depositions Werner took of class members throughout the United States (which required significant cross-country, overnight travel for both sides and many hours of human, not computer, time).

Thus, Plaintiffs respectfully request the Court modify the Discovery Order and compel Werner to produce the requested Qualcomm data in the requested format.

Respectfully submitted,


Justin L. Swidler