IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, individually and on behalf of all those similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> WERNER ENTERPRISES, INC., et al., <br><br> Defendants. <br> _____ | **8:14CV319** <br> **(Lead Case)** |
| WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> WERNER ENTERPRISES, INC., et al., <br><br> Defendants. <br> _____ | **8:15CV287** <br> **(Member Case)** |
| BRIAN VESTER and JOEL MORALES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WERNER ENTERPRISES, INC., et al., <br><br> Defendants. <br> _____ | **8:17CV145** <br> **(Member Case)** |

1

DANIEL BRYANT, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WERNER ENTERPRISES, INC., et al.,

Defendants.

8:20CV227
(Member Case)

This matter is before the Court on the defendants' motions for partial summary judgment, Filing No. 353 in 8:14cv319, Filing No. 258 in 8:15cv287, Filing No. 216 in 8:17cv145, and Filing No. 92 in 8:20cv227. In these consolidated cases, the plaintiffs, who are current and former truck drivers for defendants Werner Enterprises, Inc. and Drivers Management, LLC (collectively, "Werner"), assert a number of wage and hour claims under California and Nebraska law. This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

I. BACKGROUND

Plaintiffs originally filed suit on August 25, 2014, and filed the operative complaint on January 6, 2017. Filing No. 160, Revised Fourth Amended Complaint.[1] In the operative complaint, they allege, on behalf of the classes, that they were not paid and provided benefits required by their non-exempt employee status in violation of California and Nebraska law, including

> not having been paid for off- the-clock work (whether calculated at statutory minimum wage or regular rate of pay) in violation of California law and Nebraska law, not having been provided duty free meal and rest periods or paid premium pay in their absence in violation of California law, having

---

[1] For ease of reference, the Court will hereinafter refer to pleadings filed in the lead case, *Abarca v. Werner Enters., Inc.* ("*Abarca*"), No. 8:14-cv-319. Generally, there are corresponding pleadings in the member cases.

2

> improper deductions made by Defendants in violation of California law for work performed in California and in violation of Nebraska law for work performed anywhere, not having received properly itemized pay statements in violation of California law and Nebraska law, and not having accurate and complete time and pay records maintained for work performed in California in violation of California law.

*Id.* at 5. This Court earlier adopted the Magistrate Judge's recommendation to certify two classes of truck drivers, totaling over 66,000 drivers:

> (1) the California Class, consisting of all drivers who both resided and worked in California during the class period, who seek recovery under California wage-and-hour law only for work performed in California; and

> (2) the Nebraska Class, consisting of all drivers during the class period, and seeking recovery under Nebraska wage and hour law based on the Nebraska choice-of-law provisions in Werner's contracts.

Filing No. 190, Memorandum and Order, Filing No. 186, Findings, Recommendation and Order. In certifying the classes, the court found "the plaintiffs' claims hinge on the question of whether Werner's nationwide system of compensation violates the law" and that "the legality of class-wide policies on compensation for all hours of work, payment of minimum wages, payroll deductions, wage statements, and meal and rest breaks are questions capable of resolution through common evidence that can be resolved once for the entire class." Filing No. 190 at 3–4.

Werner moves for partial summary judgment on the plaintiffs' minimum wage claims and pay statement claims. The plaintiffs concede they will not pursue a claim for allegedly deficient pay statements. Filing No. 361, Plaintiffs' Brief at 4. Accordingly, that portion of the defendant's motion will be denied as moot.

The claims challenged in this motion are the claim that Werner violated Cal. Lab. Code § 226.2 (West) by failing to provide separate compensation for nondriving time and the claim that Werner violated both the NWPCA and the NWHA by borrowing from wages

promised for miles driven to cover otherwise undercompensated nondriving work. Werner argues, with respect to the California class, that undisputed evidence shows that the truck drivers agreed that they would be paid by the trip, rather than by the mile, and that Werner was therefore not required to provide separate compensation for nondriving time. With respect to the Nebraska class, Werner argues that there is no classwide evidence that Werner specifically agreed to pay drivers a separate additional hourly rate for non-driving time. Werner relies on *Ayala v. U.S. Xpress Enterprises, Inc.*, 851 F. App'x 53, 54 (9th Cir. 2021) and See *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020) as support for its argument that California law does not require an employer to compensate drivers separately for non-driving duties.

The plaintiffs respond that there are genuine issues of material fact that preclude summary judgment on these issues. They argue that both California and Nebraska law guarantee at least the minimum wage for all work time, analyzed hour-by-hour, and forbid employers from borrowing from contractually agreed-upon wages to cover otherwise undercompensated work.

II. FACTS

Salient facts are set out in the Court's earlier orders and need not be repeated here except as relevant to the Court's determination. Filing No. 186, Findings, Recommendation and Order at 7 –12; Filing No. 190 , Memorandum and Order at 3 –4 This class action involves the question of whether Werner's system of compensation violates various wage and hour laws of California and Nebraska. In the operative complaint, the plaintiff class members allege that Werner's compensation system results in a uniform policy and practice of not paying all wages owed, not paying for all time

worked, including compensable rest periods and compensable on-duty non-driving time, not paying premium hours for missed meal/rest periods (for the California Class),[2] making improper deductions from pay for work performed, not providing properly itemized pay statements that accurately reflect hours worked, and not maintaining records that accurately reflect hours worked and applicable hourly rates.[3] Filing No. 160, Fourth Amended Complaint at 6. The plaintiffs allege "Werner systematically violates the wage-and-hour laws of both California and Nebraska" by implementing the above payment structures and policies. Werner has asserted numerous affirmative defenses to the plaintiffs' claims. See Filing No. 161, Answer at 9–12.

In accordance with the Local Civil Rule 56.1(a)(1), the parties have submitted statements of purportedly undisputed facts. See Filing No. 354, Defendant's Brief at 4–9; Filing No. 361, Plaintiff's Response at 4–9; Filing No. 364, Defendant's Reply Brief at 4–8. The defendant submits sixteen separately numbered paragraphs of supposedly undisputed facts and the plaintiffs dispute or object to all but five of them. Id. In support of their positions, the parties submit evidence and deposition testimony. See Filing Nos. 355, 362, 365, Indices of Evidence, and Filing No. 363, Supplement.

For purposes of this motion, the parties agree only that that defendant Werner Enterprises, Inc. is a trucking company engaged in the hauling and delivery of freight

---

[2] The meal and rest break claims have been dismissed. Filing No. 351.

[3] Specifically, the plaintiffs allege: (1) Werner's compensation plan results in drivers sometimes working without pay when the truck is not moving, working for less than the minimum wage when the truck is moving slowly, and working without pay during sleeper berth time; (2) Werner's policy requires drivers to pay its business expenses through improper deductions and funding personal bonds; (3) Werner's wage statements fail to accurately display information required by law; and (4) Werner fails to provide drivers working in California with duty-free meal and rest periods according to California law. See Filing No. 167, plaintiffs' class certification brief at 2–3.

across the United States, with its principal place of business in Omaha, Nebraska; the plaintiffs are current or former Werner truck drivers and during orientation; and all drivers signed a document that provides:

> I understand that when I am paid by the mile, I will be paid by point-to-point mileage as set forth in Household Goods Carriers' Bureau (HHG) Mileage Guide (as published by Rand McNally) and that the pay mileage will in most cases be different than actual miles driven or odometer miles.

Filing No. 355-9, Ex. 1H, Employment Conditions between Driver and Drivers Management (hereinafter, "employment conditions agreements"); *see also* Filing No. 355-12, Ex. 2, Declaration of Jaime Maus at 3; Filing No. 355-24, Ex. 2-L (versions of employment conditions agreements in effect during the class period, with identical language). The plaintiffs similarly do not dispute that Werner produced various employment forms signed by Werner drivers, including an Agreement form, the Employment Conditions form referenced above, an Acknowledgment of Employment in Nebraska form, and a Driver Pledge (collectively, the "Forms") during discovery and they acknowledge that they received copies of the Driver Handbook. *See id.*, Filing Nos. 355-13 to 355-23, driver handbooks.

Evidence of record shows there is essentially no dispute that Werner's drivers are paid by the mile, at varying mileage rates ("piece rate"). *See* Filing No. 186, Filing No. 362, Index of Evid., Ex. M, Werner Enterprises" Securities and Exchange Commission Form 10-k; Filing No. 355-2, Ex. 1A, Deposition of Steven K. Tisinger, ("Tisinger Dep.") at 35–37; Filing No. 362, Ex. A, Tisinger Dep. at 23–33, 160. Steven K. Tisinger, Werner's Associate Vice-President of Accounting Administration, testified that Werner pays by the mile. Filing No. 365-1, Ex. 1, Declaration of Steven K. Tisinger at 2. Filing No. 362, Ex. A, Tisinger Dep. at 126. Werner also may pay drivers supplemental pay and/or

6

discretionary pay for certain things such as loading/unloading, layovers, lumpers, stop pay, safety pay, etc. Filing No. 142-4, Ex. A, Tisinger Dep. at 20–21, 126. Tisinger also testified about other types of pay such as student pay, discretionary pay, maintenance layovers, miscellaneous pay, network optimization pay, safety pay, and shag pay. *Id.* at 130–32, 134–36. Exhibits indicate drivers are paid per diem rates and deadhead rates. Filing No. 362, Ex. 1D, Smith wage statement; Filing No. 355-2, Tisinger Dep. at 131.

Werner relies on its 2013 Driver Handbook and subsequent Handbooks, which are given to drivers at orientation, to show that its policy is to compensate drivers for all activities required to deliver a load, using predetermined trip pay based on estimated miles. Filing No. 355-12, Ex. 2, Declaration of Jaime Maus at 2; *see, e.g.*, Filing No. 355-13, Ex. 2A, 2013 Handbook; Filing No. 142-14, Ex. K, handbook. Werner's driver handbook outlines the Federal Motor Carrier Hours of Service ("HOS") Duty Status Definitions and requires drivers to log their own time as one of four statuses: "off duty," which includes rest breaks taken outside of the sleeper berth and meal breaks (line 1); "sleeper berth" (line 2); "driving" (line 3); and "on duty-not driving" (line 4), which includes all time "[f]rom the time you begin to work or are required to be ready to work until the time you are relieved from work." *See, e.g.,* Filing No. 142-14, Handbook at 127. Line 4 activities include pre-trip and other inspections, physically loading and unloading the trailer, paperwork and receipts at a customer, time spent providing a breath sample or urine specimen, quarterly safety training, among others, but does not include rest time in a parked vehicle or up to two hours in the passenger seat of a moving vehicle immediately before or after an 8-hour consecutive break in the sleeper berth. *Id.*; *see also* Filing No. 362, Index of Evid., Ex. 1C, Smith driving log; Ex. 1D, Smith wage statement.

The driver handbooks provide:

> The mileage pay you earn, along with any taxable or nontaxable pay you earn (such as stop pay, loading/unloading pay, per diem, etc.) is intended to compensate you for all work activities, driving as well as non-driving.

*See, e.g.*, *id.*, 2013 Handbook at 53. Steven Tisinger acknowledged that the Handbooks states: "You will not be paid for," followed by the statement

> You will not be paid assist or driver load/unload pay for: Throwing pallets, counting pieces, securing and unsecuring the load when the shipper loads or unloads, volunteering to assist load and/or unload when the customer profile states that you are not required to load and/or unload. Contact your fleet manager, slash, coordinator if you're unsure.

Filing No. 355-2, Tisinger Dep. at 139 (referring to handbook at 45). The driver handbooks explicitly state they are not contracts and "[n]one of the provisions of this handbook are, or should be regarded as, contractual promises." *See, e.g.,* Filing No. 142-14, Ex. K, Handbook at 1.

The record shows that class members understood they would be paid by the mile and understood that their mileage pay compensated them for miles driven. *See* Filing No. 362, Index of Evid., Ex. E – Ex. L, driver deposition excerpts. Tisinger testified that Werner has no practice of cross-checking the drivers' driving logs with their payroll records to ensure that each drivers' wages meet or exceed the minimum wage for time worked during each pay period. *Id.*, Ex. A, Tisinger Dep. at 32–33. The plaintiffs have submitted, for illustrative purposes, driving logs and payroll records that arguably show that certain named plaintiffs were not paid minimum wage. Filing No. 362, Index of Evid., Ex. 1C, Smith driving log excerpts; Ex. 1D, Smith wage statement. The plaintiffs have

identified numerous duties for which they contend they were not paid.[4]  Filing No. 355-7, Ex. 1-F, plaintiffs' March 4, 2021, Interrogatory Answers.

II.   LAW

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting Fed. R. Civ. P. 56(c)(2)).  The court views facts in the light most favorable to the nonmoving party, and makes no determinations of credibility.  Cottrell v. Am. Fam. Mut. Ins. Co., S.I., 930 F.3d 969, 971–72 (8th Cir. 2019).  Further, the Court does not weigh the evidence or draw inferences, as those functions belong to the jury.  Id.  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."

"California's wage and hour laws are remedial in nature and must be liberally construed in favor of affording workers protection."  Ward v. United Airlines, Inc., 9 Cal. 5th 732 (2020).  "A review of [California] labor statutes reveals a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than

---

[4] The allegedly uncompensated or undercompensated activities include:  waiting to be assigned a load and remaining available for such assignment, waiting for information required to complete an assigned load; attending while a truck is loaded or unloaded; attending a truck and trailer to ensure security of load and truck; waiting to enter a dock or facility; communicating with shippers, consignees, and employees; Qualcomm and/or phone communications with Werner; logging hours of service; completing and mailing shipment paperwork (*e.g.*, transflo); unloading or assisting in the unloading of a trailer (*e.g.*, counting freight); cleaning a trailer; completing mandatory training; loading or unloading equipment (*e.g.*, pallets); scaling loads (i.e. ensuring the overall weight of the truck and distribution of the weight on the axles meet legal requirements); travel route planning; work schedule planning; finding parking; mandatory pre-trip inspections of truck and trailer; completing trailer inspection forms; inspection of tractor and trailer in the course of work; post-trip inspections; fueling the truck; checking engine oil; washing windows and mirrors; monitoring and securing of freight; making minor repairs to the truck (e.g. blown lights); taking the truck in for repairs and maintenance (e.g. new tires. oil changes, etc.); filling out reimbursement paperwork; washing, cleaning and organizing the truck; purchasing supplies; record keeping.  *See* Filing No. 355-7, Ex. 1-F, plaintiffs' March 4, 2021, Interrogatory Answers.

federally." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)(rejecting the Fair Labor Standards Act model of averaging all hours worked "in any work week" to compute an employer's minimum wage obligation). California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked. *Id.* at 324.

The California Legislature has codified this principle as to piece-rate workers. Cal. Lab. Code § 226.2(a)(1). That section of the Labor Code provides that piece-rate workers "shall be compensated for . . . other nonproductive time separate from any piece-rate compensation." *Id.* It defines "other nonproductive time" as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis." *Id.*

Under established California law, an employer cannot average pay over uncompensated hours. *See Oman*, 9 Cal. 5th 762 (stating that "[s]tate law prohibits borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks, regardless of whether the average of paid and unpaid (or underpaid) time exceeds the minimum wage."). "This is known as the 'no borrowing' rule." *Ward v. United Airlines, Inc.*, No. 19-CV-03423-LB, 2021 WL 6427868, at *1 (N.D. Cal. Dec. 20, 2021), *appeal dismissed,* No. 22-15043, 2022 WL 2693666 (9th Cir. July 11, 2022).

"Because '[t]he compensation owed employees is a matter determined primarily by contract,' section 226.2 permits an employer and its employees to define the scope of its piece-rate compensation system." *Ayala*, 851 F. App'x at 54 (internal citation omitted) (quoting *Oman*, 9 Cal. 5th 762–38). The "[s]tate law limits on wage borrowing permit compensation schemes that promise to compensate all hours worked at a level at or

above the minimum wage, even if particular components of those schemes fail to attribute to each and every compensable hour a specific amount equal to or greater than the minimum wage." *Oman*, 9 Cal. 5th 762 (involving a promise to pay by the rotation, and for each rotation, the promised compensation would always exceed the state minimum wage per hour worked). "Employers may legally compensate their employees on any number of bases, including 'by the standard of time, task, piece, commission basis, or other method of calculation.'" *Id.* at 341–42 (noting that "[t]he minimum wage laws exist to ensure that workers receive adequate and fair pay, not to dictate to employers and employees what pay formulas they may, or may not, agree to adopt as a means to that end.").

Interpreting the contract is the essential first step in applying the no-borrowing rule: identifying the nature of the employer's contractual commitment to its employees. *Oman*, 9 Cal. 5th 762 (Liu, J. concurring) (stating that "[b]ecause the rule requires employers to keep their contractual commitments in the course of fulfilling their minimum wage obligations, whether the rule is violated turns on what an employer's contractual commitments are.") Whether an employer violates the no-borrowing rule "turns on the nature of the pay structure the employer has promised." *Id.* Consistent with general contract interpretation principles, the employer's contractual commitment, including the unit of promised pay, is based on the objectively reasonable expectations of the parties at the time of contract. *Id.* Such principles include interpreting the employment agreement as a whole and, if the contract language is ambiguous, looking to the context surrounding its formation as well as the subsequent conduct of the parties. *Id.* The court can look to the understanding of the parties to determine the scope of the piece-rate pay.

11

*Ayala*, 851 F. App'x at 54. "Consistent with general contract interpretation principles, the unit for which pay is promised should be determined based on the 'mutual intention of the parties as it existed at the time of contracting.'" *Oman*, 9 Cal. 5th 762 (majority opinion) (quoting Cal. Civ. Code, § 1636).

Also, "courts should be careful not to allow employers to characterize their contractual commitments in ways that would effectively circumvent the no-borrowing rule." *Id.* at 342 (Liu, J., concurring). The rule "is grounded in the protections of the Labor Code that prohibit an employer from diluting an employee's contractually promised wages." *Id.* at 343. Correctly identifying an employer's contractual commitment is critical to ensuring that employers do not circumvent the no-borrowing rule simply by inserting into employment agreements a minimum wage floor—i.e., an agreement to make up the difference if an employee's promised pay, averaged over all hours worked, falls below the applicable minimum wage. *Id.*; *see also Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 103 (2017), *as modified* (Mar. 20, 2017), *as modified* (Mar. 20, 2017) (finding the no-borrowing rule barred the employer from using pay promised for an employee's commission to fulfill its obligation to pay for rest breaks and noting the fact that the employer supplemented an employee's commission if it fell below a specified hourly floor did not cure the violation). Applying California law to determine whether an employer controls an employee and therefore must compensate that employee for that time requires a "case-specific" approach by the court. *Ridgeway v. Walmart Inc*, 946 F.3d 1066, 1079 (9th Cir. 2020).

Although there is no specific statutory analog to California's piece rate statute in Nebraska, two statutes taken together achieve the same effect: (1) the NWHA, Neb. Rev.

Stat. Ann. § 48-1203(1) (West), requires compensation at no less than the minimum wage for all hours worked, calculated on an hour-by-hour basis; and (2) the NWPCA, Neb. Rev. Stat. Ann. § 48-1229(6) (West), 48-1231(1), protects workers' right to receive the amount of compensation promised to them under a contract. See *Petrone v. Werner Enterprises, Inc.*, 121 F. Supp. 3d 860, 872 (D. Neb. 2015), *on reconsideration in part,* No. 8:11CV401, 2016 WL 1559571 (D. Neb. Apr. 18, 2016), and *amended,* No. 8:11CV401, 2017 WL 510884 (D. Neb. Feb. 2, 2017), *opinion clarified,* No. 8:11CV401, 2017 WL 11681375 (D. Neb. May 9, 2017) (claims under the NWHA are calculated "on an hour-by-hour basis"): *Acosta v. Tyson Foods, Inc.*, 800 F.3d 468, 472 (8th Cir. 2015) (the NWPCA allows an employee to recover only those wages that an employer previously has agreed to pay). The NWHA was intended to have substantially the same coverage as the FLSA. *Petrone v. Werner Enterprises, Inc.*, No. 8:11CV401, 2016 WL 1559571, at *3 (D. Neb. Apr. 18, 2016).

III.  DISCUSSION

The Court finds that Werner's motion to dismiss the minimum wage laws should be denied.  Werner has not shown, as a matter of law, that its compensation policies and practices satisfy California and Nebraska wage and hour laws.  Werner essentially argues that the piece rate unit at issue is the trip, including driving and nondriving time and related activities.  In order to prevail on its motion for partial summary judgment on the plaintiffs' minimum wage claims, Werner would have to show that there is no genuine dispute that drivers agreed to be paid a lump sum per trip.  It would further have to show that its policy of paying drivers by the trip, with predetermined trip pay based on estimated miles, complies with California law and Nebraska law.  Werner has not made such a showing.

13

Whether California and Nebraska law require Werner to compensate drivers separately for non-driving duties is the one of the ultimate issues in the case. Resolution of that issue is a question of law based on material facts that remain to be determined. The plaintiffs have presented evidence that raises at least a genuine dispute of fact as to what Werner promised to pay for. The drivers' testified that they understood they were paid by the mile and that mileage pay compensated them for miles driven. Determining the parties' understanding of the Werner's compensation policies requires assessments of credibility that are not appropriate at the summary judgment stage.

The documents on which Werner relies consistently state that drivers are paid by the mile and say nothing about "trip-based" pay. Werner acknowledges that it does not cross-check the drivers' payroll records to determine that the minimum wage is being met. Werner has not shown that the implementation of its compensation system did not serve to dilute the drivers' contractually promised wages.

There is some support for the plaintiffs' position that the predetermined trip pay based on estimated miles could not be counted toward time spent on non-driving job duties. Werner explicitly disclaims that the driver handbooks constitute a contract. There is some evidence, if credited, suggests that Werner promised, in the employment conditions agreements, to pay drivers at their designated mileage rate for driving work, and Werner failed to honor this commitment by borrowing from mileage pay to compensate nondriving work.

To the extent that the employment conditions agreements are ambiguous, the drivers' testimony as to their understanding of the compensation agreement creates a genuine issue of material fact. Werner has formally stated on numerous occasions that

14

it pays drivers by the mile, and that is not synonymous with by the trip. The record does not support a finding that the parties agreed that the compensation they received was intended to cover all the allegedly uncompensated or undercompensated delivery-related tasks. Accordingly, there are genuine disputes of material fact about the nature and scope of Werner's compensation system that precludes summary judgment.

The Court rejects Werner's contention, in reliance on *Ayala*, 851 F. App'x at 54, and *Oman*, 9 Cal. 5th 762, that its practice of paying drivers by the trip does not violate California law. Those cases cannot support the weight Werner places on them.[5] The cases stand for the unremarkable general proposition that a pay scheme based on a piece rate or unit formula can be legal under California law. *Oman*, 9 Cal. 5th 762 (stating that under California law, employers may calculate compensation by the task or piece, by the sale, or by any other convenient standard); *Ayala*, 851 F. App'x at 54 (stating that California Labor Code § 226 permit and employer and its employees to define the scope of its piece-rate compensation system). They do not establish that Werner's system, whether trip-based or mileage-based, complies with California law. In *Ayala*, however, there was no factual dispute on what the piece-rate unit of measure was—in other words, there was no dispute as to the understanding of the parties. *See Ayala*, 851 F. App'x at 54 (stating that the defendant trucking company "[paid] drivers the designated mileage rate as compensation for completing a trip and delivering a load on behalf of [the trucking company]" and finding that the plaintiff's testimony that the load pay covered everything he had to do to get the load delivered confirmed the understanding of the parties). In

---

[5] Noting that this Court had previously recognized that the relevant issue was whether California law requires the defendants to compensate drivers separately for non-driving job duties, Werner argues that "As evidenced by Ayala and Oman, the answer to that question is no." Filing No. 354, Defendant's Brief at 3.

15

contrast, there are disputes as to the understanding of the parties in this case. In *Oman*, the Supreme Court of California approved a "pay by rotation" compensation system and explained and reaffirmed the "no borrowing" principle. *Oman*, 9 Cal. 5th 762–37. The resolution of the case explicitly "turned on the nature of Delta's contractual commitments." *Id.* at 337. In other words, the case is expressly limited to its facts. The Court found "Delta's four-formula method for calculating compensation guarantees that flight attendants are always paid above the minimum wage for the hours worked during each rotation without borrowing from compensation promised for other rotations." *Id.* at 338. No such finding can be made on this record. Werner has not established, as a matter of law, that its compensation system guarantees a pay rate above the minimum wage. Accordingly,

IT IS ORDERED:

1. The defendants' motions for partial summary judgment (Filing No. 353 in 8:14cv319, Filing No. 258 in 8:15cv287, Filing No. 216 in 8:17cv145, and Filing No. 92 in 8:20cv227) are denied.

Dated this 27th day of July, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge