## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **EZEQUIEL OLIVARES ABARCA, et al,** **individually and on behalf of all those similarly situated,** | **8:14CV319** |
| **and** | **ORDER** |
| **WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public,** | **8:15CV287** |
| **and** | **ORDER** |
| **BRIAN VESTER and JOEL MORALES, individually and on behalf of all others similarly situated,** | **8:17CV145** |
| **and** | **ORDER** |
| **DANIEL BRYANT, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **8:20CV227** |
| **vs.** | |
| **WERNER ENTERPRISES, INC., et al.,** | **ORDER** |
| **Defendants.** | |

This matter is before the Court following a telephone conference held before the undersigned magistrate judge on February 5, 2024. The parties sought the Court's intervention to resolve Werner Enterprises, Inc.'s outstanding objections to Plaintiffs' Rule 30(b)(6) deposition notice. The deposition notice to Werner identifies 27 topics for examination; the parties have been unable to resolve Werner's objections to topics 1, 3, 7-14, 17, and 19-27.

The Court anticipated ruling on the dispute by order following the conference. On February 13, 2024, counsel for Werner contacted the undersigned magistrate judge to request leave to file a motion for protective order regarding their objections to the Rule 30(b)(6) deposition topics, and to continue Werner's deposition set on February 22 and 23, 2024. In light of Werner's request, the Court held another telephone conference with counsel on February 16, 2024. In advance of the conference, the parties notified the Court of their agreement that Werner would produce a deposition designee for topics 1, 19, and 23 on March 8, 2024, and designees for the remaining topics on March 26-27, 2024. The parties had not resolved any of the pending objections before the Court. Additionally, Plaintiffs asked the Court to order Werner to specifically identify what witnesses will be testifying as Werner's Rule 30(b)(6) designees in advance of the depositions.

## DISCUSSION

Federal Rule of Civil Procedure 30(b)(6) provides that in response to a notice or subpoena an organization must designate one or more persons who consent to testify on its behalf. "The persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The noticing party "must describe with reasonable particularity the matters for examination." *Id.*

"The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Connections, Inc. v. Appleton Elec., LLC*, No. 8:12CV436, 2014 WL 1281918, at *3 (D. Neb. Mar. 27, 2014). "This obligation requires the designee to testify about information known or reasonably available to the organization" and it "can include information held by third-party sources if that information is reasonably available to the organization." *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *3 (E.D. Mo. Dec. 4, 2020) (quoting *List v. Carwell*, 2020 WL 5988514, at *13 (D Minn. Oct. 9, 2020). "[T]he burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored." *Id.*

A Rule 30(b)(6) deposition serves a unique function—it is the "sworn corporate admission that is binding on the corporation." See *In re Vitamins Antitrust Litigation*, 216 F.R.D. 168, 174

(D. D.C. 2003); see also *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006). However, "depositions under 30(b)(6) are not meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position[.]" *Brown v. W. Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D. Neb. May 6, 2014). "Courts have repeatedly emphasized the practical constraints on the scope of a 30(b)(6) deposition. While a corporation must make a good faith effort to prepare a 30(b)(6) witness to 'fully and unevasively answer questions about the designated subject matter . . . that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand.'" *United States v. HVI Cat Canyon, Inc.*, No. CV 11-5097 FMO (SSX), 2016 WL 11683593, at *7 (C.D. Cal. Oct. 26, 2016) (quoting *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012)).

A court has discretion to limited discovery that is unreasonably burdensome, cumulative, or outside the scope permitted by Rule 26(b)(1). See Fed. R. Civ. P. 26(b)(2)(C); *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003). Under Rule 26(c), courts have broad discretion in deciding whether protection is warranted and in determining the type and terms of protection to be ordered. Because discovery rules should "'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process." *Blackmore v. Union Pac. R.R. Co.*, No. 8:21CV318, 2022 WL 3718115, at *5 (D. Neb. Aug. 29, 2022) (quoting *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999)).

Each disputed topic, the parties' arguments, and the Court's rulings on Werner's objections to the Rule 30(b)(6) notice are set forth below:

**Topic 1:** "The meaning, content, scope, and significance of each column or field contained in the following csv files produced by Defendant ("Produced Data") in this litigation," followed by twenty .csv file names, such as "tlmgdtaap_[number]_[number].csv" and "scplogrc2[…].csv."

- Werner objects that this topic is unreasonably overbroad and does not describe the matters for examination with reasonable particularity because it seeks testimony about the individual content of billions of data fields, as a single category can encompass hundreds of files, millions of lines of data, and hundreds of millions of data fields.

3

o For example, Werner produced more than 240 separate files entitled "scplogrc2," a single one of which may contain 1 million rows of data and dozens of columns. For the "scplogrc2" files alone, Werner produced over 400 million lines of data which contain a total of over 16 billion fields. Werner maintains it is unable to adequately prepare a witness or witnesses to testify about each column or field comprising the over a billion lines of data.

- Werner further asserts the format of certain files identified by this topic, specifically, the tables of data comprising the over 1 billion messages, was not created by Werner; instead, these files contain Werner's messaging data in a proprietary format created by the messaging provider.

- Werner suggests that if Plaintiffs identify specific columns or fields in a particular data file which they have questions about, Werner can endeavor to prepare a witness to answer questions about those specific issues. Werner can also provide witness testimony to explain the source of the data used to populate the columns and fields on the spreadsheets produced by Werner and for programs and files created by Werner, and can endeavor to explain the organization of that data and answer questions about columns and fields used by Werner to produce the data requested by Plaintiff.

- Plaintiff responds that Werner's objections are not predicated on the request as written, but are instead based on its alleged inability to produce a witness who can testify about each record. Plaintiff asserts that the fact that so many records have been produced from the scplogrc2 table demonstrates the necessity for Plaintiffs to inquire about the fields in the table, which will allow Plaintiffs to correctly interpret the records.

- Plaintiffs assert the number of separate files is a red herring because in reality there is one database table, and that table contains columns (fields) *and* rows (records). That there are hundreds of millions of records (or rows) of data is also immaterial to the burden the request imposes upon Werner. Plaintiffs seek to understand the significance of each field, not record or row. In scplogrc2, there are 50 fields.

4

- Werner has produced some information regarding the fields in a document "PayLogsTrip Dataspec.docx," but Plaintiffs are unaware how such document was created, whether it is a business record, and whether it is reliable. Moreover, Plaintiffs have had no opportunity to ask questions regarding certain ambiguous and/or not fully explained fields. Thus, Plaintiffs have requested Werner produce a knowledgeable designee who can testify regarding the fields in that table.

- Plaintiffs further argue fields in many of the tables are not self-explanatory, and contain certain codes generated by Werner that Plaintiffs seek to understand.

    - For example, in the trip data table, there is a field, "SCHEDULED DELIVERY APPOINTMENT TYPE," identified as being a character field (alphanumeric) with a length of 1 character. See PayLogsTrip Dataspec at 6. There are at least three different codes that appear in the records for this field: "B", "A", or "W". Werner has not identified what information this field provides about the trips, nor what the three different codes found in this field represent.

- Plaintiffs recognize that many of the electronic tables Werner produced contain several dozen fields, but not hundreds or more. Plaintiffs maintain they will be unfairly prejudiced in their ability to analyze and use any of the hundreds of millions of records stored over these tables without Werner providing information regarding the fields in each table Werner produced, and there is no less onerous way of obtaining this information.

The Court finds that, although this request is cumbersome, it is not as overly burdensome as Werner presents. Plaintiffs are not requesting Werner to testify regarding the billion records or rows of data, but instead seek to understand the columns or fields of data, numbering in the several dozens, and Werner's codes used within those fields. Plaintiffs state Werner produced "some information regarding the fields in a document "PayLogsTrip Dataspec.docx" but Plaintiffs need more information regarding that document and how it was generated. Given that Werner has produced a document containing some information regarding the fields, it may be possible for the parties to reach further stipulations regarding additional fields to ease the burden upon Werner's

witness.  Werner shall otherwise endeavor to prepare a witness to discuss the fields and columns in the tables it has produced.

**Topic 3**: The date ranges which Defendant currently possesses for each type of Produced Data, the date ranges of Produced Data, and all reasons that any data from the database tables which were produced as the Produced Data, was not retained since the start of the Class Period and/or was not produced for the entire Class Period.

- In Werner's letter, it offers to stipulate that all such data in Werner's possession relating to drivers in the class has been produced for the entire class period (i.e., June 4, 2010 – November 6, 2023). Plaintiffs accept this stipulation, provided the Court accepts such stipulation as a binding admission upon which Defendants may not later challenge.

The Court deems this objection resolved upon Werner's stipulation.

Werner groups its objections and arguments to Topics 7, 8, and 12 together.

**Topic 7**: Whether and how the Produced Data shows the number of hours each class member worked each workweek; the witness should be prepared to review the datasets provided in this litigation by Defendant to arrive at an answer for example class members on specific workweeks, to be identified during the deposition.

**Topic 8**: Which hours, if any, were paid by Defendant for work performed by class members; the witness should be prepared to review the datasets provided in this litigation by Defendant to arrive at an answer for example class members on specific workweeks, to be identified during the deposition.

**Topic 12**: Whether and how the Produced Data shows the amount of money Class Members were paid for each workweek; the witness should be prepared to review the datasets provided in this litigation by Defendant to arrive at an answer for example class members on specific workweeks, to be identified during the deposition.

- Werner objects that these topics improperly seek a witness to review the voluminous data in this case and render opinions and conclusions regarding hours worked and amounts paid to specific class members during specific workweeks, all

6

of which Plaintiffs propose to identify for the first time during the deposition. Because there are over 99,000 class members spanning over 13 years, Werner is unable to prepare a lay witness to testify about individualized analyses for each class member on a workweek-by-workweek basis, based on over 615 million lines of pay, log, and trip data.

- Werner also asserts these topics improperly seek legal conclusions and interpretations, rather than facts. See *Petrone v. Werner Enters.*, 42 F.4th 962, 969 (8th Cir. 2022) (concluding plaintiffs in a certified class of 52,000 drivers could not prove damages in a wage and hour class action simply by reference to drivers' time and pay records because expert testimony was required).

- With respect to topic 7, Plaintiffs respond that Werner produced its business records by providing extractions of 20 database tables it retains in conducting its business. Plaintiffs are unclear whether any of the tables it produced by Werner are time records that show the number of hours worked by class members. Plaintiffs are unclear which, if any, of the Produced Data contains time records for class members' hours worked, therefore cannot identify in advance of the deposition which tables the witness should be prepared to review. Plaintiffs assert the witness must be prepared to state whether any of the tables contain the number of hours worked by the drivers, and if so, how the information is recorded in those records.

- With respect to topic 8, Plaintiffs respond that they do not seek Werner's opinions regarding what time is legally compensable. Instead, Plaintiffs want to inquire as to which hours of a plaintiff's work are paid by Werner. Plaintiffs provide the example that Werner's designee can testify regarding whether it paid a driver for driving hours, or loading hours.

  o Plaintiffs state this request is not vague because they specifically identified the scope of the inquiry: which hours, if any, were paid by Defendant for work performed by class members.

The Court sustains Werner's objections in part. Werner shall endeavor to prepare a witness to explain whether the Produced Data shows hours worked for class members, whether the data shows the amount of money class members were paid for each workweek, whether the data shows hours worked, and how that information is recorded or displayed in the produced data. But to the

extent Plaintiffs ask that a witness be prepared to review datasets provided during the deposition "to arrive at an answer for example class members," the Court finds such request is outside the proper scope of Rule 26(b)(1) and a Rule 30(b)(6) deposition.

Werner groups its objections and arguments to Topics 9, 10, and 11 together.

**Topic 9**: Whether and how the Produced Data shows when a class member is available to be dispatched but is not under a load, including what datapoints contain such information.

**Topic 10**: Whether and how the Produced Data shows the amount each class member earned in compensation for each hour, and each workweek. This will require explaining different codes in several different CSV files and explaining how such amounts relate to each other and what the codes mean.

**Topic 11**: Whether and how the Produced Data shows the geographic locations of class members throughout their employment with Werner, including the locations where class members parked their trucks during home time, and whether Werner maintains records regarding the geographic locations where class members attended orientation.

- Werner objects that these topics impermissibly require its witnesses to review the voluminous data provided in this case and render opinions and conclusions based on that data. Werner can produce a witness to generally discuss the contents of the data files produced in this case, if Plaintiffs specify the files with respect to which they have questions.

- Werner also objects that these topics are also impermissibly vague and overly broad because Werner has produced over 1 billion Qualcomm messages and over 615 million lines of pay, log, and trip data, and cannot adequately prepare a lay witness to testify about the content of all that data and how "it relate[s] to each other" without additional specificity about the specific lines and fields of data are at issue.

- To the extent Plaintiffs want a witness to "explai[n] different codes in several different CSV files and … how such amounts relate to each other [if at all] and what the codes mean," Werner can endeavor to provide a witness to assist Plaintiffs in understanding the codes if Plaintiffs identify the CSV files and the codes at issue before the deposition. Werner has already produced explanations for the earnings and deduction codes contained in the class members' pay data.

8

- Plaintiffs respond these topics explicitly inform Werner of the specific information Plaintiffs seek to inquire about.  Plaintiffs cannot identify any specific CSV files in advance of the deposition because they are unaware which specific CSV files, if any, contain the information Plaintiffs are seeking.  Plaintiffs maintain Werner must identify whether the data contains such information, and if so, how it so shows that information .Werner cannot place the burden on Plaintiffs to determine where such information is located in the proprietary tables Werner produced from its own business records.

- Plaintiffs have asked Werner to identify whether such information is in the data, and if so, to testify regarding how such information is shown in the records.

The Court overrules Werner's objections.   These topics describe with reasonable particularity the information Plaintiffs seek to inquire about.  Although the data produced in this case is voluminous, Plaintiffs reasonably are asking Werner to identify whether the above information is in the data, and if so, to testify regarding how such information is shown in the records.  Accordingly, Werner shall prepare a witness to testify regarding these topics.

Werner groups its objections and arguments to Topics 13 and 14 together.

**Topic 13**: Any and all formulas, rules, policies, and practices of Defendant which Defendant uses to determine the number of hours Class Members worked for Defendant each workweek.

**Topic 14**: Any and all formulas, rules, policies, and practices that were generally applicable to Defendant's employment of Class Members which Defendant uses to determine the amount of compensation Class Members earned from Defendant each workweek.

- Werner states it can prepare a witness to testify to Werner's general policies for payment of drivers, including the fact drivers are generally paid by the trip and may also be eligible to receive various forms of supplemental pay.  Werner objects that the specific amounts paid to any particular driver for any particular load will necessarily vary based on numerous individual factors such as the driver's personal circumstances, the driver's fleet or division, the unique circumstances of the load at issue, and whether the driver qualified for various forms of supplemental pay.

- Plaintiffs respond that Werner's objections only implicate topic 14 because topic 13 does not deal with issues of pay or compensation policies. Plaintiffs therefore assert Werner has not properly objected to topic 13. Regardless, Plaintiffs assert topic 13 is proper because Werner "has never testified regarding whether it has accurate records of the hours its class members worked, nor has it provided any information regarding how it determines, from the information it collects (such as from DOT driver logs), the number of hours its employees work each workweek."

- Plaintiffs also respond that Werner did not actually lodge a legal objection to topic 14, but instead only stated it is impossible to prepare a witness to testify. The fact that Werner changed its pay policies does not absolve Werner from providing pertinent information regarding how it paid class member drivers, including providing information about how mileage pay (the primary compensation provided to drivers throughout the class) is computed, how layover pay is earned, how detention pay is earned, and how any supplemental pay generally available to class members is earned. Werner, as a corporation, issued payment to class members throughout their employment, and it is self-evident that the corporation must have institutional knowledge regarding how drivers' pay is calculated.

It appears to the Court that the parties are not really in dispute on these topics. Werner states it can prepare a witness to testify to Werner's general policies for payment of drivers, including the fact drivers are generally paid by the trip and may also be eligible to receive various forms of supplemental pay, and only objects to the extent Plaintiffs are asking Werner to be prepared to answer questions regarding specific amounts paid to an individual driver. Werner shall prepare a witness to testify regarding its general policies used to determine hours worked and compensation earned. If Plaintiffs wish to ask Werner about payment or hours as to specific individual drivers, at least five business days in advance of the deposition Plaintiffs shall identify no more than five individual drivers and the specific workweeks Plaintiffs request Werner's testimony.

**Topic 17**: Any and all policies and practices generally applicable to Defendant's employment of Class Members that Werner used or implemented to comply with Nebraska and California minimum wage law since 2010.

10

- Werner objects that this Topic appears to seek information protected by the attorney-client privilege and the attorney work product doctrine regarding policies and practices "used or implemented to comply with" the law. A lay witness could not identify the "policies or practices," if any, without disclosing privileged information. Werner asserts this topic also appears to impermissibly seek legal conclusions regarding policies or practices "used or implemented to comply" with the law.

- Plaintiffs respond that they are not seeking legal advice, communications, or legal opinions from Werner's lawyers.  Instead, Plaintiffs ask Werner to identify conduct it engaged in by identifying generally applicable policies it used or implemented during the class period. Plaintiffs assert a Rule 30(b)(6) deposition is an appropriate vehicle to learn how a company contends it complied with its legal obligations.

The Court overrules Werner's objection.  "A corporation's legal compliance policy that serves as a reference or instructional guide to corporate employees is primarily a "business" policy rather than a "legal" policy, even if based on the advice of counsel."  *Key v. US Greenfiber, LLC*, No. 4:21-CV-00233-DCN, 2023 WL 1392058, at *4 (D. Idaho Jan. 31, 2023); see also *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-01871, 2009 WL 4641707, at *3 (E.D. Pa. Dec. 7, 2009) ("For example, documents prepared by a corporation as part of efforts to ensure compliance with federal regulatory agencies or maintain a positive public image for its products, and not because of possible litigation, are not protected by work-product doctrine."). Werner shall prepare a witness to discuss any minimum wage policies or practices it implemented or employed.  However, Werner's witness will not be required to answer questions regarding whether its practices conformed with those policies, or whether their policies complied with applicable laws.  See, e.g. *Dagdagan v. City of Vallejo*, 263 F.R.D. 632 (E.D. Cal. 2010) (finding that, though Rule 30(b)(6) deponent was required to answer questions about corporate policies, he was not required to answer whether practices or documents reflected compliance or non-compliance with those policies).

**Topic 19**: The time-zone of each time and date field provided any of the Produced Data.

- Werner states that it has produced hundreds of CSV files in this lawsuit, most of which contain at least one million rows. Werner asked Plaintiffs to provide a complete list of all files at issue in this topic, and offers to ascertain the applicable time zone for each file and provide that information in the form of a stipulation. Werner asserts this is a less burdensome means of obtaining this information.

- Plaintiffs respond that Werner has not actually objected to this request, and therefore Werner should be required to produce a witness as requested. Plaintiffs assert this topic does not refer to "csv files" but to the "Produced Data," which as provided in Topic 1, describes with particularity the 20 CSV files for which the request is made.  Plaintiffs state, "only a relatively few fields contain dates or times, and in some of the files, no date or time fields appear to exist," and thus this request ultimately will seek Werner to confirm the timezone of less than 50 fields across 20 tables.

The Court finds that, given the breadth of Plaintiffs' other deposition topics and considering the time constraints of a Rule 30(b)(6) deposition, Werner's offer to provide a stipulation containing this information is a considerably less burdensome means for Plaintiffs to obtain this information.  Plaintiffs state they are asking Werner to "confirm the timezone of less than 50 fields across 20 tables."  Plaintiffs shall provide to Werner a list of all files at issue in this topic, and within 14-days of receiving the list, Werner shall ascertain the time zone for each file in the form of a stipulation. See *Blackmore*, No. 8:21CV318, 2022 WL 3718115, at *5 (Because discovery rules should "'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process.").

**Topic 20**: Werner's system for sending personal cash advances to class members since 2010, including any third-party entities engaged for this purpose and amounts they charged, all amounts taken as deductions from class member compensation for personal cash advances, and any circumstances under which Werner has reimbursed the $4 transaction fee for such advances.

- Werner states it can produce a witness to testify regarding Werner's general policies with respect to personal cash advances and the general rules for reimbursement of

12

the $4 transaction fee. However, to the extent Plaintiffs intend to ask about specific advances or deductions relating to specific class members, Werner objects that this topic is impermissibly overbroad and vague.  Werner's pay data produced to Plaintiffs, reflects every deduction made for every class member, but Werner cannot adequately prepare a witness to testify to every deduction or reimbursement for all 99,000 class members. To the extent Plaintiffs intend to present examples relating to individual class members, Werner asserts that information should be disclosed before the deposition.

- Werner also objects that this topic also seeks information that has no bearing on the parties' claims or defenses because the involvement of third-party entities in processing drivers' requests for advances and any costs associated with such entities are not relevant to whether Plaintiffs were paid all wages they allege they are owed. While Plaintiffs have argued they believe this information is relevant to whether the deduction is a type of "discount" prohibited by California law, there is no claim for unlawful "discounts" in this case. Compare Cal. Labor Code § 212 with Filing 161, Plaintiffs' Fourth Amended Complaint.

- Plaintiffs respond that they seek to inquire regarding Werner's system for providing wage advances during this class period.  Plaintiffs assert their operative complaint alleges Werner engaged in unlawful deductions by "making deductions to repay alleged pay check advances where Defendants and the Class members have not entered into written agreements that authorize such deductions." Filing No. 160 at ¶ 18 citing Neb. Rev. Stat. § 48-1230(1) ("An employer may deduct, withhold, or divert a portion of an employee's wages only when the employer is required to or may do so by state or federal law or by order of a court of competent jurisdiction or the employer has a written agreement with the employee to deduct, withhold, or divert.").

- Additionally, although Werner argues the involvement of third-party entities in processing drivers' requests for advances and costs with such entities is not relevant, Plaintiffs assert Werner has also not agreed that it will not attempt to introduce evidence that the costs it charged drivers were to offset any costs that it

incurred in providing the wage advance.  Therefore, Plaintiffs' inquiry into such areas is relevant.

The Court sustains Werner's objections, in part.  Werner shall produce a witness to testify regarding Werner's general policies with respect to personal cash advances and the general rules for reimbursement of the $4 transaction fee, but the Court will not require Werner to answer questions regarding specific advances or deductions for individual class members unless Plaintiffs identify those individual examples five business days in advance of the deposition.  Plaintiffs shall be limited to five individual examples.  Werner must also prepare a witness to discuss "deductions" because Plaintiffs have brought a claim for unlawful deductions under Neb. Rev. Stat. § 48-1230(1), not for discounts under California law.  If Werner stipulates it will not attempt to introduce evidence that the costs it charged drivers were to offset any costs that it incurred in providing the wage advance, then Werner also does not have to prepare a witness to discuss third-party entities engaged for this purpose and amounts they charged.

**Topic 21**: Werner's system for sending class members standardized text messages (i.e., messages that appear with the same or substantially similar text multiple times and to multiple recipients throughout the messaging data Werner produced) on their onboard devices, including any and all formulas, rules, policies, or practices governing when such standardized text messages were sent.

- Werner objects that it is unclear what is meant by "system" for sending "standardized text messages" and which "standardized text messages" are referenced in this Topic.  Werner also objects that the "policies and practices" governing when various messages were sent may vary significantly depending on the content of the message and the time period(s) during which the message was sent.  Accordingly, given the volume of messaging data at issue, Werner states it can endeavor to produce a witness to testify regarding the general circumstances under which such messages may be sent if Plaintiffs provide additional specificity as to the content of the standardized messages at issue.

- Plaintiffs respond that Werner, not Plaintiffs, programmed their system and therefore have institutional knowledge of each standardized message sent during

14

the class period. Plaintiffs have encountered numerous standardized messages in Werner's production; for example, one message states:

"CAUTION: YOU ARE LOADING AT OR GOING INTO A HIGH THEFT RATE AREA. TAKE ALL PRECAUTIONARY STEPS TO PREVENT THEFT OF THE TRACTOR, TRAILER & FREIGHT. DO NOT LEAVE TRACTOR/TRAILER UNATTENDED."

Plaintiffs assert such standardized message appears to be atomically sent to drivers based on some policy or procedure programmed into Werner's messaging/logging/tracking computer system. Plaintiffs should be permitted to obtain information regarding any and all formulas, rules, policies, or practices governing when such standardized text messages were sent.

Werner's objections are overruled.  As stated by Plaintiffs, Werner must have some sort of system, process, program, or mechanism by which it sent standardized messages to its drivers (like the caution message Plaintiffs use as an example).  Werner shall endeavor to prepare a witness to testify as to standardized messages it sent to drivers.

**Topic 22**: How Werner interpreted and enforced the policies set out in the Driver Handbook, as well as any other rules, policies, practices, or conditions to which class members were subject when they were over the road for Werner.

- Werner objects that this topic is overbroad and vague because it has produced multiple versions of the Driver Handbook, each of which several hundred pages in length, totaling almost 2,800 Handbook pages. Werner cannot prepare a witness to testify regarding every subject addressed in every Handbook, and it would be overly broad, unduly burdensome, and not proportionate to the needs of this case to suggest Werner should do so, considering numerous topics addressed in the Handbook have no relevance to Plaintiffs' claims for unpaid wages or Werner's defenses. Werner states if Plaintiffs identify the Driver Handbook policies at issue, Werner can produce a witness to testify generally regarding polices relevant to the claims and defenses in this lawsuit.

15

- To the extent Plaintiffs seek testimony in this Topic regarding anything other than written Handbook policies, Plaintiffs should be required to identify the alleged "rules, policies, practices, or conditions" at issue in advance of the deposition.

- It is also unclear what Plaintiffs mean by "how Werner interpreted" the policies set out in the Handbook. To the extent Plaintiffs seek to elicit legal conclusions about Werner's interpretation of policies, Werner objects.

- Plaintiffs respond that the parties dispute the extent of control Werner exhibited over class members when they were over-the-road on Werner's business, and this topic asks Werner to identify how it interpreted and enforced its Handbook policies upon class members while they were over-the-road.  Plaintiffs state they cannot identify which policies are at issue before the deposition because the purpose of this request is to obtain from Werner which policies, practices, and conditions it acknowledges it subjects drivers to while over the road.

The Court overrules Werner's objections, in part. With Plaintiffs' clarification, it is clear this topic specifically refers to any of Werner's policies applicable to class members when they were over-the-road, and how Werner enforced any such policies on drivers when over-the-road. This is not an overbroad or vague request and identifies the matter to be examined with reasonable particularity.  The Court agrees with Werner, however, that asking it to "interpret" its policies regarding over-the-road drivers may elicit legal conclusions, and objections on that basis may be appropriate during the deposition.

**Topic 23**: Any changes that occurred since 2010 with respect to Werner's formulas, policies, practices, or methods for compiling, maintaining, or preserving the Produced Data, including the reasons for any such changes.

- Werner objects that this seeks information not relevant to any claims or defenses because Werner's data preservation policies and their reasons for the changes are not relevant to whether Plaintiffs were paid all wages they allege they are owed under state law.

- Werner further objects this topic is vague and overly burdensome because it is not clear what data or "formulas, policies, practices, or methods" are at issue and any changes that may have occurred at any point over a thirteen year period.
- Plaintiffs respond that Werner has produced, for each database table, multiple csv files, covering more than 13 years of data, but Werner has not explained if they changed any of the codes or fields in the database over the 13-years of which the productions cover. Plaintiffs state this request will help them adequately understand the produced data.
- Plaintiffs also respond that after the Court ordered Werner to produce Omnitracs/Qualcomm messages, Werner produced a database called Telemetrics, a newer system Werner implemented in or around 2020. Plaintiffs assert Werner has "informally" explained the change, but "it is important for Plaintiffs to obtain information regarding the change from one system to the next to ensure they are not prejudiced in their ability to rely on data from either system."

Werner's objections are sustained. The reasons why Werner may have changed its data preservation policies over the last thirteen years are not relevant to any claim or defense, nor is it relevant to Plaintiffs' stated reason that they need to know whether changes occurred to help them understand the Produced Data. Any changes to codes or fields will also likely be covered by Topic 1, which requests Werner's witness to explain the columns, fields, and codes used in the Produced Data tables.

**Topic 24**: All standardized written agreements between Werner and class members related to their employment with Werner since 2010.

- Werner objects it is unclear what "standardized written agreements" are at issue or whether those agreements are relevant to any claims or defenses. Werner asks the Court to direct Plaintiffs to identify documents so Werner may endeavor to identify an appropriate witness to testify regarding those documents. Werner also objects this topic appears to seek legal conclusions from a lay witness regarding the meaning of terms in "standardized written agreements."

- Plaintiffs respond that Werner has produced certain documents for deponents and named plaintiffs which appear to be standardized documents which all incoming employees are required to sign. See Ex. 3. However, Plaintiffs state it is unclear whether Werner has produced all form agreements which it utilized during the class period, nor have Plaintiffs been permitted to inquire whether the agreements are in fact standardized. Plaintiffs do not believe any standardized agreement exists regarding Werner's wage advance program where it deducts advance fees from wages. Because Werner has institutional knowledge regarding which standardized agreements it utilized during the class period, Werner's request that Plaintiffs identify agreements beforehand defeats the purpose of this request.

Werner's objections are overruled. Werner shall prepare a witness to testify regarding its standardized/form agreements with drivers related to their employment utilized during the class period. However, Werner may still properly object to questions asking to interpret or provide the meaning of certain terms in agreements to the extent those questions call for legal conclusions or otherwise implicate attorney-client/work product privileges.

**Topic 25**: Any prior rulings of courts, arbitrators, California Labor Commissioners or other adjudicative bodies which considered allegations that Werner failed to compensate its drivers in accordance with involving violations of federal, Nebraska, or California minimum wage and/or the California Labor Code.

- Werner objects that this Court previously denied Plaintiffs' motion to compel a response to requests for production seeking rulings, orders, decisions, judgments, or other adjudications addressing whether Werner violated California or Nebraska law in certain respects because it was overly broad on its face. Plaintiffs now seek to make an end run around the Court's ruling.

- Werner further objects this topic seeks the mental impressions of counsel, attorney work product, and/or attorney-client privileged communications regarding "prior rulings … which considered allegations that" Werner failed to comply with certain laws in certain respects because it is not possible for any lay witness to identify rulings falling within the scope of this topic. As such, any lay witness required to

18

testify to this topic would simply be parroting privileged information obtained from Werner's counsel.

- Werner also objects this topic is vague because is unclear what Plaintiffs mean by the vague term "other adjudicative bodies," and the phrase "failed to compensate its drivers in accordance with [sic] involving violations of…" the law.

- Plaintiffs respond that this request is not an end run around the Court's prior order on their motion to compel because they narrowly seek court rulings.  Plaintiffs state they seek information regarding prior adjudicative rulings that Werner failed to compensate drivers in accordance with federal, Nebraska, or California minimum wage and/or the California Labor Code.

The Court sustains Werner's objections because it is unclear what nonprivileged, relevant testimony a Rule 30(b)(6) lay witness could possibly provide on this topic.

**Topic 26**: The date(s) of specific document(s) Defendants produced in this action, including data files, were created, and when and how such document(s) were used in Defendants' business. Plaintiff will identify such documents no later than 10 days prior to the date of the scheduled deposition.

- Werner objects that this topic is vague, ambiguous, overly broad and does not describe the matters for examination with reasonable particularity because Plaintiffs have not identified the specific documents at issue or even stated the number of documents at issue.  Werner has produced over 77,000 documents and over 1.5 billion lines of data in this case, so it is not feasible for Werner to prepare a witness with 10 days' notice.

- Werner similarly objects that this topic is overly broad and unduly burdensome due to the volume of documents and individualized inquiries.

- Werner also objects this topic seeks irrelevant information because the date(s) of creation and the date and manner in which the documents might have been used do not bear on whether Plaintiffs were paid all wages they allege they are owed.

- Werner also objects that, to the extent this topic seeks to investigate Werner's discovery efforts, that information is also not relevant to Plaintiffs' claims or

Werner's defenses and would impermissibly require disclosure of privileged information.

- Plaintiffs respond that they seek the dates of Werner's numerous handbooks and other policy documents produced in this litigation, and will provide the list to Werner as soon as possible. To the extent Werner cannot provide dates for some of the documents listed during the deposition, Plaintiffs are confident the Parties will be able to reach an agreement regarding a procedure in which Werner can identify the dates of such documents postdeposition. In the alternative, the Court should stay its ruling until after Plaintiffs have identified the documents subject to this request.

With Plaintiffs' clarification, Werner's objection is overruled.

**Topic 27**: The factual premises of Werner's affirmative defenses.

- Werner objects that this is in improper contention topic not permitted in this district. See *Wilbur-Ellis Co. LLC v. Gompert*, No. 8:21CV340, 2023 WL 8806573, at *3 (D. Neb. Dec. 20, 2023) ("It is widely accepted that Rule 30(b)(6) 'contention topics' which require an opposing party 'to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense' or claim are overbroad and improper. Rule 30(b)(6) topics which seek to elicit deposition testimony on all facts in support of a claim or contention are unduly burdensome, unwieldy, and disproportionate to the needs of the case."

- Further, because no lay witness would have information responsive to this Topic other than by obtaining that information from Werner's counsel, this Topic improperly requires the disclosure of attorney client privileged information and litigation work product.

- Plaintiffs respond that Werner has pled 18 affirmative defenses but not provided any factual predicate explaining their affirmative defenses. Plaintiffs maintain their request is not overbroad because they seek a witness "who can testify generally regarding the affirmative defenses Werner has pled in its answer." Plaintiffs

contend that the Court will be shielding Werner from disclosing any information during discovery regarding its vaguely pled affirmative defenses.

The Court sustains Werner's objections. "It is widely accepted that Rule 30(b)(6) 'contention topics' which require an opposing party 'to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense' or claim are overbroad and improper." *Blackmore v. Union Pac. R.R. Co.*, No. 8:21CV318, 2022 WL 3718115, at *7 (D. Neb. Aug. 29, 2022). When a 30(b)(6) witness is asked to disclose "all facts" supporting a legal claim or defense, it is "extremely difficult to distinguish between 'facts' (not protected) and the issue of why those facts have legal consequences, which usually has a work-product (lawyer's mental impressions) dimension," particularly since the party's lawyer was the likely source of the information provided to a witness during preparation for a Rule 30(b)(6) deposition." *Id.* However, courts have reached differing conclusions on this issue, with some holding that seeking the factual basis of affirmative defenses through a Rule 30(b)(6) is appropriate. See, e.g., *Ward v. Nesibo*, No. 4:22-CV-00054-DN-PK, 2023 WL 3391145, at *4 (D. Utah May 11, 2023). Under the circumstances of this case, however, and keeping in line with other decisions within this district, the Court finds Plaintiffs' topic asking Werner to prepare a Rule 30(b)(6) witness to discuss the factual premises of its affirmative defenses is overbroad and implicates attorney mental impressions and work product.

Although the Court finds that this Rule 30(b)(6) deposition is not an appropriate means for Plaintiffs to inquire about Werner's affirmative defenses, Plaintiffs are still entitled to discover the factual underpinnings of Werner's eighteen affirmative defenses, which have only been generally pled. "Contention interrogatories are sometimes a more appropriate discovery vehicle than a Rule 30(b)(6) deposition where a party seeks 'to use a 30(b)(6) deposition to explore the facts underlying the legal claims and theories asserted by' the opposing party." *Burgess v. Daimler Truck N. Am., LLC*, No. 1:23-CV-03054-MKD, 2024 WL 407476, at *5 (E.D. Wash. Feb. 2, 2024) (quoting *Stemcell Tech. Canada, Inc. v. StemExpress, LLC*, No. 21-cv-01594-VC, 2022 WL 2132930, at *2 (N.D. Cal. June 14, 2022)); see also *HVI Cat Canyon*, No. CV 11-5097 FMO (SSX), 2016 WL 11683593, at *9 (quoting *Fidelity Mgmt. & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64 (D. Mass. 2011)) ("[I]t is not clear that a 30(b)(6) deposition is the best method for obtaining the information [regarding an affirmative defense]. Rather, it can be argued that contention interrogatories are a better vehicle."). Under the circumstances, the Court will permit Plaintiffs to serve Defendants with 18 contention interrogatories regarding the factual bases for

their affirmative defenses.  The Court will not count these interrogatories towards the previous additional 50 interrogatories Plaintiffs were permitted to serve per the Court's prior Order (Filing No. 424).

**IT IS ORDERED**

1. Werner's objections to Plaintiffs' Rule 30(b)(6) deposition notice are sustained in part, and denied in part, as set forth above.
2. Werner shall identify what witnesses will be testifying as Werner's Rule 30(b)(6) designees, and as to which topics, 3-days in advance of their testimony.

Dated this 23rd day of February, 2024.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge