IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, individually and on behalf of all those similarly situated; ALFREDO ALESNAJR., individually and on behalf of all those similarly situated; DAVID CAGLE, individually and on behalf of all those similarly situated; STEPHEN L. DAVIS, individually and on behalf of all those similarly situated; FRANK EADS, individually and on behalf of all those similarly situated; and KENNETH J. SURMAN, individually and on behalf of all those similarly situated, | **8:14CV319**<br>**(Lead Case)**<br><br>**MEMORANDUM AND ORDER** |
| Plaintiffs, | |
| vs. | |
| WERNER ENTERPRISES, INC., DOES 1-100, inclusive; and DRIVERS MANAGEMENT, LLC, | |
| Defendants. | |
| _____ | |
| WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public, | **8:15CV287**<br>**(Member Case)** |
| Plaintiffs, | |
| v. | |
| WERNER ENTERPRISES, INC., et al., | |
| Defendants. | |
| _____ | |
| BRIAN VESTER and JOEL MORALES, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |

1

WERNER ENTERPRISES, INC., et al.,

Defendants.

**8:17CV145**
**(Member Case)**

In this class-action lawsuit, truck drivers employed by the defendant trucking companies allege various violations of California and Nebraska wage and hour laws relating to the businesses' compensation practices.  The case is now before the Court on the following motions: Defendants' motion to decertify the class, Filing No. 468;[1] Defendants' motion for summary judgment regarding liability, Filing No. 470; Plaintiffs' motion for partial summary judgment on liability for failure to pay minimum wages, Filing No. 473; Plaintiffs' motion for partial summary judgment regarding unlawful wage deductions and itemized wage statements, Filing No. 476; Defendants' motion to strike the declaration of Dr. Robert Speakman, Filing No. 513; and Plaintiffs' motion to strike exhibits or for leave to surreply, Filing No. 529.  The Court rules on the various motions as set forth herein.

## I.    BACKGROUND

Defendant, Werner Enterprises, Inc., is a large interstate commercial trucking company, headquartered in Omaha, Nebraska, with terminals in Omaha and Fontana, California.  Filing No. 472-2 at 4.  Defendant Drivers Management is a subsidiary of Werner.  Filing No. 488-29 at 1.

---

[1] All filing numbers in this Order refer to the pleadings in the lead case, *Abarca v. Werner Enterprises, Inc.*, Case Number 8:14CV319.  In many instances, identical pleadings have been filed in the member cases, albeit with different filing numbers, and this Order serves as a ruling on the motions in all three cases.

Drivers hired by Werner undergo orientation, including receiving a handbook and signing a series of forms. Filing No. 488-29 at 4–5.  The Acknowledgment of Employment in Nebraska and Consent to State of Nebraska Workers' Compensation form indicates the driver will be "subject to Nebraska's workers' compensation jurisdiction and laws and Nebraska's labor and employment laws" and states, "The driver hereby waives jurisdiction of any state (other than the state of Nebraska) for workers' compensation benefits and protection." Filing No. 142-15 at 2.  The Driver Handbook[2] informs drivers that they can apply for a cash advance on their paycheck by sending a "Macro 39" message from their vehicles, but that they will be charged a $4 fee. Filing No. 479-1 at 13–14.  They are eligible to have the fee refunded if they can document that more than half the advance was used for company expenses while on a trip. *Id.* at 13.  The handbook also requires drivers to protect and secure their freight and suggests "good safety and business practices" including maintaining visual awareness of the equipment when moving or parked and not leaving the truck unattended. Filing No. 472-16 at 18.  Werner provides additional written directions instructing drivers not to leave loads unattended when they are transporting high-value or hazmat loads or are in a high-theft area. Filing No. 472-35 at 2–4.  Drivers sign an acknowledgment of having received and reviewed the handbook. Filing No. 466-6 at 1.

Before 2014, drivers were also informed that an amount up to $400 would be withheld from their paychecks in $10 increments in order to serve as a security deposit for the return of the various items Werner furnished its drivers. Filing No. 142-14; Filing No. 355-24 at 3.  The Employment Conditions form stated that the undersigned driver

---

[2] Several different versions of the handbook were in effect during the class period.

"authorize[d Werner] to withhold $10.00 from each of my paychecks until a total of $400 has been accumulated for the purpose of a personal bond." Filing No. 488-29 at 1; Filing No. 355-24 at 3.

Werner does not pay its drivers by the hour. Werner describes its compensation system as being based on an estimate of the number of miles each trip should take. Filing No. 186 at 9; Filing No. 142-4 at 133; Filing No. 472-6 at 1; Filing No. 355-13 at 3. Plaintiffs describe payment as being "on a mileage basis, based on the miles delivered." Filing No. 474 at 20 (citing Filing No. 472-6 at 1, 3). The Employment Conditions form each driver signs provides, "I understand that when I am paid by the mile, I will be paid point-to-point mileage as set forth in the Household Goods Carriers' Bureau Mileage Guide (as published by Rand McNally) and that the pay mileage will in most cases be different than actual mileage driven or odometer miles." Filing No. 472-14 at 1. Werner believes that when setting mileage rates, it takes into consideration all activities necessary to complete a trip such as pre-trip and post-trip inspections, fueling, driving, and completing paperwork. Filing No. 142-2 at 133–34, 138, 177–81.

Werner requires its drivers to log their own time while working and traveling over the road. Filing No. 142-2 at 3. Werner requires drivers to follow the Federal Motor Carrier Safety Administration's (FMCSA's) Hours of Service regulations, which divide driver time into four so-called "duty statuses": off duty, sleeper berth, driving, and on-duty but not driving. 49 C.F.R. § 395.8. Drivers testified that because the FMCSA imposes limitations on the total number of hours a person can drive in a given time period, they are encouraged to log themselves as off-duty or being in the sleeper berth whenever possible in order to maximize the number of miles they can achieve. Filing No. 472-11 at

3; Filing No. 472-10 at 17, Filing No. 472-9 at 3.  For example, drivers testified that they log being on call, providing security to Werner's vehicles and cargo, and waiting for customers or Werner's management as "off duty."  Filing No. 472-11 at 8; Filing No. 472-9 at 5.

Drivers testified to the expectations Werner imposes to keep their loads safe and secure while driving over the road.  In particular, Werner expects drivers to remain with the trucks even while they sleep, requiring them to rest in the sleeper berth of the vehicle rather than anywhere outside the truck.  Filing No. 472-11 at 5; Filing No. 472-9 at 5. However, drivers testified that while in the sleeper berth, they can eat, sleep, surf the internet, watch movies, make personal phone calls, or otherwise engage in leisure activities.  Filing No. 466-11 at 8; Filing No. 466-12 at 8.

Werner issues pay statements to drivers showing a regular workweek from Tuesday to Monday, with drivers receiving pay the following Friday.  Filing No. 472-6 at 11; Filing No. 142-21.  However, Werner only pays drivers for miles that they have "turned in" by the end of the workweek, regardless of when the actual work was performed.  Filing No. 472-6 at 11.  Thus, any given wage statement may include payment from trips undertaken during different pay periods.

On March 20, 2018, Magistrate Judge Nelson recommended certifying the following classes: 1) all truck drivers who worked or work anywhere for Werner after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit[3] ("the Nebraska class"); and 2) all truck drivers who were or are California residents and who, while working for Werner,

---

[3] The parties later agreed to make July 14, 2023, the end date for class membership in order to eliminate the need for continual supplemental notices.  Filing No. 393.

picked up and/or dropped off a load in the state of California after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit ("the California class"). *See* Filing No. 186. The Court adopted the Magistrate Judge's order in full. Filing No. 190.

The parties have completed liability-related discovery and now move for summary judgment. Discovery remains on-going for damages-related issues. Werner also moves to decertify the class.

## II.    ANALYSIS

### A.  Standards of Review

#### 1.  *Standard for Motion to Decertify the Class*

While a plaintiff bears the initial burden of demonstrating a class action should be maintained, a defendant seeking to decertify a class once certified "bears the initial burden of showing that the motion should be granted." *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016). Additionally, because a district court maintains an independent duty to assure that a class continues to be certifiable under Rule 23(a), the party seeking decertification "bear[s] the burden of showing that the district court mistakenly maintained class certification." *Id.* (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999)). "[A] defendant bears a more onerous burden in challenging certification where . . . the initial certification decision was carefully considered and made after certification-related discovery." *Id.* Lastly, the "law of the case" doctrine is also relevant; although it is not an absolute bar to modification of a certification order its policy principles apply. *Id.*

#### 2.  *Standard for Motion for Summary Judgment*

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary

7

judgment, a court must not weigh evidence or make credibility determinations." *Id.*
"Where the unresolved issues are primarily legal rather than factual, summary judgment
is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir.
2004). If "reasonable minds could differ as to the import of the evidence," summary
judgment should not be granted. *Anderson*, 477 U.S. at 251.

### B. Overarching Issues

There are three issues which Defendant repeatedly raises: whether a prior class-
action case serves as a res-judicata bar to the present action; whether Nebraska or
California law governs; and whether recent changes in California case law affect the
Court's jurisdiction. Werner argues these issues support decertifying the class, granting
summary judgment in its favor, and denying summary judgment for Plaintiffs. In the
interest of succinctness, the Court addresses these three overarching issues at the outset
rather than repeating its analysis for each of the motions.

#### 1. Issue and Claim Preclusion

Werner raises issue and claim preclusion based on a prior class-action lawsuit in
this Court, *Baouch vs. Werner Enterprises, Inc.*, 8:12cv408.

Res judicata incorporates the related concepts of issue preclusion and claim
preclusion. *Magee v. Hamline Univ.*, 775 F.3d 1057, 1059 (8th Cir. 2015). "Under claim
preclusion, 'a final judgment on the merits of an action precludes the parties . . . from
relitigating issues that were or could have been raised in that action.'" *Id.* (quoting
*Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010)). "To establish that a claim is
barred by claim preclusion, a party must show: '(1) the first suit resulted in a final judgment
on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the

same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'" *Id.* (quoting *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008)). "Regarding the 'same claims or causes of action' element of claim preclusion, we have stated that whether a second lawsuit is precluded turns on whether its claims arise out of the 'same nucleus of operative facts as the prior claim.'" *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998) (quoting *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994)). In essence, the test is "whether the wrong for which redress is sought is the same in both actions." *Id.*

Werner attempts to frame *Baouch* as broadly addressing its alleged failure to pay a minimum wage. Filing No. 471 at 18. But an examination of *Baouch* reveals the issue was far narrower than Werner claims. The *Baouch* plaintiffs were concerned with Werner's "per diem" program which they characterized as operating "to provide reimbursements to [Werner's] employees by compensating them for the reasonable approximate amounts incurred because the employee traveled over the road for [Werner's] business." Filing No. 467-10 at 7. The *Baouch* plaintiffs argued this system failed to adequately pay them a minimum wage under Nebraska and federal law, failed to pay them all wages they had earned under Nebraska law, unjustly enriched Werner, and breached both implied and express employment contracts to pay them for all wages worked. *Id.* at 11–14. Judge Smith Camp rendered a final judgment on the merits when she granted summary judgment in Werner's favor, finding the per diem payment system did not violate state or federal law. Filing No. 467-13.

By contrast, the present case is concerned with Werner's alleged failure to compensate for non-driving time, making improper pay deductions, and failing to provide

accurate wage statements. Although both cases deal generally with the concept of minimum wage, they are independent of each other and seek redress for different injuries arising from distinct conduct: one regarding per diem pay and the other for non-driving pay. In other words, the present case arises from a separate "nucleus of operative facts" upon which no final judgment has previously been rendered. Therefore, the claims are not precluded on res judicata grounds, and the Court will not decertify the class or grant summary judgment on this basis.

      *2.  Choice of Law*

      Werner argues that Plaintiffs all agreed to be subject solely to Nebraska law when they accepted employment with it. It points to the forms drivers sign during their orientation, including the acknowledgment form stating that the driver "will be a state of Nebraska-based employee" and "subject to Nebraska's workers' compensation jurisdiction and laws and Nebraska's labor and employment laws." Filing No. 142-15 at 2. Werner argues this is both a reason to decertify the California class and to grant it summary judgment on Plaintiffs' California claims.

      The Court concludes that the acknowledgment form and other orientation documents do not restrict drivers in the California class from asserting claims under California law. First, while the acknowledgment form states that drivers are subject to Nebraska labor and employment laws, it does not waive the protections of California law which may be in addition to those provided by Nebraska law. The acknowledgment form states, "The driver hereby waives jurisdiction of any state (other than the state of Nebraska) *for workers' compensation benefits* and protection." Filing No. 142-15 at 2 (emphasis added). However, the contract does not contain an explicit waiver of any other

area of law. Given the express waiver of California workers' compensation protections, the lack of a concomitant waiver for California labor and wage law protections is an indication the parties did not intend to waive California law in those areas. The Court will not read a broader waiver into the express language of the acknowledgment form.

Secondly, even if the acknowledgment form contained an express waiver of California labor and employment law, its enforceability would be questionable because California has an express public policy of protecting workers. *See, e.g.*, *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (invalidating Georgia choice-of-law provision in labor law case because "Georgia law directly conflicts with a fundamental California policy that seeks to protect its workers").

Thus, the acknowledgment form does not require decertifying the California sub-class nor does it provide a basis for granting Werner summary judgment on Plaintiffs' California claims.

### 3. Recent California Case Law

Werner argues a recent California case, *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021), alters the Court's previous conclusion that it has jurisdiction over the California class members' claims.

In certifying the California subclass and denying Werner's earlier motion for partial summary judgment, the Court concluded that the class of "California residents" had viable class claims for violation of California labor laws. *See* Filing No. 186 at 22 (Magistrate Judge Nelson's order certifying the California subclass, adopted at Filing No. 190); Filing No. 366 at 15–16 (order on summary judgment). It relied in part on cases such as *Ayala v. U.S Xpress Enterprises, Inc.*, 2017 WL 3328087, at *4 (C.D. Cal. July 27, 2017), in

which the court applied California employment law on a class-wide basis to a class of California residents.

In *Ward*, the Ninth Circuit was faced with whether California wage law could be applied to a group of pilot and flight attendants with varying ties to California. *Ward*, 986 F.3d at 1238. It certified the question to the Supreme Court of California which concluded that the California statute governing the sufficiency of wage statements applied to employees whose "principal place of work" was in California. *Ward v. United Airlines, Inc.*, 466 P.3d 309, 320 (Cal. 2020). For transportation workers who worked in many states like the airline employees in *Ward*, the court stated the test was "if the worker performs some work here and is based in California, meaning that California serves as the physical location where the worker presents himself or herself to begin work." *Id.* at 321. The Court stated that its pronouncement was "not a new concept in labor law" but a clarification in the context of interstate workers like the pilots and flight attendants. *Id.*

Werner argues that *Ward* now requires the Court to decertify the California class and conduct an individualized inquiry into whether each member has adequate ties to California such as would permit the application of California law. Filing No. 469 at 21–25. The Court disagrees. Magistrate Judge Nelson's order certifying the class addressed this concern by limiting the California class to "residents" rather than the broader class Plaintiffs initially proposed of "any driver who picked up and/or dropped off a load in California." Filing No. 186 at 22. Although perhaps made more express by the California Supreme Court's opinion in *Ward*, the test, as that court noted, has always been the same. Nothing about intervening California case law requires the Court to decertify the California subclass or deny the California drivers' claims.

12

## C. Motion to Decertify the Class

Before turning to the merits of the motion to decertify, the Court must address two preliminary matters relating to the evidence submitted in relation to that motion.  First, Werner moves to strike the declaration of Dr. Robert Speakman which Plaintiffs submitted in opposition to the motion to decertify.  *See* Filing No. 513 (motion to strike); Filing No. 495-2 (Speakman declaration).  Second, Plaintiffs move to strike the affidavit to of Sarah L. McGill and related exhibits, Filing No. 510-1 through Filing No. 510-10, which Werner submitted in conjunction with its reply brief in support of motion to decertify. Filing No. 529.

### 1. *Motion to Strike Declaration of Speakman*

Werner seeks to strike Dr. Speakman's declaration which Plaintiff submitted in opposition to the motion to decertify.  Filing No. 513.  Dr. Speakman's declaration purports to refute the notion that the California class is nonviable because assessing whether California law applies to a given driver requires an individualized assessment.  Filing No. 495-2 at 3.  Dr. Speakman claims that whether a driver is a member of the California class can be easily determined by reviewing the home time data indicating those drivers who began their work in California, thereby ensuring compliance with *Ward v. United Airlines, Inc.*, 466 P.3d 309, 320 (Cal. 2020).  Filing No. 495-2 at 3.  Werner claims Speakman was not timely disclosed as a fact witness under Federal Rule of Civil Procedure 26(a)(1)(A)(i) and that his opinions lack foundation and are not relevant.  Filing No. 514 at 3–7.

The Court declines to strike Dr. Speakman's declaration.  Dr. Speakman has presented statements as an expert witness rather than a fact witness, so he is not subject

to the Rule 26 initial disclosure deadline Werner references. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). The scheduling order in this case set a later deadline for expert disclosures which had not yet passed at the time of the summary judgment briefing. *See* Filing No. 417 at 2 (operative amended trial setting order, setting April 30, 2024, as the deadline for filing dispositive motions relating to liability and October 11, 2024, as the deadline for expert witness disclosures). Therefore, the disclosure of Dr. Speakman's declaration was not untimely.

Dr. Speakman's declaration is also supported by adequate foundation. He explains his extensive background as an economic consultant and damages expert in trucking cases and his review of evidence in this case including Steven Tisinger's deposition; Werner's data relating to the California class list, driver logs, home time data, and payroll data; and various filings in this case. Filing No. 495-2 at 1–2. Lastly, Dr. Speakman's testimony is relevant in that it substantiates Plaintiffs' claims regarding the applicability of California law to the California class. This ruling does not prevent Werner from re-raising its objections to Dr. Speakman's qualifications in a motion in limine, should it believe such an action is warranted.

*2. Motion to Strike Index or, in the Alternative, to Surreply*

Plaintiffs move to strike the declaration and supporting exhibits of Sarah McGill which Werner submitted in reply in support of its motion to decertify. Filing No. 529. Plaintiffs argue the McGill affidavit and supporting exhibits violate this Court's local rule prohibiting a reply brief from raising new grounds for relief. NECivR 7.1(c)(3). The McGill affidavit focuses on three supposed members of the California class who spent little or no time in California to support Werner's claim that that the California class should be

14

decertified. Filing No. 510-1 at 2–4. Plaintiffs' proposed surreply argues McGill's analysis is flawed because she included periods of time when Plaintiffs agree the drivers were not California residents and because she counts individual log entries rather than actual time worked, resulting in an underestimation of the time the drivers spent working in California. Filing No. 529-3 at 2–6. The Court declines to strike the McGill affidavit and documents for their violation of the local rules. It will instead allow Plaintiffs to surreply to refute the statements in the McGill affidavit. Accordingly, Plaintiffs' brief in surreply, Filing No. 529-3, is deemed filed, and the Court will consider it in conjunction with the other briefing relating to the motion to decertify.

3. *Merits of Decertification Motion*

In its prior order certifying the class, the Court engaged in an extensive analysis of the prerequisites of numerosity, commonality, typicality, and adequacy of representatives. *See* Filing No. 186 at 12–17; Fed. R. Civ. P. 23(a). It also considered the additional requirements of Rule 23(b)(2) and (b)(3) as relating to Plaintiffs' claims for declaratory relief and damages, respectively. *See* Filing No. 186 at 17–24; Fed. R. Civ. P. 23(b). The Court need not restate this law in detail in this Order but has applied the same principles in examining the motion to decertify the class. *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016) (reexamining the Rule 23(a) and Rule 23(b) factors in ruling on a motion to decertify).

The class having been certified, Rule 23(c)(1)(C) nevertheless provides, "An order that grants or denies class certification may be altered or amended before final judgment." Werner argues the Court should decertify both the Nebraska and California classes. It argues an individualized inquiry is required to determine how each driver was paid; each

15

driver's pay deduction and wage statement claim requires an individualized examination; the named Plaintiffs are inadequate representatives; the case is not manageable as a class action, and the Court can't issue a class-wide injunction.

Werner misframes the issues in this case. While it may be true that each driver received different amounts of pay in a specific pay period, Plaintiffs' claims are concerned not with any given driver's wages in a single instance but with the overarching system of compensation. As analyzed at length in Magistrate Judge Nelson's order certifying the class and adopted in full by the Court, Werner's practice and policy of compensating its drivers on a mileage or trip basis is common to all the plaintiff drivers. Filing No. 186 at 14–15. The evidence now available at this later stage of the case does not alter the conclusion that overarching, class-wide issues predominate; all drivers are subject to the same policies undergirding Werner's compensation system. Because the individual analysis Werner claims is not required, the Court sees no issues with the feasibility of maintaining this case as a class action.

The Court also concludes the class representatives remain adequate. Werner argues the class representatives are inadequate because they were members of the *Baouch* class, but this argument is premised on res judicata which the Court has already rejected. To the extent Werner argues changes in California law during the pendency of this case render class representation inadequate, such changes do not appear to affect Plaintiffs' claims regarding the legality of Werner's compensation system and are thus not a reason to decertify the class.

Lastly, as to Werner's claim the Court cannot issue a class-wide injunction, Plaintiffs have clarified that they are seeking only declaratory relief. Filing No. 496 at 64.

Accordingly, reexamining the classes under Rule 23(c)(1)(C) as it is required to do, the Court concludes they should remain as previously certified.

**D. Cross-Motions for Summary Judgment**

The parties cross-move for summary judgment on liability[4] for the following issues: compensability of non-driving time under California law; paycheck deductions under California law; contents of pay statements under California law; derivative California claims; compensability of non-driving time under the Nebraska Wage and Hour Act; and paycheck deductions under the Nebraska Wage Payment and Collection Act. The Court addresses these issues in turn.

*1. Compensability of Non-Driving Time Under California Law*

Werner moves for summary judgment on Plaintiffs' claim that it failed to compensate them for non-driving time under California law. Filing No. 470. It argues new California cases have confirmed its piece-rate pay system was permissible under California law and drivers' sleeper berth time is not compensable. Plaintiffs cross-move, arguing Werner failed to pay them minimum wage because it failed to pay them for compensable non-driving time such as sleeper berth time.

First, Werner asks the Court to find its pay system lawful because it says California approves of piece-rate systems like the one it employs. In its earlier order on Werner's motion for partial summary judgment, the Court already determined that while California law does not prohibit piece-rate pay systems, *see, e.g.*, *Oman v. Delta Air Lines, Inc.*, 466 P.3d 325, 337 (Cal. 2020), questions of material fact precluded a determination that the pay system at issue in this case was lawful. Filing No. 366 at 15 (prior summary judgment

---

[4] Discovery and dispositive motions on damages have been bifurcated from the liability issues in the present motions.

order stating, "The cases stand for the unremarkable general proposition that a pay scheme based on a piece rate or unit formula can be legal under California law."). Werner provides no basis for the Court to reconsider its prior ruling. As the Court noted then "there are disputes as to the understanding of the parties in this case" which preclude summary judgment. This remains true on the present record as well; Werner still characterizes its pay system as trip-based while Plaintiffs argue it was based on mileage, and there is evidence from which a reasonable factfinder could draw either conclusion. Summary judgment is inappropriate due to this dispute.

Summary judgment is also unwarranted because there is a dispute of fact as to whether time drivers spent in the sleeper berth was compensable or not. Werner argues that drivers logged sleeper berth time as "off duty" and they were therefore not entitled to pay for it. Werner's argument is based on the characterization of sleeper-berth time under the DOT's Federal Motor Carrier Safety Association ("FMCSA") regulations. *See* 49 C.F.R §§ 395.2, 395.8. But the definition of work for DOT purpose it not necessarily the same as work defined by wage and hour laws. *See, e.g.*, *Montoya v. CRST Expedited, Inc.*, 88 F.4th 309, 318 (1st Cir. 2023) (rejecting FMCSA regulations in assessing the compensability of sleeper-berth time because "DOT's road safety regulations are . . . of little help in determining what constitutes compensable working time under the FLSA"). Rather, the correct test under California law is whether the employer "controlled" the employee during break or rest periods. *See Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1077 (9th Cir. 2020); 8 Cal. Code Regs. § 11090(2)(G) ("'Hours worked' means the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so.").

18

There are disputed facts about the extent to which Werner exercised control over drivers while they were resting in the sleeper berth. Plaintiffs point to evidence that Werner required drivers to keep close tabs on load contents, arguing this restricted their freedom to the point they were essentially on-call even when resting or on break. By contrast, Werner argues this degree of monitoring applied only in limited circumstances (such as to high-value loads) and did not restrict drivers to the extent Plaintiffs claim because they were free to sleep, eat, watch television, and make personal phone calls. The factfinder will need to assess this conflicting evidence to determine whether Werner controlled drivers during their sleeper berth time. Accordingly, summary judgment to either party is inappropriate regarding the compensability of non-driving time under California law.

2. *Paycheck Deductions Under California Law*

Werner moves for summary judgment on Plaintiffs' claim of improper pay deductions relating both to the personal bond and the pay-advance fee policy. It argues there is no private right of action under the relevant statute or, alternatively, Plaintiffs authorized the deductions. Plaintiffs cross-move for summary judgment as to the advance fee but do not move as to the personal bond. They argue the deductions are prohibited by law or, alternatively, the drivers did not expressly consent to them in writing.

California law makes it "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Labor Code § 221. However, an employer is permitted to withhold wages "when a deduction is expressly authorized in writing by the employee to cover insurance

premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage." Cal. Labor Code § 224.

Werner first argues there is no private right of action for an employee to sue for a violation of § 221 or § 224. It cites to unpublished California trial court decisions reasoning that the lack of express language in §§ 221 and 224 mean the statute provides a remedy of only criminal and agency enforcement. *See Robles v. Schneider Nat'l Carriers, Inc.*, No. EDCV162482JGBKKX, 2017 WL 8231051, at *9 (C.D. Cal. Feb. 10, 2017). But other courts have disagreed, noting that Cal. Labor Code § 218 states, "Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due them under this article." *See Wentzo v. Signavio, Inc.*, No. CV 21-09968 TJH (JCX), 2022 WL 16858834, at *8 (C.D. Cal. Sept. 26, 2022) ("Cal. Lab. Code § 221 must provide a way – a private right of action – for employees to recover those wages."). While there does appear to be a split of authority among the California trial courts on this issue, the Court agrees with the reasoning of those finding a private right of action exists, especially when reading the statutory scheme as a whole. Therefore, the lack of a private right of action is not a reason to grant Werner summary judgment on this issue.

Plaintiffs argue the paycheck advance fee is a prohibited "rebate or deduction" from wages under § 224 and therefore unlawful regardless of the drivers' consent. Filing No. 477 at 10–11. They argue the advance fee is akin to an employer requiring workers to cash their checks on an employer-leased ATM which charges a transaction fee and retains change above whole dollar amounts due to an inability to dispense coins, a situation it says the California Division of Labor Standards Enforcement disapproved of

20

in an advisory letter.  *See* Filing No. 477 at 11 (citing Cal. Dep't Indus. Relations ("DIR"), DLSE Op. Ltr. No. 2002.12.12, at 1 (Dec. 12, 2002)).  Apart from not being binding judicial case law, the analogy fails because the drivers here are not forced to take advantage of the cash-advance program unlike workers needing to cash their pay checks nor is a portion of the paycheck withheld in addition to the transaction fee like the coins not distributed to the ATM-using workers.  Rather, this is precisely the type of voluntary scenario which the statute contemplates workers being able to consent to, should they so choose.

The parties disagree over whether authorization exists in this case.  As to authorization of the cash-advance fee, Werner argues the drivers consented in writing when they sent a Macro 39 message from their vehicle to request the advance and because the Driver Handbook, which drivers are required to acknowledge they have received in writing, sets forth the cash-advance fee.  But neither sending the Macro 39 message nor signing an acknowledgement of receipt of the Driver Handbook means the deduction is "expressly authorized in writing by the employee."  First, the Macro 39 message does not reference the $4 fee.  Werner argues drivers were aware they would incur the fee "through other communications with Werner personnel, such as over the telephone or through a direct Qualcomm message" but this does not mean the drivers consented to it in writing; only that they were informed of it, possibly either verbally or in writing.  Filing No. 290 at 5.  The Driver Handbook notes that Werner charges a $4 fee for cash advances.  *See, e.g.,* Filing No. 479-1 at 14.  However, the handbook is clear that it "is not a contract."  *See, e.g., id.* at 29.  Drivers sign a "receipt" form indicating they have received, read, and understand the handbook.  *See, e.g.,* Filing No. 466-6 at 1.

However, neither the handbook nor the receipt form states the driver *consents* to the $4 fee; only that the driver has reviewed the contents of the handbook.  Thus, Werner's evidence shows only that drivers were potentially advised of Werner's intention to impose the $4 fee; there is no evidence that drivers *authorized* the $4 fee in writing as the statute requires.

As to the personal bond, only Werner moves for summary judgment, arguing Plaintiffs authorized the bond when they signed an Employment Conditions form. Plaintiffs argue the bond policy is per se unlawful, citing *Bellflower Unified School District v. Meeks*, No. B259780, 2015 WL 5317602, at *1 (Cal. Ct. App. Sept. 14, 2015), for the proposition that any bond authorization must be specific and explicit.  *See* Filing No. 496 at 59–60.  In *Bellflower*, the California Court of Appeal found in favor of a school employee who had $1,200 deducted from his wages for the cost of rekeying locks after he lost his keys.  The court determined that the employee had authorized a $25.00 deduction for losing a key but that the school district had only vaguely warned he "may" be charged the cost of re-keying with no monetary value mentioned.  *Bellflower United Sch. Dist.*, 2015 WL at *1.  It concluded the lack of repayment terms meant the agreement to pay for re-keying did not constitute an express authorization for the eventual $1,200 deduction.  *Id.*

Here, by contrast, the personal bond expressly stated that it was only up to $400 in $10 increments, and Plaintiffs present no evidence Werner exceeded that agreed-upon amount as to any driver.  Additionally, unlike the fee for paycheck advances, the undisputed evidence shows drivers expressly and explicitly authorized the bond by signing the Employment Conditions form.  Accordingly, there is no dispute the drivers voluntarily authorized the bond withdrawals.

22

For these reasons, Plaintiffs are entitled to summary judgment as to the paycheck-advance fee, and Werner is entitled to summary judgment as to the personal bond.

3.  *Pay Statements Under California Law*

Plaintiffs claim the pay statements Werner issued to them violated California law. Werner moves for summary judgment, arguing California law does not apply because the California class is improper, an argument the Court already rejected above.  Alternatively, Werner claims there is no class-wide evidence of an actual injury stemming from the pay-statement deficiencies because in their depositions, the named plaintiffs testified they never had questions about their pay stubs or did not even review them.  *See* Filing No. 471 at 14–15 (citing Filing No. 142-12 at 14–15; Filing No. 142-11 at 11, 20; Filing No. 142-8 at 17–19).  Other drivers testified they were able to clear up discrepancies on their pay stubs by contacting Werner's payroll department.  *See* Filing No. 142-10 at 14. Plaintiffs cross-move for summary judgment, arguing the pay stubs were misleading, consistently incorrect, and did not allow the drivers to determine the accuracy of their pay.

California law requires employers to provide the following written information in conjunction with paying wages:

> (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee

Cal. Labor Code. § 226(a).  The statute also provides a definition of when an employer is

injured by a violation of § 226(a);

> An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:
>
> (i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).
>
> (ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period.  Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).
>
> (iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.
>
> (iv) The name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number.

Cal. Labor Code § 226(e)(2)(B).

Werner does not dispute that its paystubs failed to comply with § 226(a).  They did

not contain accurate information as to the dates and corresponding wages earned solely

in that pay period because of Werner's practice of paying drivers only after loads were

completed and reported.  However, there is conflicting evidence regarding injury.  Werner

presented some testimony that drivers were able to glean the necessary information from

their pay stubs, including not having any questions about them and thinking they were

correctly paid.  On the other hand, Werner takes too narrow of a view of injury in light of

24

the statutory definition. Just because a driver testified that he or she did not review the wage statements does not mean there was not an injury; the statute provides that the standard is whether the driver could have "promptly and easily determine[d]" the pertinent information had they chosen to look. Likewise, employees being able to clarify discrepancies by contacting Werner's payroll department does not indicate a lack of injury; the statute requires that the information be readily ascertainable "from the wage statement alone," not by consulting the employer. Therefore, it will be for the factfinder to determine whether the information provided in the pay statements and the drivers' understanding of the same constituted an "injury" under the statutory definition. The parties' cross-motions for summary judgment are denied.

### 4. Derivative California Claims

Plaintiffs bring a claim under California's Private Attorneys General Act, Cal. Labor Code § 2698 et seq., which permits employees to initiate lawsuits for civil penalties against employers who violated the labor code in lieu of an action by the state Labor and Workforce Development Agency. Cal. Labor Code § 2699. "California law characterizes PAGA as creating a 'type of qui tam action . . ..'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 644 (2022) (quoting *Iskanian v. CLS Transp. Los Angeles*, LLC, 327 P.3d 129, 148 (2014)).

The parties cross-move for summary judgment. They agree Plaintiffs' PAGA claim is derivative of the other claims asserting a violation of the California Labor Code. Because the Court concludes issues of fact preclude granting summary judgment on those issues, it also cannot grant summary judgment on the derivative PAGA claim.

5. *NWHA: Compensability of Non-Driving Time*

The parties cross-move for summary judgment on Plaintiffs' claim that they were unfairly paid less than the minimum age under the Nebraska Wage and Hour Act, Neb. Rev. Stat. § 48-1201 et seq.  Their argument is premised on the same facts as those underlying their California minimum wage claim, such as uncompensated sleeper-berth and other non-driving time.   Defendants argue Nebraska would follow the so-called *Klinghoffer* rule which holds employers meet the minimum wage requirement as long as the driver's total weekly pay equals or exceeds their total weekly hours multiplied by the applicable minimum wage. *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960).  Alternatively, Werner argues a driver-by-driver, workweek-by-workweek analysis would be required to determine if Werner complied with the minimum wage, meaning it is inappropriate for class-wide resolution.   Plaintiffs counter that Nebraska courts do not follow the *Klinghoffer* rule and that it is premature to require evidence of damages.

This Court has repeatedly declined to apply the *Klinghoffer* rule to the NWHA and has instead calculated minimum wage on an hour-by-hour basis.  *See, e.g.*, Filing No. 366 (Court's prior summary judgment order noting that the NWHA "requires compensation at no less than the minimum wage for all hours worked, calculated on an hour-by-hour basis"); *Petrone v. Werner Enterprises, Inc.*, 121 F. Supp. 3d 860, 872 (D. Neb. 2015) ("[C]alculations under the Nebraska Wage and Hour act will be based on an hour-by-hour basis, whereas the *Klinghoffer* rule shall be applied to the FLSA violations."); *Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr.*, 428 F. Supp. 3d 171, 183 (D. Neb. 2019) ("*Petrone* answered in no uncertain terms that calculations under the Nebraska Wage and Hour Act

will be based on an hour-by-hour basis, whereas the *Klinghoffer* rule shall be applied to the FLSA violations." (internal quotation marks omitted)).  The Court sees no reason to depart from these well-reasoned decisions and agrees with its prior determination that the NWHA requires that minimum wage be paid for each hour worked.

The NWHA requires an employer to pay their employees a minimum wage as set by statute.  Neb. Rev. Stat. § 48-1203.  Plaintiffs argue that Werner failed to pay them for any time they were logged as "off duty" per the FMCSA regulations, such as when resting in the sleeper berth over eight hours, short rest breaks of more than 20 minutes, time waiting to load/unload, and team drivers paid a reduced mileage rate.  Filing No. 475 at 16–23.

The Nebraska courts have not addressed the definition of "work" or "on duty" in the context of the NWHA.  However, this Court has determined that the NWHA was intended to have substantially the same coverage as the FLSA.  *See, e.g.*, *Petrone v. Werner Enters., Inc.*, No. 8:12CV307, 2013 WL 3479280, at *5 (D. Neb. July 10, 2013) ("The Court finds that the Nebraska statute should provide coverage co-extensive with the FLSA").  The Court agrees with this analysis and determines the same standards to assess whether a driver was on duty in the sleeper berth and at other times under the FLSA would apply under the NWHA.

Under the FLSA, employers must compensate employees with at least a specified minimum wage for every hour worked.  29 U.S.C. § 206(a).  "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping." 29 C.F.R. § 785.20.  Where an employee is required to report at a place of work at a specific time, time spent waiting to begin is compensable.  29 C.F.R. § 790.6.

27

Here, disputes of material fact preclude granting summary judgment in either party's favor on the issue of the compensability of non-driving time under the NWHA. As explained above in relation to California minimum-wage law, there is conflicting evidence regarding what duties drivers were required to engage in while not driving and the extent to which they were required to monitor their loads and remain "on call" when supposedly off-duty. The factfinder will need to determine whether the drivers were "working" when resting in the sleeper berth and at the other times Plaintiffs assert. The Court also notes that to the extent Defendants take issue with Plaintiffs' inability to provide hard numbers as to how many hours Werner allegedly failed to compensate, such an issue is premature because the Court has bifurcated dispositive motions on the issues of liability and damages. Accordingly, both parties' motions for summary judgment on the NWHA claim are denied.

### 6.   NWPCA: Paycheck Deductions

Lastly, Plaintiffs claim Werner violated the Nebraska Wage Payment and Collection Act when it failed to compensate them for the wages the parties agreed to. Werner moves for summary judgment, arguing it never agreed to the non-driving wages because its system of load pay based on estimated miles was intended to cover all work activities, driving and non-driving, and Plaintiffs authorized any deductions it made. Filing No. 471 at 42. Plaintiffs argue that Werner agreed to pay drivers only a mileage rate then violated this agreement by borrowing from that rate to compensate for otherwise non-driving time. Filing No. 477 at 11–13. Plaintiffs also argue the cash advance fee and personal bond violated the NPWCA because the drivers did not authorize them as required by statute. Id. at 9–11.

28

The Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq., protects workers' right to receive the amount of compensation promised to them under a contract. "An employer may deduct, withhold, or divert a portion of an employee's wages only when the employer is required to or may do so by state or federal law or by order of a court of competent jurisdiction or the employer has a written agreement with the employee to deduct, withhold, or divert." Neb. Rev. Stat. § 48-1230.

Here, material disputes of fact preclude granting summary judgment on the issue of non-driving time compensation. As discussed above, there is conflicting evidence regarding whether Werner agreed to pay drivers a certain rate by the mile and violated this agreement by then borrowing from this mileage pay to compensate for non-driving work. Plaintiffs present evidence of an agreement to be paid by the miles, while Werner presents evidence of trip-based pay that supposedly encompassed non-driving activities. The factfinder will need to resolve this dispute.

As to the agreements regarding the advance fee and personal bond, as explained above the undisputed evidence shows the drivers never agreed to the advance fee, entitling Plaintiffs to summary judgment on this issue. By contrast, the evidence shows the drivers authorized the bond by signing the Employment Conditions form, thus entitling Werner to summary judgment on this issue.

Accordingly, the Court grants summary judgment to Plaintiffs on their NWPCA claim for unlawful deduction as to the $4 cash advance fee; grants summary judgment to Werner on Plaintiffs' NWPCA claim for unlawful deduction as to the personal bond; and denies summary judgment to both parties on Plaintiffs' NPWCA claim for unpaid compensation.

III.    CONCLUSION

For the foregoing reasons, the Court concludes the classes should remain as previously certified.  It grants in part and denies in part the parties' various summary judgment motions as stated herein.

IT IS ORDERED:

1.  Defendants' motion to decertify the class (Filing No. 468 in 8:14cv319; Filing No. 373 in 8:15cv287; Filing No. 331 in 8:17cv145) is denied.

2.  Defendants' motion to strike Dr. Speakman's declaration, (Filing No. 513 in 8:14cv319; Filing No. 412 in 8:15cv287; Filing No. 370 in 8:17cv145) is denied without prejudice to reassertion in a later motion.

3.  Plaintiffs' motion to strike or file surreply (Filing No. 529 in 8:14cv319) is denied as to their request to strike the affidavit of Sarah McGill, but is granted as to their request for leave to surreply.  Accordingly, Plaintiffs' proposed brief in surreply, Filing No. 529-3 in 8:14cv319, is deemed filed.

4.  Defendants' motion for summary judgment on liability (Filing No. 470 in 8:14cv319; Filing No. 375 in 8:15cv287; Filing No. 333 in 8:17cv145) is granted in part and denied in part as follows: denied as to the compensability of non-driving time under California law, denied as to the legality of the paycheck advance fee under California law, granted as to the legality of the personal bond deduction under California law, denied as to whether the pay statements complied with California law, denied as to Plaintiffs' derivative claims under California's Private Attorneys General Act, denied as to the compensability of non-driving time under Nebraska's Wage and Hour Act, granted as to Plaintiffs' claim under the Nebraska Wage

Payment and Collection Act as to the personal bond, denied as to Plaintiffs' NPWCA claims for the cash advance fee, and denied as to Plaintiffs' NWPCA claim for unpaid compensation.

5.  Plaintiffs' motion for partial summary judgment on liability for failure to pay minimum wages, Filing No. 473 in 8:14cv319, is denied as to the compensability of non-driving time under California law, denied as to their derivative claims under California's Private Attorneys General Act, and denied as to the compensability of non-driving time under Nebraska's Wage and Hour Act.

6.  Plaintiffs' motion for partial summary judgment regarding unlawful deductions and itemized wage statements, Filing No. 476 in 8:14cv319, is granted in part and denied in part as follows: granted as to the illegality of the paycheck advance fee, denied as to the legality of the personal bond deduction, denied as to whether the pay statements complied with California law, granted as to their claim under the Nebraska Wage Payment and Collection Act as to the personal bond, and denied as to their NWPCA claim for unpaid compensation.


Dated this 28th day of March, 2025.

                                        BY THE COURT:

                                        s/ Joseph F. Bataillon
                                        Senior United States District Judge