IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EZEQUIEL OLIVARES ABARCA, individually and on behalf of all those similarly situated; ALFREDO ALESNAJR., individually and on behalf of all those similarly situated; DAVID CAGLE, individually and on behalf of all those similarly situated; STEPHEN L. DAVIS, individually and on behalf of all those similarly situated; FRANK EADS, individually and on behalf of all those similarly situated; and KENNETH J. SURMAN, individually and on behalf of all those similarly situated, | **8:14CV319**<br>**(Lead Case)**<br><br>**MEMORANDUM AND ORDER** |
| Plaintiffs, | |
| vs. | |
| WERNER ENTERPRISES, INC., DOES 1-100, inclusive; and DRIVERS MANAGEMENT, LLC, | |
| Defendants. | |
| _____ | |
| | |
| WILLIAM SMITH, on behalf of himself and all others similarly situated, and on behalf of the general public, | **8:15CV287**<br>**(Member Case)** |
| Plaintiffs, | |
| v. | |
| WERNER ENTERPRISES, INC., et al., | |
| Defendants. | |
| _____ | |
| | |
| BRIAN VESTER and JOEL MORALES, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |

1

| | |
|---|---|
| WERNER ENTERPRISES, INC., et al., <br><br> Defendants. | **8:17CV145** <br> **(Member Case)** |

This is a class-action lawsuit in which truck drivers employed by the defendant trucking company allege various violations of California and Nebraska wage and hour laws relating to the businesses' compensation practices. The case comes before the Court on Defendant's motion for summary judgment on damages, Filing No. 602[1], Plaintiff's motion for summary judgment on damages, Filing No. 622, the parties' respective *Daubert* motions, Filing No. 608; Filing No. 611; Filing No. 615; Filing No. 619; Filing No. 626, Defendant's motion to strike, Filing No. 631, and Plaintiffs' objection to evidence. Filing No. 659.

## I.    BACKGROUND

The Court bifurcated dispositive motions in this case. Accordingly, on March 28, 2025, the Court ruled on the parties' respective motions for summary judgment on liability issues. Filing No. 556. The matter is set for a jury trial commencing October 14, 2025, and the parties have now filed their respective motions for summary judgment on the question of damages only.[2] Because many of their summary judgment arguments rely on the testimony of various expert witnesses, the Court first addresses the parties' *Daubert* motions to exclude witness testimony.

---

[1] All docket citations are to the lead case.

[2] Addition relevant factual background is contained in the Court's prior summary judgment order, Filing No. 556.

## II.    STANDARDS OF REVIEW

### B. Standard for Motion to Exclude Witnesses

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that:  (1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy.  *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of expert testimony bears the burden of providing admissibility by a preponderance of the evidence.  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.  Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck*, 338 F.3d at 860.

To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence "that the methodology underlying [the expert's] conclusions is scientifically valid."  *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citations omitted).  In making the reliability determination, the court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and

3

standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). Additional factors to consider include: "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008)).

"This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject" these factors as the particular case demands. *Russell*, 702 F.3d at 456 (citation omitted). When making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012). However, "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[C]ases are legion" in the Eighth Circuit that "call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 590). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the

4

admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 976 (8th Cir. 1995)).

District courts are "not to weigh or assess the correctness of competing expert opinions." *Id.* The jury, not the trial court, should be the one to "decide among the conflicting views of different experts." *Kumho Tire Co.*, 526 U.S. at 153.

### A. Standard for Summary Judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. *Fed. R. Civ. P. 56(c)(1)(A)* & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting

evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

### III.    MOTIONS TO EXCLUDE WITNESSES

Werner moves to exclude Plaintiffs' experts Steven Viscelli and Robert Speakman. Plaintiffs move to exclude Werner's experts Thomas Hubbard, Derek Leathers, Robert Penner, and Benjamin Pile. Applying the above standards regarding expert testimony under Federal Rule of Civil Procedure 702, the Court analyzes these witnesses in turn.

### A. Viscelli

Plaintiffs' expert witness Dr. Steve Viscelli is an economic sociologist with twenty years of experience researching the trucking industry and its labor and employment practices. Filing No. 610-2 at 4. He holds a Ph.D. in qualitative and quantitative methods

6

from Indiana University and completed his dissertation on "work and employment relations in the long-haul trucking industry." *Id.* at 5. He currently serves as an Associate Professor of Practice in the School of Arts and Sciences and a Faculty Fellow at the Kleinman Center for Energy Policy at the University of Pennsylvania. *Id.* In his work at the Kleinman Center, he also serves as an expert on the trucking industry and energy efficiency. *Id.* From 2023 to 2024 he served on the Federal Motor Carrier Safety Administration's Truck Leading Task Force which made recommendations on best practices for truck leasing programs to Congress and the Secretaries of Labor and Transportation. *Id.*

For his work in this case, Dr. Viscelli reviewed numerous pleadings including the parties' liability summary judgment motions; depositions of the plaintiffs, designees, drivers, and managers; numerous discovery documents including copies of the Drivers Handbook, inspection guide, training documents, pre-hire agreements, high-value load procedures, and preventing theft information; and dozens of Qualcomm messages. *Id.* at 29–49.

Dr. Viscelli opined that Werner's "forced dispatch" system requires drivers to be ready to work at any time when they have available hours and makes them continuously responsible to respond to Werner's calls and assignments. *Id.* at 6–10. Even when not working, Dr. Viscelli opined that drivers cannot meaningfully use the time for their own interests because they have security responsibilities for their workloads or otherwise must remain near their trucks. *Id.* at 17–27.

Werner moves to exclude Dr. Viscelli's testimony, arguing his methodology of reviewing documents and pleadings is inherently unscientific, rendering his opinions

unreliable and "idiosyncratic;" and his opinions are irrelevant because he does not tie his opinions to compensability under Nebraska or California law.

The Court does not find a basis to exclude Dr. Viscelli's testimony.  Under Rule 702, Dr. Viscelli's testimony is useful and relevant to the factfinder by providing a basis by which the jury can assess when drivers are performing work for which they should be compensated when applying the relevant state law.  That Dr. Viscelli himself does not opine on the compensability of certain time does not render his opinion inadmissible; indeed, as a sociologist rather than a lawyer, it would be potentially objectionable if he were to provide a legal opinion on compensability.  While Werner takes issue with the supposedly unscientific basis for Dr. Viscelli's opinion, he adequately explained that his analysis was grounded in his academic approach, supported by numerous pieces of evidence and testimony, supported by citations to peer-reviewed literature, and therefore trustworthy in an evidentiary sense.  While Werner would prefer Dr. Viscelli have more "hard" numbers to support his approach, sociology is an inherently more qualitative than quantitative field, and the line of *Daubert*-related cases governing experts in fields like medicine or biology are inapposite.  Werner's motion to exclude Dr. Viscelli's testimony is denied.

### B. Speakman

Plaintiffs' proposed expert witness, Robert Speakman, is the Managing Director at Secretariat, an economics consulting firm in the fields of law and economics, public policy, and business strategy.  Filing No. 612-2 at 3.  He holds a bachelor's degree in economics from Brigham Young University and a Ph.D. in economics from Texas A&M University.  *Id.* His fields of emphasis are labor economics and econometrics, the application of statistical

techniques to economic research. *Id.* Dr. Speakman has served as an expert and consultant in wage and hour cases including those in the trucking industry. *Id.*

Dr. Speakman reviewed numerous pleadings, trip log information, employee handbooks, discovery documents, data files including hours of service logs applicable to nearly 100,000 drivers over a thirteen-year period, pay data, trip data, GPS data, home time data, and employment records in formulating his opinion in this case. *Id.* at 89–92. Using this information, Dr. Speakman calculated what he believed to be appropriate damages for minimum wage violations, reduced mile rate, paycheck advance fees, layovers, waiting time penalties, wage statement penalties, and PAGA civil penalties. *Id.* at 4–8.

Werner argues the Court should exclude Dr. Speakman's opinions because his methodologies ignore relevant Qualcomm messaging data, make unsupported assumptions regarding what time is compensable, and employ an unsupported methodology for determining what constitutes a trip.

Dr. Speakman's failure to rely on the Qualcomm messaging data does not render his opinion unreliable. Werner is free to utilize the Qualcomm data to impeach Dr. Speakman's testimony if it believes it provides a different basis for damages (as indeed its expert Dr. Hubbard opines). But the mere fact Dr. Speakman relied on trip records data rather than the Qualcomm messages does not render his opinion inadmissible. "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Crabar/GBF, Inc. v. Wright*, 142 F.4th 576, 587–88 (8th Cir. 2025) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012)).

Rather, Dr. Speakman explained the thousands of documents and data points he relied upon and the mathematical techniques he employed in crafting his damages model, thereby establishing an adequate factual basis for his expert opinion.

If the jury determines that Werner failed to maintain adequate time-keeping records as Plaintiffs contend then the jury will be permitted to award compensation on the most accurate basis possible. *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). Thus, while there may be room to argue over the proper method of calculating damages, the dispute does not render Dr. Speakman's calculation inadmissible. Rather, Werner can refute the calculation at trial with its own experts and in cross examination of Dr. Speakman.

### C. Hubbard

Defendant's expert, Thomas N. Hubbard, is the Elinor and H. Wendell Hobbs Professor of Management at the Kellogg School of Management at Northwestern University and a Senior Consultant at Charles River Associates. Filing No. 613-2 at 7–8. He obtained his A.B. in economics from Princeton University in 1989 and his Ph.D. in economics from Stanford University in 1996. *Id.* at 7. He specializes in the field of industrial organization which examines how firms compete and how firms are organized. *Id.* He has published numerous articles in academic journals, including well-received pieces examining the intersection of the economics of organization and the economics of technology. *Id.* His works "use the trucking industry as a laboratory for examining how firms are organized" including "whether shippers ship goods using in-house 'private fleets'

or outsource carriage to trucking firms, and whether trucking firms rely on owner-operators or company drivers for hauls." *Id.* at 7–8.

Dr. Hubbard reviewed filings and discovery documents, Dr. Viscelli's and Dr. Speakman's expert reports, and publicly available documents and information. *Id.* at 8. He opined that Dr. Viscelli's "forced dispatch" interpretation of Werner's work system is inaccurate and that drivers have far fewer work responsibilities and restraints on their time than Dr. Viscelli found. *Id.* at 9. He also criticized Dr. Speakman's damages calculations, stating that he believed they inflated hours by miscalculating the "gaps" between paid trips, ignoring how Werner conveyed information to drivers in the Handbooks, misinterpreting layover time, and incorrectly estimating damages for the time prior to hours-of-service data being available in 2012. *Id.* at 9–12.

Plaintiffs do not seek to exclude Hubbard's opinion as a whole. Rather, they argue four subcategories of his opinion are inadmissible. First, Plaintiffs argue the Court should exclude Dr. Hubbard's calculation of the percentage of work California class members did outside California because it does not rebut the damages calculation. Second, Plaintiffs argue that the Court should exclude Dr. Hubbard's calculation regarding end-of-tour driving time because at his deposition, he admitted it was based on a miscalculation. Third, Plaintiffs ask the Court to exclude Dr. Hubbard's opinion regarding advance-fee damages because it invites the jury to consider an impermissible set off. And fourth, Plaintiffs argue that the Court should exclude Dr. Hubbard's testimony about what constitutes compensable work under California or Nebraska law as constituting an impermissible legal opinion.

11

First, the Court agrees that paragraphs 136 to 139 of Dr. Hubbard's report improperly question the certification of the California class. In these paragraphs, Dr. Hubbard opines that a certain percentage of the drivers do not meet the class definition or should not be awarded damages as California class members. *See* Filing No. 613-2 at 62–63. But the Court has already ruled that the California class is properly certified, and that California law applies to those claims. Accordingly, this is improper expert testimony that goes to an ultimate legal question already determined by the Court and must be excluded.

Second, the Court agrees Dr. Hubbard's calculations regarding end-of-tour time contained in Figures 7 and 9 and paragraphs 91 to 100 of his report must be excluded. In this section of his report, Dr. Hubbard criticizes Dr. Speakman's gap-trip analysis by opining that "[o]nce drivers are finished with their last haul of a tour, they are neither under a load nor on a dispatch, and often are essentially commuting to wherever they want to be during their subsequent stretch of off duty time" and they should therefore not be paid for that time. Filing No. 613-2 at 40. However, in his deposition, Dr. Hubbard admitted that he did not realize this time could encompass time a driver spent driving to a layover location and "that's inconsistent with the spirit of what I'm doing." Filing No. 613-1 at 228. He also admitted his numbers were not accurate due to this error in calculation:

> Q. Okay. At any rate, by including at a minimum situation where the driver has freight attached to him when you discounted the drive time, you have overstated even in your own argument how much including -- how much Speakman's calculations include drive time that you would consider commuting time; is that fair?
>
> A. Well, not that I would consider it, but -- but you're right. That -- that I did not intend -- what -- the intent was to eliminate L3 time at the end of a tour where you don't have freight attached.

Q. Okay.

A. And in some circumstances -- what -- what you're -- this exchange is illustrating is that in some circumstances that is not -- that might not be true.

Q. And you don't know how often in -- that happens, correct?

A. I don't, but I could figure it out.

Q. But you haven't yet?

A. I have not, no.

Q. In your opinions where you discuss if L3 time at the end of the tour is not compensable, you weren't cognizant that that includes time when the drivers have a freight attached to them, correct?

A. Correct.

Q. Okay.  And so, you would agree that your adjusted numbers are overstating the amount you should adjust, correct?

A. Correct.  We don't know by how much, but that – that's correct.

Filing No. 613-1 at 232–33.  Accordingly, because Dr. Hubbard admitted his calculation was based on an incorrect assumption, this portion of his opinion must be excluded under Rule 702.

Third, Dr. Hubbard testified that Dr. Speakman's calculation of advance-fee damages was inflated because there was at least one driver who left Werner's employ with a balance less than the amount of money he was advanced plus the $4 fee.  By way of background, and as previously explained in the Court's summary judgment order on liability, Werner charged its drivers a $4 fee every time they took a cash advance.  Werner deducted this fee along with the amount of the advance from the driver's next paycheck.  The Court determined the advance fee was unlawful because the drivers did not provide their consent to the deduction in writing.  Dr. Hubbard, citing the example of the one driver

above, argues Dr. Speakman's damages calculation is inflated because some drivers may not have been "charged" the advance fee because they left Werner's employ without having earned enough to pay back both the amount of the advance and the $4 fee. Plaintiffs argue Dr. Hubbard's opinion invites the jury to improperly offset the unlawful deduction with the driver's allegedly unpaid debt.

The Court will not exclude Dr. Hubbard's opinion in this respect. Importantly, there is an unresolved factual dispute over whether this $4 fee was actually charged to all drivers or not. In the example cited by Dr. Hubbard of the driver who departed with a negative balance, the driver still had more than $4 in his account, so it is not apparent that it was the $4 fee as opposed to the money advance that was not paid back. That is, because there is no evidence whether Werner deducted the $4 fee first or the amount of the advance first from the driver's paycheck, it is impossible to say as a matter of law whether this driver was "charged" the fee or not. The jury will be required to resolve this fact issue, but in any case, it does not render Dr. Hubbard's testimony inadmissible.

Finally, the Court denies Plaintiffs' motion to exclude certain portions of Dr. Hubbard's testimony as improper legal opinion. Although Dr. Hubbard uses the phrase "compensable," he uses it in the context of criticizing Dr. Speakman's determination of when drivers were "on" versus "off" duty, not as a term of legal art. Accordingly, it need not be excluded.

### D. Leathers

Plaintiffs move to exclude the expert testimony of Derek Leathers, Werner's Chief Executive Officer. They argue Leathers is an affirmative expert and Werner missed the deadline to disclose him, that the disclosure itself is inadequate and overly vague, and

14

that it is improper to allow Leathers to testify as an expert as opposed to fact witness. The last point, with which the Court agrees, is dispositive.

Leathers is the current Chairman and Chief Executive Officer of Werner Enterprises Inc. Filing No. 616-2 at 4. He began working in the commercial trucking industry in 1991 and has worked for Werner since 1999. *Id.* He served as Chief Operating Officer from 2011 to 2016, President and COO from 2016 to 2021, President, CEO, and Chairman from 2021 to 2024, and in his current role as CEO and Chairman since January 2024. *Id.* He has extensive knowledge about the management and operation of Werner's driving fleet. *Id.*

Leather's proposed testimony is that of quintessential fact witness, not an expert. Werner's disclosure states that Leathers is expected to testify as follows:

> [A]bout past and current practices within the commercial trucking industry in the United States and specific details about how Werner and other similarly situated companies manage their driver fleets to facilitate the movement of goods, materials, and other critical items for their customers. Mr. Leathers' testimony on the management of drivers will include testimony about Werner's pay practices and how Werner's pay structure and management of its drivers aligns with industry customs, including how Werner's pay practices mirror its customer billing practices.

*Id.* These are all matters gleaned from Leathers's first-hand experience as Werner's CEO, i.e., "rationally based on [his] perception," *see* Fed. R. Evid. 701, not based on "data" or the "product of reliable principles and methods," *see* Fed. R. Civ. P. 702. Thus, while Werner is likely correct that Leathers has extensive first-hand experience with the matters of his proposed testimony such as trucking-industry practices and the management and pay of truck drivers, this testimony will be admissible only provided Werner lays adequate foundation to present it as a lay opinion testimony under Rule 701. In other words, Leathers can testify to his opinion about matters with which he has

15

personal experience, but Werner cannot hold him forth as an expert or ask him to testify on matters outside that realm.

Furthermore, even if Leathers were qualified to testify as an expert witness and Werner proposed testimony in the nature of an expert witness which it has not, it would be potentially prejudicial under Rule 403 to allow him to testify as such. *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*, No. 416CV00114JEGSBJ, 2019 WL 8683323, at *5 (S.D. Iowa Apr. 9, 2019) (finding it "unnecessary and misleading to cloak one party's CEO in the patina of expert testimony").

Accordingly, Leathers will be permitted to testify as a fact witness and to provide lay opinion testimony in accordance with Federal Rule of Civil Procedure 701 but will not be permitted to testify as an expert under Rule 702.

### E. Penner

Robert Penner is a recently retired transportation executive who has spent his entire career in the truckload, over-the-road, and long-haul segment of the trucking industry. Filing No. 620-2 at 7. He received his commercial driver's license in 1984 and worked as a professional truck driver from then until 1991 in both the United States and Canada. *Id.* From 1991 to 1995, he worked in dispatch and operations and then become an Operations Manager from 1995 to 1999. *Id.* at 7–8. From 1999 to 2010, he served as the Vice President of Bison Transport, Inc. in which role he oversaw all operations including sales and marketing, dispatch and operations, safety and driver development, fleet acquisition and maintenance, human resources, logistics, intermodal operations, and IT. *Id.* at 9, 22. From 2010 to 2015, he was Bison's Executive Vice President and took on additional oversight, including corporate strategy, mergers and acquisitions, and

finance and administration.  *Id.*  From 2015 until his retirement in 2024, Penner served as Bison's president and CEO which made him responsible for all aspects of the company's North American operations.  *Id.*  He opined that Bison's success "was critically reliant on our driver program.  I stayed intimately involved in the details of our driver compensation programs my whole career."  *Id.*  He also stated that "[d]uring this entire time, paying drivers a trip rate for the complete trip, utilizing a rate per mile and computerized predetermined point to point mileage formula was the strategy that we utilized, and it remains the standard used by the industry."  *Id.* at 10.

Plaintiffs move to exclude Penner's testimony, arguing he was untimely disclosed as an affirmative expert, he is not qualified to testify as an expert, and he refused to disclose the facts and data underlying his opinions.  The Court disagrees.

First, Werner did not fail to timely disclose Penner.  At the parties' request, Magistrate Judge Nelson set a deadline for the disclosure of affirmative experts and a later deadline for disclosure of rebuttal experts.  Werner has offered Penner as a rebuttal expert and disclosed him by the rebuttal expert deadline, but Plaintiffs argue he should have been disclosed as an affirmative expert by the earlier deadline.  They point to the fact he does not directly cite Dr. Speakman's report as proof he is not rebutting anything.  The Court disagrees Penner is an affirmative witness.  His proposed testimony directly refutes Plaintiffs' experts' opinions that drivers were forced to work longer hours than they were paid for, and he discusses the industry's approach to trip-based and per-mile pay.  Although he did not directly reference Dr. Speakman's report, the subject matter of Penner's testimony is plainly to rebut the content of Plaintiffs' experts' reports.  To the

17

extent Plaintiffs feel Werner attempts to elicit testimony at trial from Penner that was not disclosed as rebuttal testimony, they may object.

Second, Penner is highly qualified. Although not an academic like some of the other expert witnesses in this case, Penner has extensive experience over a forty-year period in various roles in the trucking industry and explained he had a special focus on driver-compensation practices during his time in management. *See* Fed. R. Civ. P. 702 (explaining an expert can be qualified by "experience" or "knowledge" in addition to training and education). Plaintiffs also take issue with the fact that the company Penner headed is based in Canada, not the United States, but as Penner explained, the company operated throughout all of North America, and Plaintiffs fail to explain how the geographic distinction would impact Penner's opinion, which was focused on the generalities of trucking operations, not state- or country-specific labor laws.

Lastly, Penner adequately disclosed the basis for his opinions. He explained his hands-on experience as both a driver and a trucking-industry executive in great detail. Plaintiffs take issue with the fact Penner referenced an internal study done at his company that he was unable to provide due to confidentiality reasons. But Penner clarified that he had personally observed many of the facts in the study and that his first-hand observations were the basis for his opinion, not the outcome of the study. While this is not a basis to exclude Penner, the Court will sustain an objection should Werner attempt to elicit testimony from Penner about the results of the study he failed to disclose. Plaintiffs' motion to exclude Penner is denied.

### F.  Pile

Benjamin Pile was disclosed a non-retained expert witness for Werner.  Filing No. 627-2.  Pile has worked for Werner for twenty-two years, including as a manager and director in the driver recruiting department.  Filing No. 627-3 at 12.  In his current role as Senior Director of Driver Recruiting, Pile oversees all outside driver recruiting operations, internal recruiting, driver verification and compliance, and driver advertising.  *Id.* at 15– 16.  He also regularly conducts market research on issues in the trucking industry such as how other carriers pay and attract new drivers.  *Id.* at 26.  As part of his recruiting role, Pile is required to understand how Werner and its competitors compensate drivers, which he accomplishes by discussions with field recruits, visiting driving schools, and collecting information from other companies.  *Id.* at 34, 59, 52.  He opines that trip-based pay is a common industry practice which adequately compensates for all activities a driver performs, and Werner's practices are consistent with the industry standards.  *Id.* at 61– 66, 92–93, 112–113, 150–151.

Plaintiffs move to exclude Pile.  They argue he was an untimely disclosed affirmative expert witness rather than a rebuttal witness, and he lacks qualifications as an expert, and he should have been disclosed as a retained rather than non-retained witness because he did extensive statistical analysis at Werner's counsel's request.

As with Penner, there is no issue with the timing of Werner's disclosure of Pile.  He is a proper rebuttal witness who refutes Plaintiffs' experts' testimony despite not directly citing it.  Second, Pile is qualified.  He has extensive experience in recruiting and specialized knowledge through his work studies of how pay is commonly handled in the trucking industry, both at Werner and other firms.  Lastly, the fact Pile compiled information

19

with which he routinely works into a summary document to facilitate his testimony in this case does not transform him into a retained witness. Plaintiffs' motion to exclude Pile is denied.

## IV. MISCELLANEOUS MOTIONS

### A. Plaintiffs' Objection to Defendant's Summary Judgment Evidence

Plaintiffs object to certain evidence Defendants submitted in support of their motion for summary judgment which they characterize as "multiple data extractions purporting to contain excerpts from damages calculations by Plaintiffs' damages expert, Dr. Robert Speakman, and messaging, pay, and trip data associated with specific Werner drivers." Filing No. 659 at 2. They argue Defendants have not supplied adequate foundation to make this evidence admissible because they are modified excerpts of Speakman's analyses rather than original data.

At the summary judgment stage, a party may object that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Plaintiffs have not explained why the evidence could not be presented in admissible form at trial. The evidence at issue is based on records, such as the hours-of-service logs and Qualcomm data, that both sides have had access to and relied on extensively in this case. To the extent Werner has now produced the data in a different format or with slight modifications or new analyses, it is entirely probable their witnesses could lay the foundation to admit it at trial. Accordingly, Plaintiffs' objection is denied without prejudice to reassertion at trial.

**B.  Defendant's Motion to Strike Witnesses Not Produced for Depositions**

Defendants move to strike certain driver witnesses noticed but not produced for depositions.

In May, Werner moved to extend the deposition deadline and continue the trial, among other deadlines.  Filing No. 566.  It argued a continuance was necessitated, in part, by the need to depose the twelve class members Plaintiffs had recently disclosed as likely to testify at trial.  In opposing the continuance, Plaintiffs represented that their counsel "cooperated in facilitating these depositions" and "is actively working to coordinate schedules" to accomplish them before the deadline.  Filing No. 572 at 6. Plaintiffs argued the deposition burden was "manageable" and represented, "It is possible that these depositions could be completed in as little as three days."  Filing No. 572. Relying upon such representations that Plaintiffs would facilitate the depositions and ensure they were accomplished in a timely fashion, the Court denied Werner's motion to continue.  Filing No. 575.  Ultimately, however, six of the driver depositions were not completed before the deposition deadline.

Fed. R. Civ. P. 37(b) provides various sanctions the Court can impose for a party's failure to comply with a discovery order, including "prohibiting the disobedient party from . . . introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii).

The parties point fingers at each other for the failed depositions, but the email correspondence reveals Plaintiffs' attorneys bear the majority of the blame.  *See* Filing No. 633-2.  Despite repeated attempts from Defendants to schedule all twelve depositions before the deadline, Plaintiffs' counsel either failed to respond with dates and times, or canceled the depositions at the last minute, sometimes with no explanation and often

without offering a rescheduled date and time.  This obstructionist behavior is in direct contradiction to the representations Plaintiffs' counsel made to the Court in opposing Defendant's motion to continue.  Additionally, the prejudice to Werner is real; without deposing these witnesses, it has no way to prepare for their potential testimony at trial.  It cannot informally reach out to them because, as Werner notes, they are parties to this action.  By contrast, the impact on Plaintiffs is minimal as they still have the six deposed drivers who can testify at trial.  Accordingly, the Court agrees exclusion of the driver's testimony is an appropriate remedy under Rule 37 and grants Werner's objection.  Eva Giessinger, Hendrikus Vandenbergh, Angel Prado-Herrera, Yvonne Restrepo, Aikerion Ryce, and Luis Rodriguez are stricken as witnesses in this matter, and may not testify at trial.

## V.  SUMMARY JUDGMENT MOTIONS

Werner moves for summary judgment on the issue of damages.  It argues damages cannot be proven on a classwide basis, largely because it claims Speakman's testimony should be excluded or is unsupported.  As set forth above, the Court has already determined Speakman's testimony is admissible.  Accordingly, it rejects Werner's summary judgment motion to the extent it is based on the same argument regarding the inadmissibility of Dr. Speakman's expert testimony.  Furthermore, to the extent it argues Speakman improperly ignored the Qualcomm messages, made assumptions about compensable time, created improper gap trips, incorrectly allocated pay, erroneously calculated the reduced mileage rate damages, artificially inflated the advance-fee damages, incorrectly computed layover damages, and improperly extrapolated damages for the years before records exist, such issues are also discussed extensively by Werner's

expert witnesses. There are numerous factual questions and credibility determinations that preclude summary judgment on these issues. The jury will evaluate the experts' testimony and determine damages. None of these arguments provides a basis for granting summary judgment in Werner's favor.

Werner also asks the Court to reconsider its class certification ruling. The Court has previously considered this question at length and finds Werner's brief presents no additional reason to decertify the class.

Werner also argues it is entitled to summary judgment on waiting time penalties under California law, prejudgment interest under Nebraska law, double or treble damages under Nebraska law, and damages under California's Private Attorney Generals Act. And lastly, Werner argues the California class contains improper members and exceeds the three-year statute of limitations.

Plaintiffs move for partial summary judgment on damages. They argue they are entitled to damages for the unlawful-pay advance fee and prejudgment interest.

The Court addresses these arguments in turn.

## A. Waiting Time Penalties under California Law

Defendants argue that, as a matter of law, Plaintiffs are not entitled to waiting time penalties because there is a fair debate as to whether unpaid wages are owed to the driver–plaintiffs. Under California law, employers who willfully fail to pay any wages to an employee within 72 hours of separation of employment must pay additional waiting time penalties. Cal. Lab. Code §§ 201, 203. "Willful" means the employer "intentionally failed or refused to perform an act which was required to be done." *Ortega v. J.B. Hunt Transp.,*

*Inc.*, No. 207CV08336RGKAFM, 2018 WL 6131153, at *6 (C.D. Cal. July 23, 2018).  "A good faith belief in a legal defense will preclude a finding of willfulness."  *Id.*

Werner argues that because the Court previously declined to grant summary judgment on Plaintiffs' claim for unpaid wages under California law this means Werner's actions cannot have been willful.  But a finding of disputed material facts on summary judgment is not equivalent to a finding that Werner acted in good faith.  Rather, the jury will need to assess Werner's actions if it finds it failed to pay wages due and determine if it acted willfully or not.  Werner is not entitled to summary judgment on this claim.

## B. Prejudgment Interest under Nebraska law

The parties cross-move for summary judgment on the issue of prejudgment interest.

Under Nebraska law, prejudgment interest is available in only limited situations. First, where a claim is liquidated, a plaintiff may recover prejudgment interest.  *See* Neb. Rev. Stat. § 45-103.02(2).  Second, for an unliquidated claim, a plaintiff may recover prejudgment interest only in four narrow categories: 1) on money due on any instrument in writing; 2) on settlement of the account from the day the balance shall be agreed upon; 3) on money received to the use of another and retained without the owner's consent, express or implied; and 4) on money loaned or due and withheld by unreasonable delay of payment.

Plaintiffs argue their advance-fee claims are liquidated and they are therefore entitled to prejudgment interest.  However, as explained above in the discussion of Dr. Hubbard's expert testimony and below with respect to Plaintiff's motion for summary judgment, there is a dispute of fact as to whether each driver was actually charged the

$4 advance fee.  Accordingly, this claim is not liquidated, and this is not a basis for granting Plaintiffs' summary judgment.

Alternatively, Plaintiffs argue they are entitled to prejudgment interest on their Nebraska claims under the first and fourth statutory prongs: money due on any instrument in writing and money due and withheld by unreasonable delay in payment. Werner argues the money is not due on a contract in writing because Plaintiffs' claims are that they were not paid for money beyond that which Werner purportedly hired them to do (such as waiting or sleeper berth time).  The Court agrees there is no written contract which covers the damages Plaintiffs seek.  However, Werner does not refute the argument that prejudgment interest is available if the jury determines the drivers were due money which Werner unreasonably delayed under Neb. Rev. Stat. § 45-104. Therefore, should the jury determine the drivers were due money which Werner unreasonably withheld, Plaintiffs will be entitled to prejudgment interest.  Neither side is entitled to summary judgment on the issue of prejudgment interest as factual disputes remain.

### C. Double or Treble Damages

Werner seeks summary judgment on Plaintiffs claim for double or treble damages.

Under the Nebraska Wage Payment and Collection Act, double damages may be awarded if the employee establishes a claim and secures judgment and "the nonpayment of wages is found to be willful." Neb. Rev. Stat. § 48-1232.  Werner argues that because the Court declined to grant summary judgment in Plaintiffs' favor on its NWPCA claims, Werner must have acted in good faith.  As stated above, the Court's determination that a dispute of material fact preclude summary judgment is not

equivalent to a finding Werner did not act willfully.  Accordingly, this question is improper for resolution on summary judgment.

### D.  PAGA Damages

Werner argues the Court should grant it summary judgment on Plaintiffs' claims under the California Private Attorneys General Act (PAGA) because 1) Werner acted in good faith; 2) Werner cannot be liable for committing a "subsequent" violation under PAGA because there was no court or Labor Commissioner determination; 3) Werner cannot be liable for PAGA penalties prior to 2013 because of the statute of limitations; and 4) Plaintiffs cannot "stack" PAGA penalties.

The California Private Attorneys General Act permits an aggrieved employee to bring a civil action on behalf of other employees for any civil penalty that would otherwise be assessed and collected by the Labor and Workforce Development Agency.  Cal. Lab. Code. § 2699(a).  PAGA provides heightened penalties for willful violations, *see, e.g.*, Cal. Lab. Code. § 225.5, but also allows the Court to reduce an award if it is "unjust, arbitrary and oppressive, or confiscatory."

First, as above, the factfinder will need to determine if Werner is liable for a California law violation and if so, if it acted willfully or not.  The Court's prior finding of a disputed fact is not the equivalent of a finding Werner acted in good faith, so it is not entitled to summary judgment on that basis.

Second, as to PAGA penalties for "subsequent" violations, Werner argues a violation can only be determined to be subsequent following a court order or a Labor Commissioner determination.   The parties agree there was no such order or determination here.  Plaintiffs point to cases requiring the employer only be "notified" of

its violations to argue that any notification suffices to trigger enhanced "subsequent" penalties, even an employee complaint. But recent amendments to the PAGA contradict Plaintiffs' interpretation. The enhanced penalty for a subsequent violation now applies only if "[w]ithin the five years preceding the alleged violation, *the agency or any court* issued a finding or determination to the employer that its policy or practice giving rise to the violation was unlawful." Cal. Lab. Code. § 2699(f)(2)(B)(i) (emphasis added). Plaintiffs' interpretation that mere employee notice could trigger a subsequent violation is incorrect. Thus, Werner is entitled to summary judgment on any enhanced damages for "subsequent" PAGA violations.

Third, Plaintiffs agree they cannot seek PAGA penalties prior to May 19, 2013, based on the statute of limitations. Thus, this portion of Defendant's motion is granted.

Lastly, Defendants argue Plaintiffs cannot "stack" PAGA penalties by seeking to recover both damages from the underlying labor-law violation and the PAGA penalty for a single act. The Court agrees. California courts have held that such "damages and penalties cannot be "stack[ed]" on top of each other." *Castillo v. ADT, LLC*, No. CV 2:15-383 WBS DB, 2017 WL 363108, at *4 (E.D. Cal. Jan. 25, 2017) (citing *Smith v. Lux Retail N. Am., Inc.*, No. C 13-01579 WHA, 2013 WL 2932243, at *3 (N.D. Cal. June 13, 2013))). Furthermore, recent amends to the PAGA statute prohibiting stacking in certain situations have confirmed the courts' interpretations are correct in this regard. *See, e.g.*, Cal. Lab. Code. § 2699(f)(2)(B)(i). While Plaintiffs argue these statutory changes are not retroactive, a fairer interpretation is that the amendment codified and affirmed the existing approach of prohibiting stacking of penalties. Thus, Werner is entitled to summary judgment on this aspect of Plaintiffs' PAGA claim.

27

### E. California Class Membership

Werner moves for summary judgment on claims of California class members who spent the majority of their work time outside of California. This is little more than a motion for decertification in disguise. The Court has previously rejected Werner's numerous attempts to request decertification and does so again here. Werner's motion ignores that the class definition limits the California class to those drivers who were both residents of California and picked up or dropped off a load in the state and therefore does not encompass drivers without the requisite level of connection to the state as Werner implies. The Court reaffirms its prior determinations that this class definition comports with California law. *See, e.g.*, Filing No. 556 at 12 (order denying motion to decertify).

### F. California Statute of Limitations

Werner moves for summary judgment on all of Plaintiffs' California claims beyond three years prior to the filing of the complaint because the California Labor Code contains a three-year statute of limitations. Cal. Lab. Code §§ 201–03. However, Plaintiffs clarify they also bring a claim for restitution under California's Unfair Competition Law which has a four-year statute of limitations. *Accord Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000) ("We therefore reject defendant's claim that the shorter periods of limitation applicable to contractual or statutory wage claims govern a UCL action based on failure to pay wages."). Accordingly, the Court denies Werner's motion and finds the four-year statute of limitations applicable to Plaintiffs' UCL claims.

### G. Advance Fee Damages

Plaintiffs argue they are entitled to summary judgment on damages for the $4 fee Werner charged drivers for taking an advance on their paycheck. The Court previously

determined that the advance fee was unlawful and granted Plaintiffs summary judgment on liability.  Plaintiffs argue there is no dispute as to the amount of damages the class incurred because of the $4 advance fee—they say simply take the number of times a driver took a pay advance and multiply it by $4.  Werner, however, argues that there may have been drivers who were never charged the $4 fee, such as the driver Dr. Hubbard identified who left his job at Werner after taking a pay advance but before he had earned sufficient funds to cover it.  As the Court said above regarding the motion to exclude Dr. Hubbard's testimony, there is an unresolved factual dispute over whether this $4 fee was actually charged in all cases or not.  Thus, summary judgment is not appropriate, and the jury must determine the appropriate measure of damages for the advance-fee violation.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1. Defendant's Motion to Bar the Expert Testimony of Steven R. Viscelli and Robert Speakman, Filing No. 608 in 14cv319; Filing No. 496 in 15cv287; and Filing No. 453 in 17cv145, is denied.

2. Plaintiffs' Motion to Partially Exclude the Expert Opinions of Dr. Thomas Hubbard, Filing No. 611 in 14cv319; Filing No. 499 in 14cv319; and Filing No. 456 in 17cv145, is granted as to paragraphs 136 to 139 of Dr. Hubbard's expert report regarding the California class; granted as to figures 7 and 9 and paragraphs 91 to 100 of Dr. Hubbard's expert report containing erroneous end-of-tour time calculations; denied as to advance-fee damages calculation; and denied as to the use of the word "compensable."

3. Plaintiffs' Motion to Exclude the Expert Opinions and Expert Testimony of Defendants' Non-Retained Expert Derek Leathers, Filing No. 615 in 14cv319; Filing No. 503 in 14cv319; and Filing No. 460 in 17cv145, is granted. Leathers will be permitted to testify as a lay witness only.

4. Plaintiffs' Motion to Exclude All Opinions and Testimony of Robert Penner, Filing No. 619 in 14cv319; Filing No. 507 in 14cv319; and Filing No. 464 in 17cv145, is denied.

5. Plaintiffs' Motion to Exclude the Expert Opinions and Expert Testimony of Benjamin Pile, Filing No. 626 in 14cv319; Filing No. 514 in 14cv319; and Filing No. 471 in 17cv145, is denied.

6. Defendant's Motion to Strike Certain Driver Witnesses Noticed But Not Produced for Depositions, Filing No. 631 in 14cv319; Filing No. 519 in 14cv319; and Filing No. 476 in 17cv145, is granted. Eva Giessinger, Hendrikus Vandenbergh, Angel Prado-Herrera, Yvonne Restrepo, Aikerion Ryce, and Luis Rodriguez are stricken as witnesses in this matter and may not testify at trial.

7. Plaintiffs' Objection, Filing No. 659 in 14cv319; Filing No. 547 in 14cv319; and Filing No. 504 in 17cv145, is denied.

8. Defendant's Motion for Summary Judgment, Filing No. 602 in 14cv319; Filing No. 490 in 14cv319; and Filing No. 447 in 17cv145, is denied as to waiting-time penalties; denied as to prejudgment interest; denied as to double and treble statutory damages; denied as to Werner's good faith precluding damages under the California Private Attorney Generals Act; granted as to Plaintiffs' claims for subsequent PAGA violations; granted as to PAGA penalties prior to May 19, 2013;

granted as to "stacked" PAGA penalties; denied as to California class membership, and denied as to the California statute of limitations issue.

9. Plaintiff's Motion for Summary Judgment, Filing No. 622 in 14cv319; Filing No. 510 in 14cv319; and Filing No. 467 in 17cv145, is denied.  However, should the jury determine Werner unreasonably withheld money due to drivers, Plaintiffs will be entitled to prejudgment interest under Neb. Rev. Stat. § 45-104.


Dated this 9th day of October, 2025.

BY THE COURT:

s/ Joseph F. Bataillon_____
Senior United States District Judge
